Mike Arias (Ca Bar No. 115385)
  marias@aogllp.com
Alfredo Torrijos (CA Bar No. 222458)
  atorrijos@aogllp.com
ARIAS OZZELLO & GIGNAC LLP
6701 Center Drive West, 14th Floor
Los Angeles, California 90045-1558
Telephone: (310) 670-1600
Fax:  (310) 670-1231

Steven D. Liddle (Pro Hac Vice to be submitted)
  sliddle@mldclassaction.com
Nicholas A. Coulson (Pro Hac Vice to be submitted)
  ncoulson@mldclassaction.com
LIDDLE & DUBIN, P.C.
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Fax: (313) 392-0025

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PHILLIBEN, individually and on behalf of all others similarly situated; and BYRON McKNIGHT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation; and RASIER, LLC, a Delaware Limited Liability Company,<br><br>    Defendants. | Case No. 4:14-cv-05615-JST<br><br>HON. JON S. TIGAR<br><br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br><br>Hearing:<br>Date:  June 11, 2015<br>Time:  2:00 p.m.<br>Courtroom No.:  9 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THE COURT – NOT THE ARBITRATOR – MUST DECIDE THE
        THRESHOLD ARBITRABILITY ISSUES ....................................................... 2

III.    PLAINTIFFS AND MEMBERS OF THE PROPOSED CLASS DID NOT
        AGREE TO ARBITRATE THEIR CLAIMS ..................................................... 6

IV.     UBER'S ARBITRATION PROVISION IS BOTH PROCEDURALLY AND
        SUBSTANTIVELY UNCONSCIONABLE AND, THEREFORE,
        UNENFORCEABLE ............................................................................................ 8

        A.      Uber's Arbitration Provision Is Procedurally Unconscionable ................ 9

                1.      Uber's arbitration provision is a contract of adhesion and,
                        therefore, oppressive. ...................................................................... 9

                2.      Uber's arbitration provision demonstrates surprise. ..................... 12

        B.      Uber's Arbitration Provision Is Substantively Unconscionable. ............... 12

                1.      Uber retains the right to unilaterally modify the arbitration
                        provision. ........................................................................................ 13

                2.      Uber's arbitration provision lacks mutuality by excluding
                        from arbitration the claims most likely to be brought by Uber. ...... 16

                3.      Uber's arbitration provision improperly limits the relief that
                        the arbitrator can issue to consumers. ............................................ 17

        C.      The Unconscionable Terms Are Not Severable. ........................................ 19

V.      UBER'S ASSERTION THAT PLAINTIFF MCKNIGHT'S CLAIMS IN THIS
        ACTION ARE SUBJECT TO ARBITRATION PURSUANT TO THE
        TRANSPORTATION PROVIDER AGREEMENT IS MERITLESS .................. 20

VI.     CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A & M Produce Co. v. FMC Corp.*
  135 Cal.App.3d 473 (1982)..................................................... 12

*Abramson v. Juniper Networks, Inc.*
  115 Cal.App.4th 638 (2004)................................................... 13

*Al-Safin v. Circuit City Stores*
  394 F.3d 1254 (9th Cir. 2005).............................................. 13

*Aral v. EarthLink, Inc.*
  134 Cal.App.4th 544 (2005)................................................. 10

*Armendariz v. Found. Health Psychcare Services, Inc.*
  24 Cal 4th 83 (2000)................................................... passim

*AT&T Techs. v. Commc'ns Workers*
  475 U.S. 643 (1986) .................................................... 3, 6

*Be In, Inc. v. Google Inc.*
  2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ............................... 7

*Chavarria v. Ralphs Grocer Co.*
  812 F.Supp.2d 1079 (C.D. Cal. 2011)..................................... 17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
  207 F.3d 1126 (9th Cir. 2000).............................................. 20

*Circuit City Stores v. Mantor*
  335 F.3d 1101 (9th Cir. 2003)............................................... 13

*Comer v. Micor, Inc.*
  436 F.3d 1098 (9th Cir. 2006).............................................. 6

*Dumais v. American Golf Corp.*
  299 F.3d 1216 (10th Cir. 2002)............................................ 15

*Ellis v. McKinnon Broadcasting Co.*
  18 Cal.App.4th 1796 (1993)................................................ 18

*First Options of Chicago v. Kaplan*
  514 U.S. 938 (1995) .................................................... 3, 4

*Fitz v. NCR Corp.*
  118 Cal.App.4th 702 (2004)................................................ 19

*Flores v. Transamerica HomeFirst, Inc.*
  93 Cal.App.4th 846 (2001)................................................. 12

*Gentry v. Superior Court*
  42 Cal.4th 443 (2007)..................................................... 10

ARIAS OZZELLO & GIGNAC LLP

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION (4:14-CV-05615-JST)**

**ARIAS OZZELLO & GIGNAC LLP**

*Gonzalez v. Citigroup, Inc.*
  2011 WL 4374997 (E.D. Cal. Sept. 19, 2011) ........................................ 6

*Graham Oil Co. v. ARCO Prods. Co.*
  43 F.3d 1244 (9th Cir. 1994) ................................................... 13, 19

*Granite Rock Co. v. Int'l Bhd. of Teamsters*
  561 U.S. 287 (2010) ................................................................ 20

*Grosvenor v. West Corp.*
  854 F.Supp.2d 1021 (D. Colo. 2012) ........................................... 14, 15

*Gutierrez v. Autowest, Inc.*
  114 Cal.App.4th 77 (2003) ....................................................... 9, 12

*In re Zappos.com, Inc. Customer Data Sec, Breach Litig.*
  893 F.Supp.2d 1058 (D.Nev. 2012) .......................................... 6, 13, 16

*Ingle v. Circuit City Stores, Inc.*
  328 F.3d 1165 (9th Cir. 2003) ............................................... 9, 13, 15

*Lhotka v. Geographic Expeditions, Inc.*
  181 Cal.App.4th 816 (2010) ........................................................ 19

