ROBERT AHDOOT, SBN 172098
  rahdoot@ahdootwolfson.com
TINA WOLFSON, SBN 174806
  twolfson@ahdootwolfson.com
Theodore Maya, SBN 223242
  tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
1016 Palm Ave.
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Attorneys for Plaintiffs,
*Julian Mena, Todd Schreiber, Nate Coolidge, and Ernesto Mejia*

MIKE ARIAS, SBN 115385
  mike@asstlawyers.com
ALFREDO TORRIJOS, SBN 222458
  alfredo@asstlawyers.com
**ARIAS, SANGUINETTI, STAHLE & TORRIJOS, LLP**
6701 Center Drive West, Suite 1400
Los Angeles, California 90045-7504
Tel: 310-844-9696; Fax: 310-861-0168

Attorneys for Plaintiff,
*Byron McKnight*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON MCKNIGHT, JULIAN MENA, TODD SCHREIBER, NATE COOLIDGE, and ERNESTO MEJIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation; and RASIER, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 3:14-cv-05615-JST<br><br>The Honorable Jon S. Tigar<br><br>**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>Hearing</u><br>Date: July 6, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 9 – 19th Floor |

**DECLARATION OF MIKE ARIAS**

I, Mike Arias, declare:

1. I am admitted and licensed to practice before all courts of the State of California, the States of New York, New Jersey and the District of Columbia. I am the managing partner of the firm of Arias Sanguinetti Stahle & Torrijos, LLP, co-counsel of record for Plaintiff Byron McKnight.

2. I submit this declaration in support of Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement filed concurrently herewith.

3. I actively participated in the prosecution of the litigation of this action, I have personal knowledge of the matters described below and I am competent to testify thereto.

**I.   EXPERIENCE OF ARIAS SANGUINETTI STAHLE & TORRIJOS, LLP**

4. I am the managing partner of Arias Sanguinetti Stahle & Torrijos, LLP ("ASST"). I have significant experience in managing and litigating cases wherein I was lead counsel, co-lead counsel or a member of an executive committee tasked with the role of organizing and coordinating with a large number of plaintiffs' counsel.

5. I am the President-Elect of the Consumer Attorneys Association of Los Angeles (CAALA), the First Vice President of the Consumer Attorneys of California (CAOC), and serve on the Board of Governors of the American Association for Justice (AAJ). I also serve as the Vice-chair of the Class Action Litigation Group of AAJ, the Chair of the AAJ Convention Planning Committee, the Chair of the Education Committee of CAOC, and am the Founding Chair of CAALA's Plaintiffs Trial Academy. In 2015 I was awarded the AAJ President's Distinguished Service Award.

6. I and my partner, Alfredo Torrijos, have an extensive background in all aspects of class action litigation (including the trial of certified class actions). Representing consumers in class actions constitutes a significant part of ASST's practice.

7. The partners of ASST, have been engaged in the representation of plaintiffs in class action lawsuits in the fields of consumer fraud, employment, disability rights, insurance,

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

banking, and antitrust. My partners and I collectively have been involved in the representation of plaintiffs in more than 150 different class action cases and have been appointed as class counsel in numerous state and federal courts.

8. ASST and my previous firm (Arias Ozzello Gignac, LLP) have successfully prosecuted and obtained significant recoveries in numerous class action and "mass action" lawsuits. Some of those recoveries include:

- $49 million in cash equivalent calling cards recovered for failure to prorate monthly service fees charged to customers during final month of service prior to termination; *Rolnik, et al. v. AT&T Wireless Services, Inc., et al.* (New Jersey Superior Court).

- $42 million recovery on behalf of a class of customers for inadequately disclosed out-of-cycle billing policies; *Lozano v. AT&T Wireless Services, Inc.* (C.D. Cal.).

- $38 million recovery on behalf of a class of customers for inadequately disclosed service fees on billing statements; *Sterns v. AT&T Mobility Corp.* (C.D. Cal.).

- $20 million in cash equivalent calling cards recovered for overcharges on long distance telephone calls erroneously carried by AT&T and improperly billed by Verizon California; *Roark, et al. v. GTE California Inc., et al.* (Santa Barbara Superior Court).

- $16 million recovery on behalf of a class of victims of fraud and negligent cemetery operations; *In re: Woodlawn Memorial Park Litigation* (Los Angeles Super. Ct.).

- $15 million recovery of unpaid overtime wages and meal break premiums for home healthcare workers; *Costa, et al. v. Vitas Healthcare Corporation of California* (Los Angeles Superior Court).

