FILED

AUG 07 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON McKNIGHT, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No.14-cv-05615-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT**[1]<br><br>Re: ECF No. 127 |

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Amended Class Action Settlement. ECF No. 127. The Court previously denied a motion for preliminary approval of a proposed settlement with different terms. ECF No. 98. Plaintiffs now move for approval of a revised settlement. The Court will grant the motion.

## I.   BACKGROUND

This motion arises from a putative class action against Defendants Uber Technologies, Inc., and Rasier, LLC (collectively, "Uber" or "Defendants") revolving around Uber's alleged misrepresentations and omissions regarding its "Safe Rides Fee" and the safety measures, background checks, and other efforts it takes to provide safety for its customers. See ECF No. 67. Plaintiffs Matthew Philliben, Julian Mena, Todd Schreiber, Nate Coolidge, Ernesto Mejia, and Byron McKnight (collectively, "Plaintiffs") bring eight causes of action: (1) Breach of Implied Contract under California law; (2) Breach of Implied Contract under Illinois law; (3) Breach of Implied Contract under Massachusetts law; (4) Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (5) Unlawful Business Practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.; (6) Unfair Business Practices in violation of section 17200, et

---

[1] The public version of this order has been redacted to omit information from sealed portions of the record.

1     seq.; (7) Violation of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/2, et seq.; and (8)

2     False Advertising in violation of Cal. Bus & Prof. Code § 17500, et seq. Id. ¶ 14. Plaintiffs seek

3     monetary relief as well as equitable relief enjoining Uber from continuing the alleged harmful

4     conduct. See id. at 39.

5          On July 14, 2016, Plaintiffs filed a Motion for Preliminary Approval of Class Action

6     Settlement. ECF No. 95. The Court denied the motion, identifying two deficiencies: (1) the

7     settlement provided preferential treatment to certain class members; and (2) the settlement amount

8     did not fall within the range of possible approval. ECF No. 98 at 7-9. The Court also denied class

9     certification on the grounds that the class did not satisfy Rule 23's typicality, commonality, and

10     predominance requirements. Id. at 18.

11         After the Court denied the proposed settlement, the Parties returned to negotiations and

12     engaged in three additional mediation sessions and a settlement conference before Chief

13     Magistrate Judge Joseph C. Spero. ECF No. 127 at 13. The Parties reached a new agreement and

14     on June 1, 2017, Plaintiffs filed a Motion for Preliminary Approval of Amended Class Action

15     Settlement. ECF No. 127. Defendants submitted a statement of support on June 15, 2017. ECF

16     No. 134.

17     **II.**     **TERMS OF THE AMENDED SETTLEMENT**

18         Plaintiffs seek to represent a class consisting of "all persons who, from January 1, 2013 to

19     January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride

20     Services With a Safe Rides Fee in the United States or its territories." ECF No. 127 at 14. Uber's

21     Rideshare Services refers to "all transportation services that are arranged through Defendants'

22     website or the Uber App, regardless of type of ride or service that is requested." Id. at 14 n.3. The

23     proposed class consists of approximately 22.4 million potential members. Id. at 16.

24         The settlement provides for a $32.5 million non-reversionary settlement fund. ECF No.

25     127 at 10. After accounting for administrative costs, attorneys' fees, and service awards, "each

26     [c]lass [m]ember will receive $0.25 for their first Safe Rides Fee Service and $0.05 for each

27     subsequent Safe Rides Fee Service." Id. at 16. The average Settlement Share will be

28     approximately $1.07. Id. Any residual funds will be paid to the National Consumer Law Center.

United States District Court
Northern District of California

1  Id. at 15. Defendants agree to cease charging "Safe Rides Fees" and to refrain from using

2  statements like "safest ride on the road" and "industry-leading" when describing their safety

3  measures in commercial advertising. Id. at 16.

4      Class members will receive notice of the settlement at the email address associated with

5  their Uber Rider Accounts. Id. at 16. Internet advertising, including sponsored search listing and

6  banner ads, will further publicize the settlement. Id. The Long Form Notice will be available on a

7  settlement website and upon request through a toll-free number. Id. A Publication Notice will be

8  published in accordance with the CLRA (Cal. Civ. Code § 1781(d)). Id. at 16-17. Plaintiffs'

9  Counsel will place links to the settlement website on the homepages of their websites. Id. at 17.

10  Plaintiffs contend the notice plan will reach no less than 80% of class members, and likely more

11  than 90%. Id.