*Little v. Auto Stiegler, Inc.*
  29 Cal.4th 1064 (2003) ............................................................. 13

*Macias v. Excel Bldg. Servs. LLC*
  767 F.Supp.2d 1002 (N.D. Cal. 2011) ............................................... 17

*Mercuro v. Superior Court*
  96 Cal.App.4th 167 (2002) ......................................................... 17

*Merkin v. Vonage Am. Inc.*
  2014 U.S. Dist. LEXIS 14055 (C.D. Cal. Feb. 3, 2014) ...................... 11, 17, 18

*Metters v. Ralphs Grocery Co.*
  161 Cal.App.4th 696 (2008) ......................................................... 6

*Moody v. Metal Supermarket Franchising Am., Inc.*
  2014 U.S. Dist. LEXIS 31440 (N.D. Cal. Mar. 10, 2014) ............................ 5

*Newton v. Am. Debt Servs.*
  549 Fed.Appx. 692 (9th Cir. 2013) ................................................. 10

*Newton v. American Debt Servs., Inc.*
  854 F.Supp.2d 712 (N.D. Cal. 2012) ............................................. 8, 12

*Nguyen v. Barnes & Noble, Inc.*
  2012 WL 3711081 (C.D. Cal. Aug. 28, 2012) ...................................... 2, 7

*Nyulassy v. Lockheed Martin Corp.*
  120 Cal.App.4th 1267 (2004) ....................................................... 12

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION (4:14-CV-05615-JST)**

*Oracle America, Inc. v. Myriad Group A.G.*
    724 F.3d 1069 (9th Cir. 2013)................................................................................ 4, 5

*Rent-A-Center, W., Inc. v. Jackson*
    561 U.S. 63 (2010) ............................................................................................... 3, 5

*Roman v. Superior Court*
    172 Cal.App.4th 1462 (2009)................................................................................ 12

*Rosenthal v. Great W. Fin. Sec. Corp.*
    14 Cal.4th 394 (1996)............................................................................................. 6

*Saika v. Gold*
    49 Cal.App.4th 1074 (1996).................................................................................. 17

*Samaniego v. Empire Today*, LLC
    205 Cal.App.4th 1138 (2012)................................................................................ 16

*Sanchez v. Valencia Holding Co., LLC*
    201 Cal.App.4th 74 (2011)...................................................................................... 8

*Sonic-Calabasas A, Inc. v. Moreno*
    57 Cal.4th 1109 (2013)............................................................................................ 8

*Specht v. Netscape Commc'ns Corp.*
    306 F.3d 17 (2d Cir. 2002).................................................................................. 2, 7

*Stirlen v. Supercuts, Inc.*
    51 Cal.App.4th 1519 (1997).................................................................................... 9

*Szetela v. Discover Bank*
    97 Cal.App.4th 1094 (2002).................................................................................... 9

*Tiri v. Lucky Chances, Inc.*
    226 Cal.App.4th 231 (2014).................................................................................... 9

*Tompkins v. 23andMe, Inc.*
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ....................................................... 3

*Trivedi v. Curexo Technology Corp.*
    189 Cal. App. 4th 387 (2010)................................................................................ 16

*Williams Constr. Co. v. Standard-Pacific Corp.*
    254 Cal. App. 2d 442 (1967)................................................................................... 4

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*
    111 Cal.App.4th 784 (2003).................................................................................... 8

*Zullo v. Superior Court*
    197 Cal.App.4th 477 (2011).................................................................................. 17

**ARIAS OZZELLO & GIGNAC LLP**

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION (4:14-CV-05615-JST)**

**Statutes**

Cal. Civ. Code, § 1670.5 ................................................................................. 8, 19

ARIAS OZZELLO & GIGNAC LLP

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS**
**PENDING ARBITRATION (4:14-CV-05615-JST)**

# I.     INTRODUCTION

Uber provides a smartphone application that allows consumers to obtain transportation services. Uber's smartphone application ("app") allows users to summon a vehicle to transport them much in the way a taxicab would. Users download the app, create an account, enter payment information, and are able to press a button to call for a ride. Uber adds a "Safe Rides Fee" in the amount of one dollar to every ride on the UberX and UberXL platforms. It represents that this charge supports its "industry leading" background check process and safety measures. However, Uber's background check procedures and safety measures are woefully inadequate and fall well short of what is required for other commercial providers of transportation. This action arises from Uber's illegal and deceptive practice of misrepresenting to consumers its "Safe Rides Fee" and the nature and character of the background checks and safety measures conducted in association therewith.

Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Defendants" or "Uber") have moved to stay this action in favor of arbitration, seeking to compel the individual arbitration of the claims of plaintiffs Matthew Philliben and Byron McKnight ("Plaintiffs"). Uber's motion should be denied.

First, Uber fails to establish that the parties "clearly and unmistakably" agreed that the arbitrator, rather than this Court, should decide the threshold question of arbitrability. Nowhere in Uber's Terms and Conditions is there any mention that the question of arbitrability is being delegated to the arbitrator. Instead, Uber argues that its reference to the AAA Commercial Arbitration Rules in the Terms and Conditions evinces that the parties agreed to have the arbitrator decide the threshold issue of arbitrability. While such an argument may have merit in cases where the parties to the arbitration agreement are sophisticated business entities, it has no application in cases such as this one involving consumers. See *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014).

ARIAS OZZELLO & GIGNAC LLP

1    Second, Uber fails to establish that there is a valid agreement to arbitrate.  Uber

2 maintains that consent to its Terms and Conditions is established because it provided a

3 link to the Terms and Conditions during the account registration process.  Uber, however,

4 does not require that its users actual view the Terms and Conditions.  As such, Uber seeks

5 to enforce a "browsewrap" agreement.  Federal courts have repeatedly struck down so-

6 called "browsewrap" agreements, like the one here, on the grounds that they were

7 insufficient to establish the assent necessary for a binding contract.  See *Specht v.*

8 *Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002); *Be In, Inc.*, 2013 WL 5568706, at

9 *32-34; *Nguyen v. Barnes & Noble, Inc.*, Case No. 8-12-cv-0812 JST, 2012 WL 3711081

10 (C.D. Cal. Aug. 28, 2012).