- $14 million Judgment entered against Cal-ISO after trial for

– 2 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

unpaid overtime; *Hardie v. California Independent System Operator* (Los Angeles Superior Court).

- $10 million recovery on behalf of employees of ERISA violation related to 401(k) plans; *Gottlieb, et al. v. SBC Communications, et al.* (U.S. District Court, Central District of California).

- $10 million recovery of unpaid wages, break premiums, and other relief in class action alleging the misclassification of Store Managers in *Mosse v. CVS Caremark Corp.* (Los Angeles Superior Court).

- $9 million recovery for victims of racial profiling harassment at an amusement park; *Armendarez v. Six Flags Magic Mountain* (Los Angeles Superior Court).

- $8.3 million recovery for class members in suit asserting improper handling of decedents' remains; *In re: Paradise Memorial Park Litigation* (Los Angeles Superior Court).

- $8 million recovery of unpaid overtime wages and meal break premiums for fast food restaurant managers; *Elias, et al. v. El Pollo Loco, Inc.* (Los Angeles Superior Court).

9. Additionally, my firm is currently prosecuting numerous class actions in both state and federal courts. Some of these suits include:

- Representing a certified class of consumers for misrepresentation of carbohydrate content in health bars in *Wells v. Abbott Laboratories, Inc.*, Case No. BC389753 (Los Angeles Superior Court).

- Representing a certified class of over 220,000 current and former employees of Safeway Inc. for violations related to meal and rest breaks, seeking restitution based on unfair and unlawful company-wide policy in *Esparza vs. Safeway Inc.*, Case No.

– 3 –

|   |   |
|---|---|
| 1 | BC369766 (Los Angeles Superior Court). |
| 2 | • Representing a certified class of over 100,000 individuals who were not provided with legally compliant bills after their vehicles were towed without their consent in *First Service Credit Union v. United Road Towing*, Case No. A-10-616806-C (Eighth Judicial District Court, Clark County, Nevada). On July 1, 2015, following trial of the certified class' claims, the court awarded $5,000,000 in damages in this action. |

10. I have given numerous lectures and presentations on class action issues, including: *Optimizing the Likelihood of Obtaining Approval Of Your Settlement* (2017 Consumer Attorneys of California 11th Annual Class Action and Mass Tort Seminar); *Trying the Class Action* (2016 Consumer Attorneys of California Hawaii Travel Seminar); *Fee Applications – Recent Developments* (2016 Consumer Attorneys of California Annual Convention); *Evaluating Potential Class Actions: What's Hot and What's Not* (2015 Consumer Attorneys of California Hawaii Travel Seminar); *Professional Objectors: Recent Developments and How to Deal with Them* (2015 Consumer Attorneys of California Annual Convention); *Trying the Class Action: Opening Statements* (2015 AAJ Class Action Seminar); *Trying the Class Action: Closing Arguments* (2015 AAJ Class Action Seminar); *Evaluating Potential Class Actions* (2015 Consumer Attorneys of California 9th Annual Class Action Seminar); *Bad Actions Equal Class Actions: Identifying the Differing Types* (2015 Consumer Attorneys of California Hawaii Travel Seminar); *Are Wage and Hour Class Actions the Beginning of the End?* (2014 JAMS Class Action Seminar); *Getting Your Settlements Approved* (2014 Bridgeport Class Action Conference); *AT&T Mobility v. Concepcion: Assessing the Impact on Class Action Litigation* (2013 Bridgeport Class Action Conference); *Class Certification Motions in the Post Brinker Era* (2013 Consumer Attorneys of California Annual Convention); *Jury Selection – Special Issues for Class Actions* (2012 American Association for Justice Annual Convention); *Recent Developments on the Use of Cy Pres Awards in Class Actions* (2012 Consumer Attorneys of California

– 4 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

Annual Convention); *Class Actions: An A To Z Crash Course* (2012 Consumer Attorneys of California Hawaii Travel Seminar); *Class Action Settlement Strategies* (2010 Strafford CLE Webinar and Teleconference); *Certifying a Class Action* (2009 Consumer Attorneys Association of Los Angeles Annual Conference).  In addition, I have co-chaired the two-day Annual Class Action Litigation Management Conference presented by Bridgeport Programs for five years.

11. I have written and co-authored numerous articles on class action issues, including: Class Actions: Getting Your Class Certified (Advocate Feb. 2010); and *A Class Action Primer* (Advocate Mar. 2010).