12      A class member may opt-out of the class by sending a written request to the Settlement

13  Administrator postmarked on or before a date no later than 90 days after the Court orders

14  preliminary approval. Id. at 18. Class members who remain in the class will be deemed to have

15  released Defendants of all claims, except for personal injury claims, which were asserted or could

16  have been asserted in the litigation. Id. at 17-18.

17  **III.    JURISDICTION**

18      The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

19  **IV.    PRELIMINARY APPROVAL**

20      **A.    Legal Standard**

21      The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

22  actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of

23  a certified class action must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As the

24  Ninth Circuit has explained, "[t]he purpose of Rule 23(e) is to protect the unnamed members of

25  the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516

26  F.3d 1095, 1100 (9th Cir. 2008).

27      Where the "parties reach a settlement agreement prior to class certification, courts must

28  peruse the proposed compromise to ratify both the propriety of the certification and the fairness of

United States District Court
Northern District of California

the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

At a preliminary approval stage, the Court looks to see if the settlement agreement

> (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.

Harris v.Vector Mktg. Corp., No. C–08–5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); see also In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (explaining that "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion"). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted).

The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provisions." Hanlon, 150 F.3d at 1026 (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 630 (9th Cir. 1982)). Rather, "[t]he settlement must stand or fall in its entirety." Id. Ultimately, the "decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276 (citation omitted).

**B.    Analysis**

In its prior order denying preliminary approval ("Denial Order"), the Court stated there was no reason to suspect the prior settlement ("2016 Settlement") was the product of any collusive negotiations, nor were there any obvious deficiencies beyond those captured by the separate criteria of the preliminary approval standard.[2]   ECF No. 98 at 5-6.  This remains true for the amended settlement ("Amended Settlement").  Therefore, the Court turns to the deficiencies it identified in its Denial Order.

**1.    Preferential Treatment**

Under this factor, the Court evaluates whether the settlement agreement provides preferential treatment to certain class members.  The Court found the 2016 Settlement did so in two ways.  ECF No. 98 at 6-8.  The Amended Settlement corrects these deficiencies.

First, the 2016 Settlement included all Uber riders in the proposed class, instead of only riders who had paid a Safe Rides Fee.  ECF No. 98 at 7.  As a result, it "compensate[d] persons who [had not] been injured . . . at the expense of persons who [had] been."  Id.  The Court found no justification for this preferential treatment given the ease with which Uber could identify whether or not a potential class member had paid a Safe Rides Fee.  The Amended Settlement corrects this deficiency by excluding all individuals from the class who did not pay at least one Safe Rides Fee.  ECF No. 127 at 10.

Second, the 2016 Settlement provided preferential treatment by dividing the available funds between all class members equally, regardless of the number of Safe Rides Fees each class member paid.  ECF No. 98 at 7.  In declining to allocate funds according to degree of injury, the settlement prioritized riders who had paid only one Safe Rides Fee over those who had paid the fee multiple times.  Id.  The Amended Settlement corrects this deficiency by compensating each class member with $0.25 for the first Safe Rides Fee he or she paid, and $0.05 for each subsequent fee.  ECF No. 127 at 22.  Although this allocation method does not distribute funds on a perfectly proportional basis, pure proportionality is not necessary.  See, e.g., Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (granting preliminary approval for a settlement

---

[2] For example, the 2016 Settlement did not contain a reversion clause.  ECF No. 127 at 15.

1   that distributed funds by giving $175 to all class members who received at least one unsolicited

2   fax, and up to $275 to class members who received additional faxes). The Amended Settlement's

3   allocation method marks a significant improvement upon the 2016 Settlement's proposed per

4   capita allocation. See Cordy v. USS-Posco Indus., No. 12–cv–00553-JST, 2014 WL 212587, at

5   *2 (N.D. Cal. Jan. 17, 2014) (granting preliminary approval for an amended settlement because

6   "the parties' effort to tailor relief based on individual class members' circumstances [was]

7   substantially fairer than the previous proposal," which made no such effort).

8   Accordingly, the Court finds that the Amended Settlement does not impermissibly provide

9   preferential treatment to certain class members.