11    Finally, even if the Court were to conclude that Plaintiffs' did consent to Uber's

12 arbitration provision, that agreement cannot be enforced because it is both procedurally

13 and substantively unconscionable.  Uber's Terms and Conditions is classic contract of

14 adhesion which is procedurally unconscionable.  In addition, Uber's arbitration provision

15 is substantively unconscionable because: (i) the arbitration provision gives Uber the right

16 unilaterally change the contract; (ii) the arbitration provision lacks mutuality by

17 excluding from arbitration the types of claims that Uber is most interested in seeking to

18 enforce against consumers; and (iii) Uber's arbitration provision limits the remedies that

19 the arbitrator can award to consumers while not limiting in any way the relief available to

20 Uber.

21    Accordingly, the Court should deny Uber's motion in full.

22

23 **II.    THE COURT – NOT THE ARBITRATOR – MUST DECIDE THE**

24 **THRESHOLD ARBITRABILITY ISSUES**

25    Uber urges the Court to stay this action in order "to permit the arbitrator to decide

26 the threshold question of arbitrability." [Motion at 8:12-13.]  Under federal law, parties

27 can agree to have the arbitrator decide "gateway" issues concerning the scope and

28 enforceability of the arbitration agreement, and whether the dispute is subject to

ARIAS OZZELLO & GIGNAC LLP

arbitration. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995) ("the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns upon what the parties agreed about that matter.")  While parties can agree to delegate threshold arbitrability questions to the arbitrator, the Supreme Court has imposed a heightened standard when a party asserts that the arbitrator should decide arbitrability issues. *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, fn. 1 (2010) ("[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator").  Uber comes nowhere near to satisfying this heightened standard.

Uber presents no "clear and unmistakable" evidence that the parties agreed to allow the arbitrator to decide the threshold question of arbitrability.  Indeed, Uber's Terms and Conditions, as well as the arbitration provision contained therein, is silent on the issue.  Despite this silence, Uber maintains that the parties agreed to permit the arbitrator to decide the threshold question of arbitrability because the arbitration provision references the AAA Commercial Arbitration Rules. [Motion at 8:21-23.]  According to Uber, the arbitration provision's reference to the AAA Commercial Arbitration Rules provides "clear and unmistakable" evidence of the parties' agreement to allow the arbitrator to decide the threshold question of arbitrability because Rule 7(a) of those rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." [Motion at 8:23-28.]  This very same argument was raised by the defendant – and rejected by the court – in *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014).  The court's detailed analysis of this issue in *Tompkins* is not only instructive, it is dispositive:

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION (4:14-CV-05615-JST)**

In this case, the Court agrees with Plaintiffs that a bare reference to the AAA rules in 23andMe's online contract does not show that the parties clearly and unmistakably intended to delegate arbitrability. Less than a year ago, the Ninth Circuit indicated that the principle of incorporating a delegation provision by citing third-party arbitration rules may not apply to consumers. *In Oracle America, Inc. v. Myriad Group A.G.*, the Ninth Circuit addressed the question of whether incorporation of the UNCITRAL (United Nations Commission on International Trade Law) arbitration rules served to delegate arbitrability. 724 F.3d 1069 (9th Cir. 2013). Noting that this was "an issue of first impression in the Ninth Circuit," the court surveyed other Circuits' holdings regarding incorporation of both the UNCITRAL and AAA rules, and concluded that incorporation in the contract at issue was effective. *Id*. at 1073-75. However, *Oracle* expressly limited its holding: "We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." Id. at 1075. Moreover, the court stated: "We express no view as to the effect of incorporating arbitration rules into consumer contracts." Id. at 1075 n.2. Thus, the Ninth Circuit declined to hold that incorporation of arbitration rules shows "clear and unmistakable evidence" of an agreement to delegate arbitrability when consumers are involved.

There is good reason not to extend this doctrine from commercial contracts between sophisticated parties to online click-through agreements crafted for consumers. While incorporation by reference is generally permissible under ordinary contract principles, see *Williams Constr. Co. v. Standard-Pacific Corp.*, 254 Cal. App. 2d 442, 454 (1967), incorporation of the AAA rules does not necessarily amount to "clear and unmistakable" evidence of delegation, particularly when the party asked to accept the agreement is a consumer. Indeed, the Supreme Court held that by default, courts should decide arbitrability because the question of "who (primarily) should decide arbitrability" is "rather arcane," and "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Kaplan*, 514 U.S. at 945. The "clear and unmistakable" test thus established a "heightened

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS**
**PENDING ARBITRATION (4:14-CV-05615-JST)**

ARIAS OZZELLO & GIGNAC LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

standard" to evince delegation. *Rent-A-Center*, 561 U.S. at 69 n.1.

* * *

In other contexts, courts have required specificity when incorporating external arbitration rules to ensure adequate notice. For example, at least one other court in this district has refused to apply Rule R-7(a) in a case involving franchise agreements where the "agreements themselves do not quote this portion of Rule 7, nor do they even refer specifically to Rule 7." *Moody v. Metal Supermarket Franchising Am., Inc.*, No. 13-CV-5098-PJH, 2014 U.S. Dist. LEXIS 31440, at *10 (N.D. Cal. Mar. 10, 2014). The *Moody* Court determined that a reference to the "then current commercial arbitration rules of the AAA" was insufficient evidence of "clear and unmistakable" intent to delegate arbitrability, contrasting this language with an express delegation provision. *Id*. at *11.