12. My partner, Alfredo Torrijos, likewise has significant experience in representing consumers in class actions, including successfully representing consumers in actions against Google, Yahoo!, CitySearch, Network Solutions, and Nationwide Insurance. Mr. Torrijos has spoken extensively on class action topics, including: *Class Actions in the Age of Big Data* (November 15, 2014, 2014 Consumer Attorneys of California Annual Convention); *Class Action Settlements: Rule 68 Offers of Judgment and Other Strategic Tools* (April 11, 2014, Bridgeport Continuing Education 2014 Class Action Conference); *Getting Your Settlement Approved* (September 2014, JAMS Class Action Seminar); *The Changing Standards of Class Certification* (January 10, 2014, Bridgeport Continuing Education Consumer Class Action Conference); *Class Actions: Recent Development*s (January 2014, myLawCLE); *CAFA Removal and Remand: Latest Developments* (March 29, 2011, Stafford Publications); and *Is it better to file a nationwide class action or state-only class action?* (January 28, 2010, Consumer Attorneys of California 4th Annual Class Action Seminar).  Mr. Torrijos has also co-authored numerous articles concerning class action law, including: *Notice 2.0: How Technology is Changing Class Action Notice Procedures* (January 2011, Westlaw Journal); *The Internet, Indispensable for Providing Class Action Notice* (August 16, 2010, Los Angeles Daily Journal); *The Rise of "Professional Objectors" in the Class Action Settlements* (July 8, 2010, Los Angeles Daily Journal); and *The End of Consumer Class Action Arbitrations* (May 14, 2010, Los Angeles Daily Journal).

– 5 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

13.     Based on the foregoing, I believe that I, Alfredo Torrijos and ASST are qualified to represent the interests of the proposed class in the instant action.

## II. SETTLEMENT NEGOTIATIONS WERE HARD FOUGHT, EXTENSIVE AND CONDUCTED AT ARMS-LENGTH

14.     The proposed settlement, as embodied in the Amended Stipulation of Settlement filed concurrently herewith (the "Settlement"), is the product of extensive and on-going arms-length negotiations between the parties by experienced counsel on both sides of the table, who are fully versed in class litigation.  The parties reached a settlement only after extensive formal and informal settlement discussions as set-forth below – settlement discussions which were conducted through numerous all-day mediations with Judge Carl J. West (Ret.) of JAMS and Robert J. Kaplan, Esq. of Judicate West, numerous in-person meetings, telephone calls and other communications by and between the parties' counsel, and a settlement conference before the Honorable Chief Magistrate Judge Joseph C. Spero.

15.     Prior to filing the complaint, Plaintiffs' counsel devoted a significant amount of time to the investigation of the facts underlying Plaintiffs' and the Class' claims.  This investigation continued – both through informal discovery and through independent sources – after the complaint initiating this action was filed in December of 2014.  Only after Plaintiffs' counsel had an opportunity to explore the factual and legal issues underlying this litigation did Plaintiffs engage in any substantive settlement discussions with Defendants.  The first of these discussions took place on August 24, 2015 during an all-day, in-person mediation before Judge Carl J. West (Ret.) – an experienced mediator and former judge who served for nearly 20 years on the Los Angeles Superior Court, with the last 10 years spent as a judge with the Superior Court's Complex Civil Litigation Program.  Following the August 24, 2015 in-person mediation, the parties continued engaging in informal settlement discussions both directly and through Judge West.

16.     On October 2, 2015, the parties conducted a second all-day, in-person mediation before Judge West and, on October 30, 2015, the parties participated in a third

– 6 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

mediation session with Judge West. Following both the October 2nd and October 30th in-person mediations, the parties continued to engage in detailed and comprehensive settlement discussions both directly and through Judge West. Although these mediations did not result in a settlement, the parties did make significant progress following the October 30th in-person mediation with Judge West. The parties reported this progress to the Court on November 13, 2015 in their Joint Stipulation and [Proposed] Order Updating the Court on the Settlement Discussions and Requesting Extension of Temporary Stay. [See Doc. #60, at 3:3-5.]

17. Following the October 30, 2015 in-person mediation, the parties continued their settlement discussions both directly and through Judge West. These discussions continued throughout the month of November and into December. Finally, on December 14, 2015, the parties were able to report to the Court that they had arrived at a settlement in principle and began the process of negotiating the specific settlement terms and drafting a stipulation of settlement that they would present to the Court. [See Doc. #63, at 2:4-6.] Although the parties had reached a settlement in principal, the negotiation of the final settlement and the terms of a stipulation of settlement continued throughout December 2015, all of January 2016 and into February 2016.