### 2. The Range of Possible Approval

11   In evaluating the fairness and adequacy of a settlement, the Court balances the following

12   factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

13   duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4)

14   the amount offered in settlement; (5) the extent of discovery completed and the stage of the

15   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

16   participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill.,

17   L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004). Of particular importance is the value to

18   class members of the settlement compared to their potential recovery in a successful litigation.

19   Harris, 2011 WL 1627973, at *10; see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 454, 459

20   (9th Cir. 2000). After weighing these factors, the Court concluded that the 2016 Settlement did

21   not fall within the range of possible approval.

22   In its Denial Order, the Court found that, with respect to the first three factors, there were

23   significant obstacles in Plaintiffs' litigation path. ECF No. 98 at 10. The same is true now. In

24   particular, Defendants' pending motion to compel arbitration based on an arbitration clause

25   contained in Uber's Terms and Conditions means Plaintiffs may never make it to trial. See ECF

26   No. 25. Even if they do, Defendants will advance multiple challenges to the merits of Plaintiffs'

27   claims. See ECF No. 127 at 24-27. For example, Defendants will contend that many of the

28   challenged statements were not false and were only visible to the public for a short time. ECF No.

6

134 at 3-4.

Despite these obstacles, the Court nevertheless concluded in its Denial Order that, weighed against Plaintiffs' maximum potential recovery at trial, "Plaintiffs [had] not adequately explain[ed] why a gross settlement of $28.5 million [was] fair, adequate, and reasonable." ECF No. 98 at 14. The Court emphasized that the total amount recoverable at trial, measured by Uber's gross revenue from the Safe Rides Fees, totaled almost ___ times the proposed settlement amount. Id. at 11. Plaintiffs objected to the use of Uber's gross fee revenue as the baseline for total potential recovery at trial. ECF No. 96 ¶ 70. They argued that although gross revenue could serve as a starting point, the Court should deduct the costs of Uber's legitimate safety enhancing measures that benefitted Plaintiffs. Id. The Court, however, found that Plaintiffs had significantly overestimated Uber's alleged rider safety expenses and declined to make any deductions. ECF No. 98 at 12-14. In light of the ___ fold discrepancy between the settlement amount and the total amount recoverable at trial, the Court concluded the settlement "[did] not fairly and reasonably protect the class." Id. at 14.

The Amended Settlement attempts to correct this discrepancy. First, it increases the total settlement amount by $4 million. ECF No. 127 at 10. But because Uber also increased its estimate of its Safe Rides Fee revenue from $ ___ ,  this change only negligibly improves the ratio between the settlement amount and the total amount recoverable at trial. ECF No. 96 ¶ 41; ECF No. 128 ¶¶ 46-47.

Second, Plaintiffs provide a more tailored estimate of Uber's safety expenses. This is a meaningful change. In its Denial Order, the Court refused to deduct Plaintiffs' estimate of Uber's safety expenses because Plaintiffs had included ___ of Uber's insurance costs. ECF No. 98 at 12-13; ECF No. 75-6 at 10. The Court explained that those insurance costs largely consisted of "garden variety liability insurance" that protects Uber, not its customers. ECF No. 98 at 12. In the Amended Settlement, Plaintiffs revise this estimate to include insurance costs related only to *rider* safety, which they estimate at $ ___ ECF No. 127 at 30. Plaintiffs also include more detailed explanations of Uber's costs related to other safety-enhancing mechanisms, such as background checks and vehicle inspections. See ECF No. 128 ¶¶ 49-58. The Court agrees

7

1    that it is reasonable to deduct these more narrowly tailored expenses from Uber's gross fee

2    revenue in order to determine Plaintiffs' maximum potential recovery at trial, because – without

3    deciding the question now – a jury could conclude that such expenses were fairly incurred in

4    providing a "safe ride." Incorporating Plaintiffs' deductions, the settlement equates to

5    approximately ·        of the maximum possible recovery at trial. ECF No. 127 at 11. Weighed

6    against the risks of litigation, this falls within the range of possible approval. See, e.g., Hendricks

7    v. StarKist Co., No. 13–cv–00729–HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015)

8    (granting preliminary approval of a settlement in a False Advertising and Unfair Competition Law

9    case where the settlement amount "constitut[ed] only a single-digit percentage of the maximum

10   potential [recovery]").