* * *

If it wanted to avoid any doubt about delegation, 23andMe certainly could have included explicit delegation language, or simply reproduced or cited Rule R-7(a). For example, in Rent-A-Center, the disputed arbitration agreement had an express delegation clause that stated: "'[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'" 561 U.S. at 66. Although case law holds in the commercial context that express language is not required for the AAA's delegation rules to take effect, *Oracle* declined to extend this result to consumers. 23andMe's arbitration provision does not refer to Rule R-7(a), or even a specific version of the Commercial Rules (as opposed to numerous other AAA rulesets). See *Moody*, 2014 U.S. Dist. LEXIS 31440, at *10 (finding no delegation even where agreement referred to "then current commercial" rules). Therefore, nothing puts consumers on notice that such a vague reference in the arbitration provision demonstrates their "clear and unmistakable" intent to delegate arbitrability to an arbitrator.

ARIAS OZZELLO & GIGNAC LLP

– 5 –

1     *Tompkins v. 23andMe*, 2014 WL 2903752, at \*11-13 (footnotes omitted).

2

3    **III.     PLAINTIFFS AND MEMBERS OF THE PROPOSED CLASS DID NOT**

4               **AGREE TO ARBITRATE THEIR CLAIMS**

5       "A party cannot be required to submit to arbitration any dispute which he has not

6 agreement to so submit," *AT&T Tech.,* 475 U.S. at 648 (1986); see also *In re Zappos.com,*

7 *Inc. Customer Data Sec, Breach Litig.*, 893 F.Supp.2d 1058, 1062 (D. Nev. 2012)

8 ("[A]rbitration is a matter of contract, and no party may be required to submit to

9 arbitration any dispute which he has not agreed so to submit."); *Metters v. Ralphs*

10 *Grocery Co.*, 161 Cal.App.4th 696, 701 (2008) ("there is no public policy favoring

11 arbitration of disputes which the parties have not agreed to arbitrate").  "With regard to

12 whether there is a valid agreement to arbitrate between the parties, the liberal [ ] policy

13 regarding the scope of arbitrable issues is inapposite." *In re Zappos.com*, 893 F.Supp.2d

14 at 1062 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 (9th Cir. 2006)).  As such, the

15 party seeking to compel arbitration has the burden of proving the existence of an

16 agreement to arbitrate by a preponderance of the evidence. *Rosenthal v. Great W. Fin.*

17 *Sec. Corp.*, 14 Cal.4th 394, 413 (1996); *Gonzalez v. Citigroup, Inc.*, 2011 WL 4374997,

18 at \*2 (E.D. Cal. Sept. 19, 2011) (denying motion to compel arbitration because defendant

19 did not meet its summary judgment level burden).  Uber has failed to meet its burden to

20 establish enforceable agreements with plaintiffs.

21       Uber has not included copies of any records establishing Plaintiffs' assent to the

22 Terms and Conditions, much less the arbitration provision.  As such, there is no

23 admissible evidence demonstrating Plaintiffs' assent to the arbitration provision and,

24 thus, no proof that any contract was formed.  On this basis alone, Uber's motion should

25 be denied and the case should proceed before this Court.

26       Instead of providing evidence of Plaintiffs' actual assent, Uber argues that

27 Plaintiffs manifested their assent because they were provided with a link to the Terms and

28 Conditions when they created their accounts.  Critically, however, while Plaintiffs were

*ARIAS OZZELLO & GIGNAC LLP*

provided a link to Uber's Terms and Conditions, they were not required to access that link in order to create their account and they were not required to affirmatively assent to Uber's Terms and Conditions or the arbitration provision contained therein. As such, Uber is necessarily asserting the existence of a "browsewrap" agreement. "Browsewrap agreements are those that purport to bind the users of websites to which the agreements are hyperlinked." *Be In, Inc. v. Google Inc.*, Case No. 5:12-cv-3373 LHK, 2013 WL 5568706, at *23 (N.D. Cal. Oct. 9, 2013) Generally, the text of such an agreement, typically referred to as the "Terms of Use" or "Terms of Service," is located on a separate page accessible via a hyperlink on the bottom of the website. *Id*. "The defining feature of browsewrap agreements is that the user can continue to use the website or its service without visiting the page hosting the browsewrap agreement or even knowing the webpage exists." *Id*.

Federal courts have repeatedly struck down so-called "browsewrap" agreements, like the one here, on the grounds that they were insufficient to establish the assent necessary for a binding contract. See *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002); *Be In, Inc.*, 2013 WL 5568706, at *32-34; *Nguyen v. Barnes & Noble, Inc.*, Case No. 8-12-cv-0812 JST, 2012 WL 3711081 (C.D. Cal. Aug. 28, 2012). For example, the court in *Specht* held that plaintiff internet users' were not bound by a browsewrap license agreement requiring arbitration because there was no evidence of mutual assent. *Specht*, 306 F.3d 17. In affirming the lower court's decision to deny arbitration, the court explained that a consumer would not have known of the license terms since the reference and hyperlink to the license agreement were located further down the webpage. *Id*. at 31, 35. The court concluded that the browsewrap agreement was insufficient to establish assent since an offeree "is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id*. at 30, 35.

The formation of a valid and binding contract requires a manifestation of mutual assent. *Be In, Inc.*, 2013 WL 5568706, at *22-23. "For the terms of another document to

ARIAS OZZELLO & GIGNAC LLP

be incorporated ... the reference must be clear and unequivocal ... and the terms of the incorporated document must be known or easily available to the contracting parties." *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal.App.4th 784, 790 (2003) (citation omitted). Here, however, the arbitration provision was "hidden in a prolix printed form drafted by the party [who would normally be] seeking to enforce them." *Newton v. American Debt Servs., Inc.*, 854 F.Supp.2d 712, 723 (N.D. Cal. 2012). Plaintiffs had no opportunity to negotiate the contracts, no bargaining power, and no meaningful choice other than to blindly accept the adhesion contracts offered. "The general rule that one who signs an instrument may not avoid the imposition of its terms on the ground that he failed to read the instrument before signing it applies only in the absence of overreaching or imposition. Thus, it does not apply to an adhesion contract." *Sanchez v. Valencia Holding Co., LLC*, 201 Cal.App.4th 74, 92-93 (2011).