18. In February 2016, the parties completed their negotiations regarding the terms of the proposed settlement, finalized the drafting of a stipulation of settlement, and entered into a stipulation of settlement (the "First Stipulation") which was filed with the Court on February 11, 2016. [Doc. #74.] Also on February 11, 2016, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. [Doc. #75-3.] On August 30, 2016, the Court issued an Order Denying Motion for Preliminary Approval of Class Action Settlement. [Doc. #98.]

19. Following the Court's denial of Plaintiffs' motion for preliminary approval, the parties initiated discussions and negotiations regarding the possibility of entering into a new, amended settlement that would address the issues raised by the Court in its August 30, 2016 Order. The parties subsequently agreed upon a new mediator, Robert J. Kaplan, Esq.

– 7 –

DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)

of Judicate West, to assist them with these negotiations. In addition to numerous telephonic discussions and negotiations with Mr. Kaplan, the parties also participated in three separate in-person mediations with Mr. Kaplan. Those in-person mediations took place on October 5, 2016 in Los Angeles, on November 22, 2016 in San Diego, and on January 5, 2017 in San Francisco. In addition to these discussions and negotiations conducted through and with the assistance of Mr. Kaplan, the parties also engaged in numerous telephonic discussions and negotiations directly between themselves, including an in-person meeting on December 7, 2016, and continued to exchange and analyze information provided for purposes of mediation.

20. On February 17, 2017, the parties informed the Court that they had reached a settlement in principle and were in the process of drafting an amended stipulation of settlement. [Doc. #110.] At the February 22, 2017 case management conference, the parties explained to the Court that while they had reached a settlement in principle, issues remained regarding, *inter alia*, the allocation and distribution of the settlement fund among members of the Class. The parties advised the Court that they believed that a Magistrate Judge could assist them in resolving these issues and requested that the Court refer the matter to a Magistrate Judge for settlement. [Doc. #112.] The Court thereafter referred this matter to Chief Magistrate Judge Joseph C. Spero for settlement. [Doc. #115.] Pursuant to that reference, on March 7, 2017 the parties attended a settlement conference before Judge Spero.

21. Since the March 7, 2017 settlement conference with Judge Spero, the parties continued negotiating and drafting the terms of the amended stipulation of settlement – negotiations which continued throughout March 2017, all of April 2017 and all of May 2017. Throughout this entire period these negotiations were extensive and often contentious.

22. In the final days of May 2017, the parties finalized the Amended Stipulation of Settlement and the exhibits thereto (the "Amended Stipulation"). The Amended Stipulation was entered into by the parties on or about June 1, 2017.

– 8 –

DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)

## III. PLAINTIFFS' COUNSEL HAVE SUFFICIENT INFORMATION TO MAKE AN INFORMED EVALUATION OF THE PROPOSED SETTLEMENT

23. Prior to the filing of the complaint initiating this action, ASST engaged in significant investigation, research and analysis concerning Plaintiffs' claims, including: (i) online and legal research concerning Plaintiffs' potential claims and defendants Uber Technologies, Inc. and Rasier, LLC; (ii) numerous interviews with users of Uber's services and Uber drivers; (iii) the review of documents provided by Plaintiffs (including, emailed receipts from Uber and screenshots of the Uber app and website); and (iv) an extensive review and analysis of other actions filed against Uber Technologies, Inc.

24. Subsequent to the filing of the complaint initiating this action and prior to entering into the First Stipulation, ASST engaged in substantial informal discovery, interviews, investigations and analysis concerning the Class' claims, including: (i) reviewing, analyzing and cataloging tens of thousands of pages of documents produced by Defendants, including documents relating to the extent, nature and quality of Defendants' safety procedures, Defendants' representations, disclosures, marketing and advertising regarding the safety of Defendants' rideshare services and Defendants' background checks, Defendants' representations and disclosures regarding the Safe Rides Fee, Defendants' safety-related expenditures, and Defendants' safety-related revenues (including revenues from the Safe Rides Fee); (ii) conducting interviews of current and former high level employees and executives of Defendants; and (iii) obtaining and analyzing data and information provided by Defendants, including, financial data relating to Defendants' safety-related expenditures and revenues, data and information relating to the size and composition of the Class and data relating to the Class' use of Defendants' rideshare services.

25. ASST's investigation also included the inspection and testing of Defendants' rideshare app across various operating system platforms, consultations with experts, interviews of witnesses, drivers, and putative class members, the evaluation of documents and information related to other litigation against Defendants, as well as extensive factual

– 9 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

and legal research regarding arbitration, the sufficiency of the claims, and the appropriateness of class certification.