11                    **3.      Notice, Opt-Out, and Distribution Procedures**

12           The Court did not address the procedures for notice, opt-out, or distribution of settlement

13   funds in its Denial Order, but finds here that the proposed mechanisms adequately protect the class

14   members' interests.

15           The notice program adequately informs class members of the settlement because it

16   includes direct notice to the class and is expected to reach at least 80%, and likely over 90%, of

17   class members. ECF No. 127 at 17; see In re Bluetooth, 654 F.3d at 940 (approving a notice

18   program that reached 80% of potential class members). The proposed opt-out procedure—sending

19   a written request to the Settlement Administrator within 90 days after the Court orders preliminary

20   approval—also adequately protects class members' ability to opt-out.

21           The distribution method, which gives riders the option to receive their settlement share

22   through payment to their PayPal account, payment to their bank account via eCheck, or a credit

23   towards their next Uber ride, also adequately protects class members' interests. ECF No. 127 at

24   15.

25           The Court will evaluate requests for service awards and attorneys' fees at the final

26   approval hearing.

27                    **4.      Cy Pres Distribution**

28           In its last order, the Court noted that the parties' settlement agreement provided for any

residual funds to be distributed to the National Consumer Law Center, but did not comment further on the *cy pres* provision of the settlement. The Court therefore addresses that issue now.

"*Cy pres* is shorthand for the old equitable doctrine '*cy près comme possible*' – French for 'as near as possible.' Although the doctrine originated in the area of wills as a way to effectuate the testator's intent in making charitable gifts, federal courts now frequently apply it in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (internal quotations omitted). Where a class action settlement contains a *cy pres* award provision, the Court must not only determine "whether the *class settlement,* taken as a whole, is fair, reasonable, and adequate to all concerned," it must also determine "whether the *distribution* of the approved class settlement complies with [the Ninth Circuit's] standards governing *cy pres* awards." Nachshin v. AOL, LLC, 663 F.3d 1034, 1040 (9th Cir. 2011) (emphasis in original) (internal quotations omitted). Thus, "[a] *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." Kellogg, 697 F.3d at 865 (internal quotations omitted).

In determining whether a *cy pres* award meets these criteria, courts should evaluate the award holistically, recognizing that a *cy pres* award "serves the goals of civil damages by ensuring [the defendant] fairly pays for the class's alleged losses." In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 35 (1st Cir. 2009). Courts must also be mindful of the important role that *cy pres* awards play in furthering the deterrent function of class actions "where practical considerations prevent the distribution of funds directly to class members." McClintic v. Lithia Motors, Inc., No. C11-859RAJ, 2012 WL 112211, at *5 (W.D. Wash. Jan. 12, 2012); In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1355 (S.D. Fla. 2011) (one of the most important functions of the class action device in small-stakes cases is the "deterrence of wrongdoing").

The present settlement contemplates than any residual funds will be distributed to the National Consumer Law Center. NCLC is a non-profit organization committed to protecting consumers and promoting fairness in the marketplace, with a particular focus on false advertising

9

1   and other misleading statements and omissions by businesses. ECF No. 129 at 2. In addition to

2   its advocacy work, NCLC also publishes material for the legal profession and the public

3   concerning false advertising and deceptive practices. Id. Its work has been described as follows

4   by another judge of this court:

> The National Consumer Law Center (NCLC) advocates on behalf of consumers,
> providing legal services and aid, and representing them on matters of interest
> before Congress and state legislatures and by filing amicus briefs in courts. In
> 2009, it published "Consumer Protection in the States: A 50–State Report on Unfair
> and Deceptive Acts and Practices Statutes," which analyzed and summarized the
> unfair-and-deceptive-acts-and-practices (UDAP) laws that protect consumers in
> each state and the District of Columbia, spotlighted limitations in these laws and in
> their enforcement, and made proposals for reform. It also provides help to
> litigation counsel representing persons with incomes below 200% of the federal
> poverty line in matters involving consumer sales and services.