## IV. UBER'S ARBITRATION PROVISION IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AND, THEREFORE, UNENFORCEABLE

Under California law an unconscionable agreement or clause in an agreement is unenforceable. Cal. Civ. Code §1670.5. "[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013). The California Supreme Court has explained that "unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal 4th 83, 114 (2000). These elements operate on a sliding scale – the "more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

ARIAS OZZELLO & GIGNAC LLP

**A.    Uber's Arbitration Provision Is Procedurally Unconscionable.**

To determine whether Uber's arbitration clause is procedurally unconscionable under California law, the Court must evaluate how the parties negotiated the contract and "the circumstances of the parties at that time." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003).  "The procedural element of unconscionability . . . focuses on two factors: oppression and surprise.  Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 245 (2014) (quotations and citations omitted).

Oppression "from an inequality of bargaining power" and surprise weigh heavily in the court's consideration. *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532 (1997). While either factor is sufficient to find procedural unconscionability, Uber's arbitration clause contains both. *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 89, fn.8 (2003).

> *1.    Uber's arbitration provision is a contract of adhesion and, therefore, oppressive.*

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal.4th at 113.  An adhesive contract "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* (citation omitted).  There can be no real dispute that Uber's Terms and Conditions is an adhesion contract.  Uber's Terms and Conditions are a form contract drafted by Uber, a corporation with superior bargaining strength, and given to consumers on a take-it-or-leave basis and "without the opportunity for meaningful negotiation." *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100 (2002); see also, *Gutierrez*, 114 Cal.App.4th at 89 (finding similar terms in consumer car leases indicative of adhesion).

*ARIAS OZZELLO & GIGNAC LLP*

1    Take-it-or-leave it contracts, like the one at issue here, are inherently oppressive.

2    *Gentry v. Superior Court*, 42 Cal.4th 443, 469 (2007) (contract of adhesion "contain a

3    degree of procedural unconscionability even without any notable surprises, and bear

4    within them the clear danger of oppression and overreaching"); *Aral v. EarthLink, Inc.*,

5    134 Cal.App.4th 544, 557 (2005) (finding procedural unconscionability where "the terms

6    of the [arbitration] agreement were presented on a 'take it or leave it' basis . . . with no

7    opportunity to opt out").  Indeed, the Ninth Circuit has held that the existence of contract

8    of adhesion is, itself, oppressive and, as such, procedurally unconscionable:

9         Whether an arbitration agreement is procedurally

10        unconscionable depends on "'the manner in which the

11        contract was negotiated and the circumstances of the parties

12        at that time.'" [Citations.]  Elemental to this inquiry is

13        whether the agreement "involves oppression or surprise."

14        [Citation.]  **Defendants concede the arbitration agreement**

15        **was an adhesion contract.  As a result, it is oppressive (and**

16        **therefore procedurally unconscionable).** [Citation.]

17    *Newton v. Am. Debt Servs.*, 549 Fed.Appx. 692, 694 (9th Cir. 2013) (citations omitted;

18    emphasis added).

19    Here, a finding of oppression is justified not only because Uber's arbitration

20    provision is contained in an adhesion contract but also because Uber has given itself the

21    unilateral and unfettered power to modify any provision within its Terms and Conditions

22    at any time and without notice to its users:

23        **The Company reserves the right to modify the terms and**

24        **conditions of this Agreement** or its policies relating to the

25        Service or Application **at any time, effective upon posting of**

26        **an updated version of this Agreement on the Service or**

27        **Application**.  You are responsible for regularly reviewing this

28        Agreement.  **Continued use of the Service or Application**

ARIAS OZZELLO & GIGNAC LLP

– 10 –

1    *after any such changes shall constitute your consent to such*

2    *changes*.

3    [Ex. A to Cianfrani Decl. (emphasis added).]

4    As the court noted in *Merkin v. Vonage*, the unilateral authority to modify an

5    agreement is a paradigmatic example of inequality of bargaining power, supporting a

6    finding of oppression:

7    In any event, there are other indicia of oppression here

8    beyond the fact that the TOS [Terms of Service] is a contract

9    of adhesion.   Most important is Vonage's ability to

10   unilaterally modify the TOS. This power – which, as

11   discussed above, was frequently exercised by Vonage –

12   transformed an ordinary contract of adhesion into a contract

13   that gave Vonage the largely unfettered power to control the

14   terms of its relationship with its subscribers.   California

15   courts analyzing unconscionability have repeatedly held that

16   the question of oppressiveness turns on the relative balance of

17   bargaining power between the parties.   In *Olsen v. Breeze,*

18   *Inc.*, 48 Cal. App. 4th 608, 621, 55 Cal. Rptr. 2d 818 (1996),

19   for instance, the Court of Appeal explained that "[o]ppression

20   arises from an inequality of bargaining power which results in

21   no real negotiation and an absence of meaningful choice."

22   **Here, as a result of Vonage's authority to modify the TOS at**

23   **will, there is in effect no "balance of bargaining power"; all**

24   **of the power rests in Vonage's hands.** The Court therefore

25   finds that the TOS involves a high degree of oppression.

26   *Merkin v. Vonage Am. Inc.*, Case No. 2:13-cv-08026-CAS (MRWx), 2014 U.S. Dist.

27   LEXIS 14055, 19-20 (C.D. Cal. Feb. 3, 2014) (footnote omitted; emphasis added)

28

ARIAS OZZELLO & GIGNAC LLP

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS**
**PENDING ARBITRATION (4:14-CV-05615-JST)**

**2.** _Uber's arbitration provision demonstrates surprise._

"Surprise may be based on the arbitration agreement's location." _Newton_, 854 F.Supp.2d at 724-25. "The component of surprise arises when the challenged terms are hidden in a prolix printed form drafted by the party seeking to enforce them." _Nyulassy v. Lockheed Martin Corp._, 120 Cal.App.4th 1267, 1281 (2004) (internal quotation marks omitted); see also _A & M Produce Co. v. FMC Corp._, 135 Cal.App.3d 473, 486 (1982) ("'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.").