26. As part of our investigation of the Class' claims and prior to entering into the First Stipulation, Plaintiffs' counsel submitted formal written requests for information relevant to the Class' claims and Defendants' anticipated defenses. In response to those requests, Defendants provided (in addition to the tens of thousands of pages of responsive documents noted above) sworn responses setting forth information needed by Plaintiffs' counsel to evaluate the strength and weaknesses of the Class' claims.

27. Since the Court's August 30, 2016 Order Denying Motion for Preliminary Approval of Class Action Settlement and as part of the parties' settlement discussions and negotiations which ultimately led to the Amended Stipulation, Plaintiffs' counsel have obtained, organized and reviewed an additional 35,000 pages of documents from Defendants. In addition, Defendants also provided discovery from related cases, included depositions and expert reports from related cases. Plaintiffs' counsel also obtained and reviewed additional data from Defendants including financial data relating to Defendants' safety-related expenditures and revenues, data and information relating to the size and composition of the Class and data relating to the Class' use of Defendants' rideshare services.

28. Since the Court's August 30, 2016 Order Denying Motion for Preliminary Approval of Class Action Settlement and as part of the parties' settlement discussions and negotiations which ultimately led to the Amended Stipulation, Plaintiffs' counsel have obtained updated and additional verified responses from Defendants related to the Class' claims and Defendants' defenses to those claims. The Declaration of Robert Ahdoot in Support of Motion for Preliminary Approval of Class Action Settlement ("Ahdoot Declaration") sets forth the information provided by Defendants in these verified responses. [See Ahdoot Declaration, at ¶¶ 39 - 71.] I have reviewed the Ahdoot Declaration and confirm that the information set forth in Paragraphs 39 to 71 of the Ahdoot Declaration accurately reflects the corresponding verified responses provided by Defendants and relied

– 10 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)**

on by Plaintiffs' counsel in evaluating the Class' claims.

29. In addition to Defendants verified responses, and as noted above, Defendants have provided Plaintiffs' counsel with tens of thousands of pages of documents, and discovery from related cases, included depositions and expert reports from related cases. Plaintiffs' counsel (including ASST) have organized, reviewed and analyzed these documents. Plaintiffs have cited some of these documents in their motion for preliminary approval. Paragraphs 73 to 81 of the Ahdoot Declaration set forth and accurately describe these documents.

30. Based on my experience, both in obtaining class certification and litigating similar claims, the degree of investigation that was conducted in this matter is sufficient to expose and evaluate the strengths and weaknesses of the substantive merit of the Class' claims, as well as the likelihood of obtaining and maintaining certification of such claims through trial.

## IV. PLAINTIFFS' COUNSEL'S INFORMED EVALUATION OF THE PROPOSED SETTLEMENT

31. Based on my firm's investigation, research, document and information review, interviews, Defendants' verified responses, my firm's analysis, as well as my personal knowledge and experience, I believe that the Settlement as reflected in the Amended Stipulation is in the best interests of the Class and that the Settlement is fair, reasonable, and adequate. The benefits afforded by the Settlement reflect a reasoned compromise which not only takes into consideration the risks inherent in all complex, class litigation, but also the various issues in this case which had the potential to completely eliminate recovery available to the Class.

32. While I believe that the claims asserted in this action have merit and that the evidence developed to date supports those claims, I also recognize and acknowledge, based on my experience, the expense and length of time necessary to prosecute this case to judgment. I have also have taken into account the uncertain outcome and the risk of any

– 11 –

DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)

litigation, as well as the difficulties and delays inherent in such litigation. I am also mindful of the inherent problems of proof in establishing the claims asserted in this action, and rebutting Defendants' possible defenses to those claims. Here, for example, in order to obtain any benefit for the Class, Plaintiffs must, absent settlement, overcome Defendants' arbitration provisions and class action waivers, obtain and maintain class certification, avoid summary judgment or partial summary judgment of their claims, and ultimately succeed at trial and overcome any appeals.

33. Paragraphs 82 to 85 of the Ahdoot Declaration sets forth the formula used pursuant to the Amend Stipulation to calculate the Settlement Share to be paid to each member of the Class, the data and assumptions used to estimate the Settlement Share, and the average, estimated Settlement Share. I have reviewed Paragraphs 82 to 85 of the Ahdoot Declaration and agree with the analysis and calculations set forth therein.

34. I believe, based on the benefits being made available to the Class under the Settlement and considering the risk and potential duration of further litigation, that the Settlement confers substantial benefits upon the Class. I further believe that the Settlement is, in light of all known facts and circumstances, in the best interest of the Class and is therefore reasonable, fair, and adequate.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, executed on June 1, 2017 in Los Angeles, California.

_____
Mike Arias

DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 14-CV-05615-JST)