11  Miller v. Ghirardelli Chocolate Co., No. 12-CV-04936-LB, 2015 WL 758094, at *8 (N.D. Cal.

12  Feb. 20, 2015) (internal citation omitted). Numerous courts, including this one, have previously

13  approved *cy pres* awards to NCLC in consumer class actions similar to this one. See, e.g.,

14  Tadepalli v. Uber Techs., Inc., No. 15-CV-04348-MEJ, 2016 WL 1622881 at *2 (N.D. Cal. Apr.

15  25, 2016); Miller, 2015 WL 758094 at *8; *Custom LED, LLC v. eBay, Inc.,* No. 12-CV-00350-

16  JST, 2014 WL 2916871 at *2 (N.D. Cal. June 24, 2014) (final approval of settlement). NCLC has

17  committed to use any *cy pres* funds it receives here to support consumer education. ECF No. 129

18  at 4.

19      For the foregoing reasons, the Court finds that the *cy pres* distribution to NCLC in this

20  settlement satisfies the Ninth Circuit's requirements. Its work is directly relevant to the alleged

21  omissions and misrepresentations in this case, and will provide a nationwide benefit to the

22  consumers most likely to use Uber's services.

23                      *       *       *

24      In sum, the proposed settlement adequately addresses the concerns raised in the Denial

25  Order and fairly and reasonably protects the class. Accordingly, the Court grants preliminary

26  approval of the settlement.

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## V.   CLASS CERTIFICATION

### A. Legal Standard

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011)).  Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here, Plaintiffs invoke Rule 23(b)(3) and must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of demonstrating that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met.  See Wal-Mart, 564 U.S. at 350.

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).  Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Id. (citations omitted).

### B. Analysis

The Court denied class certification of the 2016 Settlement because Plaintiffs failed to satisfy Rule 23(a)'s typicality and commonality requirements, or Rule 23(b)'s predominance requirement.  ECF No. 98 at 18.  The Amended Settlement satisfies these requirements.

In its Denial Order, the Court found that Plaintiffs' claims were not typical of the entire class because the class included riders who had never paid the Safe Rides Fee, paid it once, and paid it multiple times.  Id. at 15-16.  The Court found that Plaintiffs had not satisfied the commonality and predominance requirements for a similar reason: because class members were injured to different degrees, or not injured at all, individualized questions overrode whatever

11

1    issues could be commonly resolved.  Id. at 17.

2        The Amended Settlement corrects these deficiencies by excluding from the class riders

3    who did not pay Safe Rides Fees and by allocating funds according to the number of fees each

4    rider paid.  ECF No. 127 at 10.  Accordingly, Plaintiffs' injuries are now typical of the entire

5    class; all class members suffered the same *type* of injury and the allocation method accounts for

6    the different *degree* of those injuries.  Moreover, because individual questions related to the

7    existence or extent of injury are handled mechanically during the allocation process, common

8    questions of law and fact now predominate.

9        Because the Amended Settlement adequately remedies the deficiencies identified in the

10   Denial Order, and the other requirements of Rule 23 remain satisfied, the Court will provisionally

11   certify the class for settlement purposes.

12   **VI.    CONCLUSION**

13       For the reasons discussed herein, the Court hereby orders as follows:

14   1.      Preliminary approval of the proposed Amended Settlement;

15   2.      Provisional certification of the following class for settlement purposes only:

16          All persons who, from January 1, 2013 to January 31, 2016, used the Uber App or
            website to obtain service from one of the Uber Ride Services With A Safe Rides
17          Fee in the United States or its territories. "Uber Ride Services With A Safe Rides
            Fee" means all transportation services that were arranged through Defendants'
18          website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.).
            "Uber App" means the Uber smartphone application by which riders may request
19          Uber Rideshare Services. "Uber Rideshare Services" means all transportation
            services that are arranged through Defendants' website or the Uber App, regardless
20          of type of ride or service that is requested. "Uber" means the companies,
            incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC,
21          who operate the ride share service commonly known as Uber. Excluded from the
            Class are (a) all persons who are employees, directors, and officers of Uber
22          Technologies, Inc. and Raiser, LLC; and (b) the Court and Court staff.
            "Employees" means any person whose Uber account email address ended with
23          "@uber.com" as of May 8, 2017.
24
25   3.      Pending the Fairness Hearing, all proceedings in the Action, other than those

26   proceedings necessary to carry out or enforce the terms and conditions of the Amended Stipulation

27   Settlement and the Order, are hereby stayed;

28   4.      Approval of the Parties' proposed Notice Program and forms of notice, attached as

United States District Court
Northern District of California

Exhibits E, G, H, I to the Amended Stipulation of Settlement, ECF No. 125-5, 125-7-125-9;