Here, the arbitration provision is located within Uber's Terms and Conditions – which consists of 45 paragraphs (not counting headings and numerous bullet-point lists) of dense legalese.  Indeed, even the printed version of Uber's Terms and Conditions – which is _not_ how the Terms and Conditions is presented to users – is formidable, consisting of nine single-spaced pages. [See Cianfrani Decl., Ex. A.]  In addition, the Terms and Conditions is presented to consumers as a link with no requirement that consumers actually click the link to view the Terms and Conditions, much less affirmatively acknowledge they had received it and agreed to it.  Uber does not separately provide its users with the arbitration agreement and users are not required to separately agree to the arbitration agreement. Cf. _Roman v. Superior Court_, 172 Cal.App.4th 1462, 1467 (2009) (finding limited surprise where the agreement to arbitrate was "contained in a separate paragraph initialed" by the plaintiff).

**B.    Uber's Arbitration Provision Is Substantively Unconscionable.**

Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party. _Gutierrez,_ 114 Cal.App.4th at 88 (quoting _Armendariz_, 24 Cal.4th at 113-114). Substantive unconscionability focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided." _Flores v. Transamerica HomeFirst, Inc_., 93 Cal.App.4th 846, 853 (2001).  Arbitration provisions that are "unfairly one-sided" are

ARIAS OZZELLO & GIGNAC LLP

1  substantively unconscionable. *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003).

2  "In assessing substantive unconscionability, the paramount consideration is mutuality."

3  *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 664 (2004). Thus, California

4  courts have found substantive unconscionability, for example, where an arbitration clause

5  limits the types of remedies that would be available under the statute, thus violating the

6  "principle that an arbitration agreement may not limit statutorily imposed remedies such

7  as punitive damages and attorney fees." *Armendariz*, 24 Cal.4th at 103; see also *Graham*

8  *Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994).

9         Uber's arbitration provision is substantively unconscionable. First, the arbitration

10  provision gives Uber the right unilaterally change the contract. Second, the arbitration

11  provision lacks mutuality by excluding from arbitration the types of claims that Uber is

12  most interested in seeking to enforce against consumers.   Third, Uber's arbitration

13  provision limits the remedies that the arbitrator can award to consumers while not

14  limiting in any way the relief available to Uber.

15              *1.    Uber retains the right to unilaterally modify the arbitration*

16                     *provision.*

17         As discussed above, Uber's Terms and Conditions specifically provide Uber with

18  the right to modify the agreement without providing notice to its users. [Cianfrani Decl.,

19  Ex. A.]  The inclusion of such a clause is substantively unconscionable. See, e.g., *Ingle*,

20  328 F.3d at 1179 ("unilateral power to terminate or modify the contract is substantively

21  unconscionable"); *Al-Safin v. Circuit City Stores*, 394 F.3d 1254, 1259-61 (9th Cir. 2005)

22  (modification provision that allowed Circuit City to "alter the rules and procedures

23  governing arbitration almost at will" was substantively unconscionable); *Circuit City*

24  *Stores v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003) ("Circuit City's unilateral power

25  to  modify  or  terminate  the  arbitration  agreement"  renders  it  substantively

26  unconscionable.); *In re Zappos.com Inc.,* 893 F.Supp.2d at 1065-1066 (the right to

27  unilaterally modify the terms of the service agreements renders them illusory and

28  unenforceable).  A finding of unconscionability is particularly warranted here since Uber

ARIAS OZZELLO & GIGNAC LLP

1    has given itself the right to modify the Terms and Conditions without providing actual

2    notice to its users.

3         The modification by Uber of its Terms and Conditions becomes "effective upon

4    posting of an updated version of this Agreement on the Service or Application." [Ex. A to

5    Cianfrani Decl.]  As such, there is no requirement that consumers be provided with actual

6    notice of the modification.  Instead, Uber's modification becomes "effective upon posting

7    of an updated version of [the Terms and Conditions] on the Service or Application."

8    Indeed, since the Terms and Conditions provide that the mere use Uber's services or

9    application constitutes a consumer's consent to any changes, invariably consumers will

10   unknowingly "consent" to Uber's modification without any knowledge that there even

11   was a modification.  The reasoning in *Grosvenor v. West Corp.*, 854 F.Supp.2d 1021,

12   1033-1034 (D. Colo. 2012), is instructive.

13        The court in *Grosvenor* held the arbitration clause before it illusory because: (i)

14   the defendant reserved the right to modify the agreement at its sole discretion; (ii) the

15   defendant's promise to post changes to its website was meaningless in light of the fact

16   that consumers were not given the opportunity to accept or reject the defendant's

17   modifications; (iii) the defendant's changes to the agreement took effect immediately;

18   and (iv) most consumers had no ability to review defendants modifications to the

19   agreement without first accepting them, since a consumer's consent was presumed by

20   continued use of the service. *Grosvenor*, 854 F.Supp.2d at 1033-1034.  The court took

21   particular issue with the defendant's paltry notice provision (which mirrors Uber's),

22   stating:

23            [The defendant] does not offer any reasonable explanation

24            why users […] would periodically visit www.qwest.com/legal

25            and attempt to ascertain whether any terms in the Subscriber

26            Agreement had changed since their last visit (without any

27            apparent help from [the defendant], as no redlined version,

28

ARIAS OZZELLO & GIGNAC LLP

1  changelog, or other information is provided to guide users to

2  recent changes in the agreement's terms).