5.  Authorization for Class Counsel to administer the proposed settlement and implement the notice and payment election process, in accordance with the terms of the Amended Stipulation of Settlement, and with approval of Defendants;

6.  Approval of the procedures for Class Members to exclude themselves from the Amended Settlement or object to the Settlement;

7.  Appointment of Julian Mena, Todd Schreiber, Nate Coolidge, Ernesto Mejia, and Byron McKnight as Class Representatives for the Class;

8.  Appointment of Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC; Mike Arias and Alfredo Torrijos of Arias, Sanguinetti, Stahle & Torrijos, LLP; and Nicholas Coulson of Liddle & Dubin, PC as Class Counsel;

9.  Appointment of Epiq Systems, Inc. as the Settlement Administrator specified in the Amended Settlement;

10.  Class Counsel and Defense Counsel are authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Amended Stipulation of Settlement, including making, without further approval of the Court, minor changes to the form or content of the Long Form Notice, Summary Notice, and other exhibits that they jointly agree are reasonable or necessary;

11.  In the event the Court does not grant final approval of the settlement, or for any reason the parties fail to obtain a Final Order and Final Judgment as contemplated in the Amended Stipulation of Settlement, or the Amended Stipulation of Settlement is terminated pursuant to its terms for any reason or the Effective Date does not occur for any reason, then the following shall apply:

a)  All orders and findings entered in connection with the Amended Stipulation of Settlement shall become null and void and have no force and effect whatsoever, and shall not be admissible or discoverable in this or any other proceeding;

b)  The provisional certification of the Class pursuant to this Order shall be vacated automatically, and the Action shall proceed as though the Class had never been certified

13

1  pursuant to the Amended Stipulation of Settlement and such findings had never been made;

2       c)       Nothing contained in this Order is, or may be construed as, a presumption,

3  concession or admission by or against Defendants or Plaintiffs of any default, liability or

4  wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or

5  proceedings, whether civil, criminal or administrative, including, but not limited to, factual or

6  legal matters relating to any effort to certify the Action as a class action;

7       d)       Nothing in this Order or pertaining to the Amended Stipulation of

8  Settlement, including any of the documents or statements generated or received pursuant to the

9  settlement administration process, shall be used as evidence in any further proceeding in this case,

10 including, but not limited to, motions or proceedings seeking treatment of the Action as a class

11 action;

12      e)       All of the Court's prior Orders having nothing whatsoever to do with the

13 Settlement shall, subject to this Order, remain in force and effect.

14      12.      This Order shall be of no force or effect if the Settlement does not become final and

15 shall not be construed or used as an admission, concession, or declaration by or against

16 Defendants of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or

17 used as an admission, concession, or declaration by or against Plaintiffs or the other class

18 members that their claims lack merit or that the relief requested is inappropriate, improper, or

19 unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in this

20 Action or in any other lawsuit;

21      13.      The Court shall maintain continuing jurisdiction over the administration,

22 consummation, validity, enforcement, and interpretation of the Amended Stipulation of

23 Settlement, the Final Order, Final Judgment any final order approving Attorneys' Fees and

24 Expenses and Service Awards, and for any other necessary purpose;

25      14.      Upon application of the Parties and good cause shown, the deadlines set forth in

26 this Order may be extended by the Court, without further notice to the class;

27      The Court sets the following schedule:

28

United States District Court
Northern District of California

14

| Event | Date |
|---|---|
| Initial Date For Publishing Notice | September 7, 2017 |
| Deadline For Completing Notice Program | November 6, 2017 |
| Deadline For Plaintiffs' Counsel To File Any Motion For Award Of Attorneys' Fees And Service Awards | December 7, 2017 |
| Deadline For Class Members To Submit Objections To The Proposed Settlement Or Requests For Exclusion | January 8, 2018 |
| Deadline To Submit Payment Election Forms | January 8, 2018 |
| Deadline For Settlement Administrator To File List Of Exclusions With The Court | January 18, 2018 |
| Deadline For Replies To Objections | January 25, 2018 |
| Deadline For Plaintiffs' Counsel To File Motion For Final Approval Of Class Action Settlement | January 25, 2018 |
| Fairness Hearing | February 8, 2018 |

**IT IS SO ORDERED.**

Dated:  August 7, 2017

JON S. TIGAR
United States District Judge