3  *Grosvenor*, 854 F. Supp. 2d at 1034; see also *Ingle,* 328 F3d at 1179 ("[N]otice is trivial

4  when there is no meaningful opportunity to negotiate the terms of the agreement.").[1]

5  In this case, just as in *Grosvenor*, in order to determine whether there has been any

6  change to Uber's Terms and Conditions, a consumer would have to continuously read

7  and re-read the Terms and Conditions and somehow compare it to previous versions to

8  determine whether there have been any changes.  Because the Terms and Conditions

9  provide that consent is presumed by the consumer's "use of the Service or Application,"

10 a consumer would necessarily have to re-read the Terms and Conditions in their entirety

11 every time he used the Uber's service or even accessed the Uber application – regardless

12 of whether he actually used Uber's services.  Indeed, since use of the Uber application is

13 deemed to constitute consent, the mere act of opening the application to review the Terms

14 and Conditions would constitute consent to any modification.  In light of the fact that

15 consent is assumed from the mere use of Uber's service *or* application, it is effectively

16 impossible for a consumer to *not agree* to any modification to the Terms and Conditions.

17 Uber's Terms and Conditions provides that "[n]otwithstanding the provisions of

18 the modification-related provisions" a user "may reject any [...] change [to the Dispute

19 Resolution section] by sending [Uber] written notice [...] within 30 days of the date such

20 change became effective[.]" [Ex. A to Cianfrani Decl.]  However, this rejection right is

21 illusory in light of the fact that Uber can modify the arbitration provision without

22 providing actual notice and that consent to any modification is assumed from the mere

23 use of Uber's service or application.  As such, the putative ability to reject changes to the

24 Uber's arbitration provision, in reality, imposes no restriction at all on Uber's ability to

25

26 ───────────────
[1]  The *Grosvenor* court also rejected the defendant's contention that the arbitration provision
   was not illusory because it had never used its power to amend the subscriber agreement to alter
27 the arbitration provisions, reasoning that "that it was the unilateral power of one party to change
   the arbitration terms that rendered the arbitration provisions illusory." *Grosvenor*, 854 F. Supp.
28 2d at 1034 (citing *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002)).

ARIAS OZZELLO & GIGNAC LLP

modify the arbitration provision in its Terms and Conditions.  As the *Zappos* court held, without better restrictions, such agreements allow companies like Uber "to hold its customers and users to the promise to arbitrate while reserving its own escape hatch." 893 F. Supp. 2d at 1066.

In light of Uber's reservation of a unilateral right to modify the Terms and Conditions – including the arbitration provision contained therein – the Court should follow numerous other courts and refuse to enforce the clause. *In re Zappos.com*, 893 F.Supp.2d at 1065 ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract.") (collecting cases).

> 2.     *Uber's arbitration provision lacks mutuality by excluding from arbitration the claims most likely to be brought by Uber.*

At its core, substantive unconscionability is concerned with how one-sided the bargain is. *Armendariz*, 24 Cal.4th at 114.  An arbitration agreement that lacks mutuality without a reasonable justification is sufficient to find substantive unconscionability. *Id*. at 117-18.  Lack of mutuality sufficient to find substantive unconscionability exists when an arbitration provision provides for the arbitration of claims most likely to be brought by the weaker party, but exempts the claims most likely to be filed by the stronger party, the clause is unconscionable. *Samaniego v. Empire Today*, LLC, 205 Cal.App.4th 1138, 1147-1148 (2012); *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 397 (2010).

Uber's arbitration provision permits a party to avoid arbitration and "seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights." [Ex. A to Cianfrani Decl.]  Thus, while Uber's arbitration provision initially purports to apply to "any claim or controversy," it actually excludes from arbitration the very types of claims

– 16 –

ARIAS OZZELLO & GIGNAC LLP

1  that Uber is most likely to bring.  This lack of mutuality renders Uber's arbitration

2  provision substantively unconscionable.

3        Courts must look to the practical effect of a clause when evaluating

4  unconscionability. See *Zullo v. Superior Court*, 197 Cal.App.4th 477, 486 (2011); *Saika*

5  *v. Gold*, 49 Cal.App.4th 1074, 1079-1080 (1996).  Thus, while Uber's exclusion of

6  claims regarding claims arising from intellectual property rights applies to both parties,

7  the reality is that such claims will invariably be brought by Uber. *Merkin v. Vonage Am.*

8  *Inc.*, 2014 U.S. Dist. LEXIS 14055 at 30-31 ("Although these exceptions purport to be

9  bilateral, these are in fact precisely the disputes that are most likely to be brought by

10  Vonage, and least likely to be brought by the subscriber."); *Macias v. Excel Bldg. Servs.*

11  *LLC*, 767 F.Supp.2d 1002, 1009 (N.D. Cal. 2011) (finding evidence of substantive

12  unconscionability due to arbitration provision's exemption of unfair competition, trade

13  secrets, and confidentiality claims because the exempted claims only benefited the

14  employer); *Chavarria v. Ralphs Grocer Co.*, 812 F.Supp.2d 1079, 1086-87 (C.D. Cal.

15  2011), aff'd, 733 F.3d 916 ("Furthermore, the court is not persuaded that Ralphs is

16  equally likely as one of its employees to request arbitration.  Ralphs is the employer of at

17  will employees. The Policy governs claims that are overwhelmingly likely to be raised by

18  an employee—not by an employer."); *Mercuro v. Superior Court*, 96 Cal.App.4th 167,

19  176 (2002) ("Countrywide requires the weaker parties—its employees—to arbitrate their

20  most common claims while choosing to litigate in the courts its own claims against its

21  employees.").

22        *3.*    *Uber's arbitration provision improperly limits the relief that the*

23            *arbitrator can issue to consumers.*

24        Uber's Terms and Conditions limit the relief that users of its service can seek

25  against it, providing that the company is not liable for "any indirect, punitive, special,

26  exemplary, incidental, consequential or other damages of any type or kind (including

27  personal injury, loss of data, revenue, profits, use or other economic advantage)."  [Ex. A

28  to Cianfrani Decl. (all caps removed).]  Uber argues that this liability disclaimer is

1   irrelevant since it does not concern the arbitration provision and unconscionability

2   arguments must be limited to solely to the arbitration provision. [Motion at 16:8-16.]

3   Uber is both factually and legally wrong.

4           Uber's arbitration provision specifically incorporates Uber's one-sided liability

5   limits by providing that:

6                   The arbitrator's decision will include the essential findings

7                   and conclusions upon which the arbitrator based the award.

8                   Judgment on the arbitration award may be entered in any

9                   court having jurisdiction thereof. ***The arbitrator's award***

10                  ***damages must be consistent with the terms of the***

11                  ***"Limitation of Liability" section above as to the types and***

12                  ***the amounts of damages for which a party may be held***

13                  ***liable.***

14  [Ex. A to Cianfrani Decl. (emphasis added).]

15          Since the "Limitation of Liability" section in the Terms and Conditions serves

16  only to protect Uber (and its licensors), the mandate that the arbitrator's award must

17  comply with these limits renders Uber's arbitration provision unduly harsh and one-sided

18  and renders the provision substantively unconscionable. Not only does this particular

19  contractual clause strip Plaintiffs of several key rights, but it does not make Uber give up

20  any equivalent right or rights. In short, there is no quid pro quo.  Where one side loses

21  something and the other side loses nothing, is the very definition of an unconscionable,

22  unfairly one-sided term. *Ellis v. McKinnon Broadcasting Co.*, 18 Cal.App.4th 1796, 1803

23  (1993) ("Substantive unconscionability . . . refers to an overly harsh allocation of risks or

24  costs which is not justified by the circumstances under which the contract was made.")

25  (internal quotation marks omitted); *Merkin v. Vonage,* 2014 U.S. Dist. LEXIS 14055 at

26  29 ("California law requires an arbitration agreement to have a 'modicum of bilaterality,'

27  and   arbitration   provisions   that   are   'unfairly   one-sided'   are   substantively

28  unconscionable.").

ARIAS OZZELLO & GIGNAC LLP

California courts find substantive unconscionability where an arbitration clause limits the available remedies, thus violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz,* 24 Cal.4th at 103; see also *Graham Oil Co. v. ARCO,* 43 F.3d at 1248 (rejecting arbitration clause that deprived the plaintiff of right to punitive damages and attorneys' fees).   Here, Uber's arbitration provision runs afoul of this principle by severely limiting the remedies available to its users why leaving intact all of Uber's remedies.

### C.   The Unconscionable Terms Are Not Severable.

The California Supreme Court confirmed that California Civil Code section 1670.5 gives courts discretion to determine whether to sever or restrict an unconscionable provision or refuse to enforce an arbitration agreement in its entirety. *Armendariz*, 24 Cal. 4th at 122.   Under California law, severence is inappropriate if "the agreement is "permeated" by unconscionability." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816, 826 (2010).   "The overarching inquiry is whether the interests of justice would be furthered by severance." *Armendariz*, 24 Cal.4th at 124 (quotations omitted). As shown above, Uber's arbitration clause is permeated by unconscionability. If the unconscionable parts were removed, this Court would have to completely re-write the clause from scratch for it to even exist. That it cannot do. *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 727 (2004) (courts cannot cure unconscionable contracts by reformation or augmentation).   Uber's Terms and Conditions are permeated by several unconscionable clauses, and their removal would require the Court to insert its own clauses, essentially rewriting the contract.   Accordingly, the Court should instead find Uber's Terms and Conditions, including the arbitration provision contained therein, unconscionable as a whole.

ARIAS OZZELLO & GIGNAC LLP

ARIAS OZZELLO & GIGNAC LLP

1  **V.    UBER'S ASSERTION THAT PLAINTIFF MCKNIGHT'S CLAIMS IN**

2  **THIS ACTION ARE SUBJECT TO ARBITRATION PURSUANT TO THE**

3  **TRANSPORTATION PROVIDER AGREEMENT IS MERITLESS**

4  Uber argues that Plaintiff McKnight's claims in this action are subjection to

5  arbitration pursuant to the Software License and Online Services Agreement applicable to

6  transportation service providers. [Motion at 18:3-10.]  According to Uber, the arbitration

7  provision in the Software License and Online Services Agreement applies to this action

8  because since the arbitration provision in that agreement is "is broad in scope, covering

9  any "disputes arising out of or related to this Agreement and disputes arising out of or

10  related to Your relationship with Uber." [Motion at 19:27-20:1.]  Uber's boot-strap an

11  arbitration provision addressing a completely different relationship between the parties is

12  specious and should be summarily rejected.

13  "[A] court may order arbitration of a particular dispute only where the court is

14  satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of*

15  *Teamsters*, 561 U.S. 287, 288 (2010) (emphasis in original). "To satisfy itself that such

16  agreement exists, the court must resolve any issue that calls into question the formation

17  or applicability of the specific arbitration clause that a party seeks to have the court

18  enforce." *Id*. Thus, a court must determine "whether [the dispute] falls within the scope

19  of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

20  F.3d 1126, 1130 (9th Cir. 2000).

21  The arbitration provision in the Software License and Online Services Agreement

22  is, by its own terms, limited to claims specifically related to the Software License and

23  Online Services Agreement: "This Arbitration Provision *applies to any dispute arising*

24  *out of or related to this Agreement* or termination of the Agreement and survives after

25  the Agreement terminates." [Ex. A to Coleman Decl. at § 14.3(i) (emphasis added); see

26  also [Ex. A to Coleman Decl. at § 14.3(ix) ("This Arbitration Provision is the full and

27  complete agreement relating to the formal resolution of disputes arising out *of this*

28  *Agreement*.) (emphasis added).]

Because the arbitration provision in the Software License and Online Services Agreement is specifically limited to disputes arising out *that agreement*, there is no basis for applying that provision to Mr. McKnight's claims here.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated:  May 13, 2015                               **ARIAS OZZELLO & GIGNAC LLP**


                                                   By:  _/s/ Mike Arias_
                                                       Mike Arias
                                                       Alfredo Torrijos

                                                   **LIDDLE & DUBIN, P.C.**
                                                   Steven D. Liddle
                                                   Nicholas A. Coulson

                                                   *Attorneys for Plaintiffs*

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION (4:14-CV-05615-JST)**