**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BYRON MCKNIGHT, JULIAN MENA, TODD SCHREIBER, NATE COOLIDGE, and ERNESTO MEJIA, individually and on behalf of all others similarly situated, | Case No. 3:14-cv-05615-JST |
| | HON. JON S. TIGAR |
| Plaintiffs, | |
| vs. | **DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICES AND NOTICE PLAN** |
| UBER TECHNOLOGIES, INC., a Delaware Corporation, and RASIER, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq. I am over the age of twenty-one and I have personal knowledge of the matters set forth herein, and, if called as a witness, I could and would competently and truthfully testify thereto.

2.      I am a nationally recognized expert in the field of legal notice and I have served as a legal notice expert in dozens of federal and state cases involving class action notice plans. I have also participated and been involved in a large number of administrations of class action settlements.

3.      I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("Epiq").

4.      This declaration describes the Settlement Notice Plan ("Notice Plan" or "Plan") and notices (the "Notice" or "Notices") designed by Hilsoft Notifications for the parties' settlement in *McKnight et al. v. Uber Technologies, Inc. et al.,* No. 3:14-cv-05615-JST.  In the *"Declaration of Cameron R. Azari, Esq., of Epiq Systems, Inc. (Exhibit "I" to Amended Stipulation of Settlement")*, dated June 1, 2017, I detailed Hilsoft's class action notice experience and attached Hilsoft's *curriculum vitae*.  I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs.

5.      On August 7, 2017, the Court approved the Notice Plan as designed by Hilsoft and appointed Epiq as the Settlement Administrator in the *"Order Granting Motion for Preliminary Approval of Amended Class Action Settlement"* ("Order").  In the Order, the Court certified the following class for settlement purposes only:

> All persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories.  "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.).

– 1 –

"Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Raiser, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

6.     After the Court's preliminary approval of the Settlement, we began to implement the Notice Program and this declaration details its successful implementation. This declaration will detail the notice activities undertaken and explain how and why the Notice Plan was comprehensive and well-suited to the Class. This declaration will also discuss the administration activity to date. The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues from Hilsoft and Epiq, who worked with us to implement the notification effort.

## NOTICE PLAN SUMMARY

7.     Rule 23 directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[1]  The notice effort here satisfied this direction. Because of the nature of the Defendants' business, up-to-date email addresses were available for almost the entire Class. The Defendants do not collect or maintain a list of physical mailing addresses for the Class. Accordingly, Email Notice was the primary method used to deliver notice to the Class and all reasonable steps were taken to maximize the effectiveness of the Email Notice effort.

8.     Notices were emailed to 22,173,842 potential Class Members, as identified by Epiq from information provided by the Defendants. In addition, Notice was provided via the *USA Today*, in the San

---

[1] FRCP 23(c)(2)(B).

Francisco regional edition and with digital banner notices.  Coverage was enhanced further by sponsored search listings, a case website and the toll-free telephone line.

9.      Because the email addresses were recent and were used as the primary form of communication between the Defendants and the Class Members, and due to the extensive planning done by Epiq and the settling parties prior to the sending of the emails, the Email Notice effort reached approximately 94.3% of all identified Class Members.  In my experience, the reach of the Notice Plan exceeded that of other court-approved notice programs that primarily relied on email, and was designed to meet and exceed due process requirements.

**<u>CAFA NOTICE</u>**

10.      As described in the attached *Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice,"* dated February 29, 2016 ("*Fiereck Declaration*"*)*, on February 19, 2016, as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, Epiq sent a CAFA notice packet (or "CAFA Notice") to 80 federal and state officials.  The CAFA Notice was mailed by certified mail to 79 officials, including the Attorneys General of each of the 50 states, the District of Columbia, the U.S. Territory officials, and other appropriate State officials.  The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.

11.      As described in the attached *Declaration of Stephanie J. Fiereck, Esq. on Implementation of Supplemental CAFA Notice,"* dated June 27, 2017 ("*Fiereck Supplemental Declaration*"*)*, on June 9, 2017, at the direction of counsel for Defendants, Epiq sent a CAFA notice packet (or "CAFA Notice") to 88 federal and state officials.  The CAFA Notice was mailed by certified mail to 87 officials, including the Attorneys General of each of the 50 states, the District of Columbia, the U.S. Territory officials, and other appropriate State officials.  The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.

12.      The *Fiereck Declaration* and *Fiereck Supplemental Declaration* are included as Attachment 1.

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICES AND NOTICE PLAN**

*Individual Notice – Email Notice*

13.     On August 17, 2017, the Defendants provided Epiq with original data records for 22,398,106 potential Class Members.  Of that total, EVA identified 224,264 duplicate and/or incomplete or invalid records, which resulted in 22,173,842 records for the initial email mailing.

14.     Beginning on September 7, 2017 and continuing through October 9, 2017, the Summary Email Notice was sent to all potential Class Members for whom a facially valid email address was available.  In total 22,173,842 Summary Email Notices were sent.  The Summary Email Notice was created using an embedded HTML text format.  This format provided text that was easy to read without graphics, tables, images and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters.  The emails were sent using a server known to the major emails providers as one not used to send bulk "SPAM" or "junk" email blasts.  Also, the emails were sent in small groups so as to not be erroneously flagged as a bulk junk email blast.  Each Summary Email Notice was transmitted with a unique message identifier.  If the receiving e-mail server could not deliver the message, a "bounce code" was returned along with the unique message identifier.  For any Summary Email Notice for which a bounce code was received indicating that the message was undeliverable, at least two additional attempts were made to deliver the Notice by email.

15.     The Summary Email Notice included the address of the case website – www.RideShareSettlement.com.  By accessing the case website, recipients are able to easily access the Long Form Notice, Settlement Agreement, Payment Election Form and other information about the Settlement.

16.     Additionally, a Notice Packet containing a Long Form Notice and/or the Payment Election Form was mailed via USPS first class mail to all persons who requested one via the toll-free phone number.  As of January 23, 2018, 89 Notice Packets have been mailed as a result of such requests.  A copy of the Summary Email Notice is included as <u>Attachment 2</u>.

17.     As of January 23, 2018, Epiq has emailed Notices to 22,173,842 unique potential Class Members, with Notice to 1,260,947 unique potential Class Members currently known to be undeliverable.  In my experience, this approximate 94.3% deliverable rate exceeds the expected range.

*Local Newspaper Insertions and Online Banner Notice*

18.   To satisfy publication notice requirements of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1781), the Publication Notice ran four times over four consecutive weeks in the San Francisco regional edition of *USA Today*, as a quarter page ad unit.  The sale dates and page positions are provided in the chart below:

| Publication | Distribution | On-sale Date | Page Position |
|---|---|---|---|
| *USA Today* | San Francisco regional edition | 9/14/17 | 6C |
| *USA Today* | San Francisco regional edition | 9/19/17 | 5A |
| *USA Today* | San Francisco regional edition | 9/26/17 | 2B |
| *USA Today* | San Francisco regional edition | 10/5/17 | 11A |

19.   The Publication Notice as formatted for *USA Today* is included as <u>Attachment 3</u>.  Copies of the tear sheets for each insertion are included as <u>Attachment 4</u>.

20.   The Notice Plan also provided for Banner Notices measuring 728 x 90 pixels and 300 x 250 pixels, which were placed nationwide on the *Conversant Ad Network* from September 7, 2017 to October 8, 2017.  The Banner Notices appeared across the U.S.

21.   Approximately 12.8 million adult impressions were delivered by the Banner Notice. Clicking on the Banner Notice linked the reader to the case website where they could obtain information about the Settlement and link directly to the Payment Election Form for easy online filing.  The online Banner Notice is included as <u>Attachment 5</u>.

*Sponsored Search Listings*

22.   To facilitate locating the case website, sponsored search listings were acquired on the three most highly-visited Internet search engines:   *Google*, *Yahoo!* and *Bing*.  When search engine visitors searched on common keyword combinations such as "Uber Settlement," the sponsored search listing was generally displayed at the top of the page prior to the search results or in the upper right hand column.

23.   The sponsored listings ran from September 7, 2017 to January 8, 2018 and have been displayed 57,007 times, resulting in 3,394 clicks that displayed the case website.  A complete list of the

1   sponsored search keyword combinations is included as <u>Attachment 6</u>.  Examples of the sponsored search

2   listing as displayed on each search engine are included as <u>Attachment 7</u>.

3   *Case Website*

4   24.   On September 6, 2017, a neutral, informational, settlement website with an easy to

5   remember domain name (www.RideShareSettlement.com) was established to inform potential Class

6   Members of the terms of the Settlement, their rights, dates and deadlines relevant to the Settlement, and

7   related information.  The case website also includes the following documents for potential Class Members

8   to view and/or download: (i) the Long Form Notice; (ii) the Payment Election Form; (iii) the Amended

9   Stipulation of Settlement (including all of its Exhibits); (iv) the Preliminary Approval Order; (v) the

10  Consolidated Class Action Complaint filed on January 7, 2016; and (vi) any other information that the

11  Parties agree to provide or that the Court may require.  The website also includes information on how

12  potential Class Members can opt-out of the Settlement if they choose.  Class Members are also able to file

13  a Payment Election Form via the website, or download a paper Payment Election Form which can then be

14  submitted by mail.

15  25.   The website address was prominently displayed in all notice documents.  A copy of the

16  Long Form Notice as included on the case website is included as <u>Attachment 8</u>.  As of January 23, 2018,

17  there have been 155,156 unique visitors to the website and over 659,371website pages presented.

18  ***Toll-free Telephone Number & Post Office Box***

19  26.   On September 6, 2017, a toll-free number (1-877-797-6083) was established.  Upon calling

20  the toll-free number, callers hear an introductory message.  Callers then have the option to continue to get

21  information about the Settlement in the form of recorded answers to frequently asked questions.  Callers

22  also have an option to request the Long Form Notice and/or the Payment Election Form be sent by mail.

23  This automated phone system is available 24 hours per day, 7 days per week.  As of January 23, 2018, the

24  toll-free number has handled 697 calls representing 1,611 minutes of use.

25  27.   A post office box and e-mail were established to allow Class Members to contact Class

26  Counsel by mail or e-mail, respectively, with any specific requests or questions.

27

28

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF
SETTLEMENT NOTICES AND NOTICE PLAN**

## PERFORMANCE OF THE NOTICE PLAN

### *Reach*

28.     The Notice Plan reached approximately 94.3% of potential Class Members.  Reach was enhanced further by digital banners, newspaper print publication, sponsored search listings and the case website.

29.     Many courts have accepted and understood that a 75 or 80 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."[2]  The Notice Plan as implemented here performed at the highest end of that range and was indicative of the extensive efforts undertaken to plan and execute the Notice effort.

## PLAIN LANGUAGE NOTICE DESIGN

30.     The Notices themselves were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Class Members.  The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. Many courts, and as previously cited, the FJC itself, have approved notices that we have written and designed in a similar fashion.  The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Class Members' rights and options.  Consistent with our normal practice, all notice documents underwent a final edit prior to actual emailing and publication for grammatical errors and accuracy.

31.     Moreover, Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."  Epiq applies the plain language requirement in drafting notices in federal and state class actions.  Epiq maintains a strong commitment to adhering to

---

[2] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)*, p. 3.

the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Class Members.

32.     I have been involved in the drafting of the Notices.  All forms of Notice are noticeable, clear, concise, and in plain, easily understood language.  The Notices effectively communicate information about the Settlement.

33.     In preparing the Notices in this Settlement, I have employed communications methods that are well-established in my field.  I have embraced the high standards embodied in the Advisory Committee's notes accompanying the 2003 changes to Rule 23(c)(2): "The direction that the class-certification notice be couched in plain easily understood language is added as a reminder of the need to work unremittingly at the difficult task of communicating with class members."

34.     All Notices were designed to increase noticeability and comprehension.  Because email recipients are accustomed to receiving junk email that they may be inclined to discard unread, the Notice Plan called for steps to bring the emailed Notice to the attention of Class Members.  Once people "notice" the Notices, it is critical that they can understand them.  As such, the Notices, as produced, are clearly worded with an emphasis on simple, plain language to encourage readership and comprehension.

35.     The Email and Publication Notice featured a prominent headline ("**If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement**.") in bold text.  This alerted recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

36.     Class Notice also included a Long Form Notice.  The Long Form Notice provided substantial information to Class Members.  The Long Form Notice begins with a summary page providing a concise overview of the important information and a table highlighting key options available to Class Members.  A table of contents, categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings.

37.     The Email Notice contained an embedded link to the case website where the Long Form Notice and other Settlement information can be accessed.  The Email Notice was provided using an embedded HTML text format.  This format provided text that is easy to read without graphics, tables,

1   images and other elements that would increase the likelihood that the message is blocked by Internet
2   Service Providers (ISPs) and/or SPAM filters.

3                   ***More Than Adequate Time and Opportunity to React to Notices***.

4          38.    The measured portion of the Notice Plan was substantially completed on October 8, 2017.
5   This allowed more than adequate time for Class Members to see the Notice and respond accordingly
6   before the January 8, 2018, opt-out deadline and the objection deadline.  With 92 days from the substantial
7   completion of the Notice Plan until the opt-out deadline and the objection deadline and 123 days until the
8   February 8, 2018, Final Approval Hearing, Class Members were allotted adequate time to act on their
9   rights.

10                              ***Exclusions and Objections***

11         39.    The deadline for Class Members to file a Request for Exclusion or an Objection to the
12  Settlement was January 8, 2018.  As of January 23, 2018, Epiq has received a total of 40 requests for
13  exclusion from the Class.  Of these, 38 were deemed complete and timely.  The list of all 40 requests for
14  exclusion received is included as <u>Attachment 9</u>.  I am aware of several objections to the Settlement and
15  have reviewed each. None relate to the adequacy of notice.

16                              ***Payment Election Forms***

17         40.    The deadline for Class Members to submit a Payment Election Form was January 8, 2018.
18  The processing of Forms is ongoing, but as of January 23, 2018 Epiq has received a total of 82,375
19  Payment Election Forms with 357 received via US Mail and 82,018 received through the Settlement
20  Website.  As of January 23, 2018, 76,775 of these Forms have been processed and deemed "complete."
21  Of completed Forms, 17,823 have selected an Uber Rider Account Payment, 35,968 have selected a
22  PayPal Account Payment and 22,984 have selected an eCheck Payment.  Processing on the remaining
23  Payment Election Forms is continuing and a final report will be provided to the Parties.

24                              <u>**CONCLUSION**</u>

25         41.    In class action notice planning, execution, and analysis, we are guided by due process
26  considerations under the United States Constitution, by federal and local rules and statutes, and further by
27  case law pertaining to notice.  This framework directs that the notice program be designed to reach the
28  greatest practicable number of potential Class Members and, in a settlement class action notice situation

1   such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—

2   nor the ability to exercise other options—to Class Members in any way.  All of these requirements were

3   met in this case. It is my opinion that the reach of the notice effort was more than adequate and reasonable

4   under the circumstances, and it was consistent with the standards employed by Epiq and Hilsoft in

5   notification programs designed to reach members of settlement groups or classes. The Notice Plan as

6   designed fully complied with Rule 23 of the Federal Rules of Civil Procedure, and in my opinion, it

7   provided the best notice practicable.

8       42.    Our notice effort followed the guidance for how to satisfy due process obligations that a

9   notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor

10  to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

11      A.  "But when notice is a person's due, process which is a mere gesture is not due process.  The

12          means employed must be such as one desirous of actually informing the absentee might

13          reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315

14          (1950).

15      *B.*  "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested

16          parties of the pendency of the action and afford them an opportunity to present their

17          objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

18      43.    The Notice Plan provided the best notice practicable under the circumstances of this case,

19  conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for

20  effective notice articulated in the Manual for Complex Litigation 4th Ed.

21      44.    As reported above, the email notice portion of the Notice Plan effectively reached

22  approximately 94.3% of potential Class Members.  The online banner notices, local newspaper, sponsored

23  search and case website only added to this reach percentage.  The Notice Plan delivered "noticeable"

24  Notices to capture Class Members' attention, and provided them with information necessary to understand

25  their rights and options.

26      45.    To date, the total invoiced cost to implement the notice plan, build and manage the website

27  and toll-free line, handle the administration of the Payment Election Forms and otherwise implement the

28  terms of the Settlement is approximately $173,653.16.  Administration costs will continue to be incurred

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF
SETTLEMENT NOTICES AND NOTICE PLAN**

1  to finalize claim processing and handle any distribution to the Class if the Settlement receives Final

2  Approval.

3          I declare under penalty of perjury of the laws of the United States that the foregoing is true

4  and correct.  Executed on January 25th, 2018 at Beaverton, Oregon.

5

6

7                                          Cameron R. Azari, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICES AND NOTICE PLAN**

Attachment 1

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PHILLIBEN, JULIAN MENA, TODD SCHREIBER, NATE COOLIDGE, ERNESTO MEJIA, and BYRON MCKNIGHT, individually and on behalf of all others similarly situated, | CASE NO. 3:14-cv-05615-JST |
| Plaintiffs, | Hon. Jon S. Tigar, Presiding |
| v. | |
| UBER TECHNOLOGIES, INC., a Delaware Corporation, RASIER, LLC, a Delaware Limited Liability Company | |
| Defendants. | |

## DECLARATION OF STEPHANIE J. FIERECK, ESQ.
## ON IMPLEMENTATION OF CAFA NOTICE

I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

1.      My name is Stephanie J. Fiereck, Esq.  I am over the age of 21 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am the Legal Notice Manager for Epiq Legal Noticing, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.

3.      Epiq Legal Noticing is a division of Epiq Systems ("Epiq"), a firm with more than 20 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs,

coordination with the United States Postal Service, claims database management, claim adjudication, funds management and distribution services.

4.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

**CAFA NOTICE IMPLEMENTATION**

5.      At the direction of counsel for the Defendants Uber Technologies, Inc. and Rasier, LLC, 80 officials, which included the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia, the U.S. Territories officials, and other appropriate State officials, were identified to receive the CAFA notice.

6.      On February 19, 2016, Epiq sent 80 CAFA Notice Packages ("Notice").  The Notice was mailed by certified mail to 79 officials[1], including the Attorneys General of each of the 50 states, the District of Columbia, the U.S. Territory officials, and other appropriate State officials.  The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The CAFA Notice Service List (USPS Certified Mail and UPS) is attached hereto as **Attachment 1**.

7.      The materials sent included a cover letter which provided notice of the proposed settlement of the above-captioned case.  The cover letter is attached hereto as **Attachment 2**.

---

1.      Prior to mailing, the 79 names and addresses were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").  CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces.  The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

8.    The cover letter was accompanied by a CD, which included the following:

    a.    Class Action Complaints, First Amended Complaint and the Consolidated Class Action Complaint;

    b.    Stipulation of Settlement (with exhibits A-I), which includes the [Proposed] Final Judgment, [Proposed] Preliminary Approval Order and Forms of Notice; and

    c.    Estimated geographic distribution of class members.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 29, 2016.

Stephanie J. Fiereck, Esq.

Attachment 1

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Loretta E. Lynch | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

CAFA Notice Service List
USPS Certified Mail

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Craig W. Richards | PO Box 110300 | | Juneau | AK | 99811 |
| Office of the Attorney General | Luther Strange | 501 Washington Ave | | Montgomery | AL | 36104 |
| Office of the Attorney General | Leslie Carol Rutledge | 323 Center St Ste 200 | | Little Rock | AR | 72201 |
| Office of the Attorney General | Mark Brnovich | 1275 West Washington St | | Phoenix | AZ | 85007 |
| Office of the Attorney General | CAFA Coordinator | Consumer Law Section | 455 Golden Gate Ave Ste 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Cynthia Coffman | Ralph L Carr Colorado Judicial Center | 1300 Broadway 10th Fl | Denver | CO | 80203 |
| Office of the Attorney General | George Jepsen | 55 Elm St | | Hartford | CT | 06106 |
| Office of the Attorney General | Karl A. Racine | 441 4th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Matt Denn | Carvel State Office Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Pam Bondi | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Sam Olens | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Douglas S. Chin | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Thomas J Miller | 1305 E Walnut St | | Des Moines | IA | 50319 |
| Office of the Attorney General | Lawrence G Wasden | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Lisa Madigan | 100 W Randolph St | | Chicago | IL | 60601 |
| Indiana Attorney General's Office | Greg Zoeller | Indiana Government Center South | 302 W Washington St 5th Fl | Indianapolis | IN | 46204 |
| Office of the Attorney General | Derek Schmidt | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Andy Beshear | Capitol Ste 118 | 700 Capitol Ave | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | 1885 N Third St | | Baton Rouge | LA | 70802 |
| Office of the Attorney General | Maura Healey | 1 Ashburton Pl | | Boston | MA | 02108 |
| Office of the Attorney General | Brian E. Frosh | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Janet T Mills | 6 State House Sta | | Augusta | ME | 04333 |
| Department of Attorney General | Bill Schuette | PO Box 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Lori Swanson | 1400 Bremer Tower | 445 Minnesota St | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Chris Koster | PO Box 899 | | Jefferson City | MO | 65102 |
| MS Attorney General's Office | Jim Hood | Walter Sillers Bldg | 550 High St Ste 1200 | Jackson | MS | 39201 |
| Office of the Attorney General | Tim Fox | Department of Justice | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Roy Cooper | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Wayne Stenehjem | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505 |
| Office of the Attorney General | Doug Peterson | 2115 State Capitol | | Lincoln | NE | 68509 |
| Office of the Attorney General | Joseph Foster | NH Department of Justice | 33 Capitol St | Concord | NH | 03301 |
| Office of the Attorney General | John Jay Hoffman | 8th Fl West Wing | 25 Market St | Trenton | NJ | 08625 |
| Office of the Attorney General | Hector Balderas | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | Adam Paul Laxalt | 100 N Carson St | | Carson City | NV | 89701 |
| Office of the Attorney General | Eric T Schneiderman | The Capitol | | Albany | NY | 12224 |
| Office of the Attorney General | Mike DeWine | 30 E Broad St 14th Fl | | Columbus | OH | 43215 |
| Office of the Attorney General | E Scott Pruitt | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Kathleen G Kane | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter Kilmartin | 150 S Main St | | Providence | RI | 02903 |
| Office of the Attorney General | Alan Wilson | Rembert Dennis Office Bldg | 1000 Assembly St Rm 519 | Columbia | SC | 29201 |
| Office of the Attorney General | Marty J Jackley | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Herbert H. Slatery III | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | 300 W 15th St | | Austin | TX | 78701 |
| Office of the Attorney General | Sean D. Reyes | Utah State Capitol Complex | 350 North State Ste 230 | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Mark R. Herring | 900 E Main St | | Richmond | VA | 23219 |
| Office of the Attorney General | William H Sorrell | 109 State St | | Montpelier | VT | 05609 |
| Office of the Attorney General | Bob Ferguson | PO Box 40100 | | Olympia | WA | 98504 |
| Office of the Attorney General | Brad D. Schimel | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex | Bldg 1 Room E-26 | Charleston | WV | 25305 |
| Office of the Attorney General | Peter K Michael | 2320 Capitol Avenue | | Cheyenne | WY | 82002 |
| Office of the Attorney General | Talauega Eleasalo V. Ale | Utulei Territory of American Samoa | PO Box 7 | Pago Pago | AS | 96799 |
| Attorney General Office | Elizabeth Barrett-Anderson | ITC Building | 590 S Marine Corps Dr Ste 706 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| Office of the Attorney General | Cesar R. Miranda-Rodriguez | Apartado 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Claude Walker | 34-38 Kronprindsens Gade | GERS Bldg 2nd Fl | St Thomas | VI | 00802 |
| San Francisco District Attorney's Office | June D. Cravett | 732 Brannan Street | | San Francisco | CA | 94103 |
| Los Angeles District Attorney's Office | Stanley Phillip Williams | 211 West Temple Street | Suite 1000 | Los Angeles | CA | 90012 |
| Arizona Department of Transportation | John S. Halikowski | 206 South 17th Ave. | | Phoenix | AZ | 85007 |
| Arkansas Public Service Commission | Ted J. Thomas | PO Box 400 | | Little Rock | AR | 72203 |
| Colorado Department of Regulatory Agencies | Ron Jack | Public Utilities Commission | 1560 Broadway Suite 250 | Denver | CO | 80202 |
| Delaware Department of Transportation | Jennifer Cohan | PO Box 778 | | Dover | DE | 19903 |
| District of Columbia Taxicab Commission | Ernest Chrappah | Executive Offices Suite 3001 | 2235 Shannon Place SE | Washington | DC | 20020 |
| Georgia Department of Public Safety | Colonel Mark W. McDonough | PO Box 1456 | | Atlanta | GA | 30371 |
| Indiana Department of Revenue | Andrew Kossack | 100 N Senate Ave. | Room N248 | Indianapolis | IN | 46204 |
| Kentucky Transportation Cabinet | Mike Hancock | Office of the Secretary | 200 Mero Street | Frankfort | KY | 40622 |
| Maine Bureau of Motor Vehicles | Patty Morneault | 29 State House Station | | Augusta | ME | 04333 |
| Maryland Public Service Commission | W. Kevin Hughes | William Donald Schaefer Tower | 6 St. Paul St. 16th Floor | Baltimore | MD | 21202 |
| Massachusetts Department of Public Utilities | Angela M. O'Connor | One South Station | | Boston | MA | 02110 |
| Nebraska Public Service Commission | Jeff Pursley | 1200 N Street Suite 300 | | Lincoln | NE | 68508 |
| Nevada Transportation Authority | Ann Wilkinson | 2290 South Jones Blvd | Suite 110 | Las Vegas | NV | 89146 |
| North Carolina Department of Transportation | Kelly J. Thomas | DMV Commissioner | 1501 Mail Service Center | Raleigh | NC | 27699 |
| Oklahoma Corporation Commission | Bob Anthony | PO Box 52000 | | Oklahoma City | OK | 73152 |
| State of South Carolina | C. Dukes Scott | Office of Regulatory Staff | 1401 Main Street Suite 900 | Columbia | SC | 29201 |
| Utah Department of Commerce | Daniel O'Bannon | Division of Consumer Protection | PO Box 146704 | Salt Lake City | UT | 84114 |
| Virginia Department of Motor Vehicles | Richard D. Holcomb | PO Box 27412 | | Richmond | VA | 23269 |
| State of Wisconsin | Dave Ross | Department of Safety & Professional Services | PO Box 8935 | Madison | WI | 53708 |
| California Public Utilities Commission | Elizaveta Malashenko | Safety and Enforcement Division | 505 Van Ness Avenue | San Francisco | CA | 94102 |
| Pennsylvania Public Utility Commission | Bohdan R. Pankiw | Chief Counsel | PO Box 3265 | Harrisburg | PA | 17105 |

# Attachment 2

**NOTICE ADMINISTRATOR FOR UNITED STATES DISTRICT COURT**

HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqsystems.com

February 19, 2016

**VIA UNITED PARCEL SERVICE OR CERTIFIED MAIL**

| Class Action Fairness Act – Notice to Federal and State Officials |
| --- |

Dear Sir or Madam:

Pursuant to the "Class Action Fairness Act," ("CAFA"), 28 U.S.C. §1715, please find enclosed information from Defendants relating to the proposed settlement of a class action lawsuit.

- **Case:** *Philliben et al. v. Uber Technologies, Inc. et al.*, Case No. 3:14-cv-05615-JST.

- **Court:** United States District Court for the Northern District of California.

- **Defendant(s):** Uber Technologies, Inc. and Rasier, LLC

- **Judicial Hearing Scheduled:** Plaintiffs have noticed March 17, 2016 as the hearing date for their Motion for Preliminary Approval of Class Action Settlement. At this time, a Final Approval Hearing has not been scheduled by the Court. At the time of the hearing, these matters may be continued without further notice.

- **Documents Enclosed:** Copies of the following documents are contained on the enclosed CD in Adobe Acrobat PDF format:

  1. Class Action Complaints, First Amended Complaint and the Consolidated Class Action Complaint;

  2. Stipulation of Settlement (with exhibits A-I), which includes the [Proposed] Final Judgment, [Proposed] Preliminary Approval Order and Forms of Notice; and

  3. Estimated geographic distribution of class members.

Very truly yours,

Notice Administrator for United States District Court

Enclosures

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PHILLIBEN, JULIAN MENA, TODD SCHREIBER, NATE COOLIDGE, ERNESTO MEJIA, and BYRON MCKNIGHT, individually and on behalf of all others similarly situated, | CASE NO. 3:14-cv-05615-JST |
| Plaintiffs, | Hon. Jon S. Tigar, Presiding |
| v. | |
| UBER TECHNOLOGIES, INC., a Delaware Corporation, RASIER, LLC, a Delaware Limited Liability Company | |
| Defendants. | |

## DECLARATION OF STEPHANIE J. FIERECK, ESQ.
## ON IMPLEMENTATION OF SUPPLEMENTAL CAFA NOTICE

I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

1.     My name is Stephanie J. Fiereck, Esq.  I am over the age of 21 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.     I am the Legal Notice Manager for Epiq Legal Noticing, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.

3.     Epiq Legal Noticing is a division of Epiq Systems ("Epiq"), a firm with more than 20 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with

the United States Postal Service, claims database management, claim adjudication, funds management and distribution services.

4.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

## CAFA NOTICE IMPLEMENTATION

5.      At the direction of counsel for the Defendants Uber Technologies, Inc. and Rasier, LLC, on February 19, 2016, Epiq provided CAFA Notice to 80 officials, which included 57 Attorneys General (the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territories) and 23 appropriate State officials pursuant to 28 U.S.C. § 1715 ("Initial Notice").  *See Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice*, executed on February 29, 2016.

6.      Following the February 19, 2016, Initial Notice, counsel for Defendants directed Epiq to provide supplemental notice to 88 officials, which included 57 Attorneys General (the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territories) and 31 appropriate State officials.

7.      On June 9, 2017, Epiq sent 88 CAFA Notice Packages ("Notice").  The Notice was mailed by certified mail to 87 officials[1], including the Attorneys General of each of the 50 states,

---

[1] Prior to mailing, the names and addresses were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").  CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces.  The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

the District of Columbia, the U.S. Territory officials, and other appropriate State officials. The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States. The CAFA Notice Service List (USPS Certified Mail and UPS) is attached hereto as **Attachment 1**.

8.   The materials sent included a cover letter which provided notice of the proposed settlement of the above-captioned case. The cover letter is attached hereto as **Attachment 2**.

9.   The cover letter was accompanied by a CD, which included the following:

    a.   Class Action Complaints, First Amended Complaint and the Consolidated Class Action Complaint;

    b.   Amended Stipulation of Settlement (with exhibits A-I), which includes the [Proposed] Final Order, [Proposed] Final Judgment, [Proposed] Preliminary Approval Order and Forms of Notice; and

    c.   Estimated geographic distribution of class members.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 27, 2017.

Stephanie J. Fiereck, Esq.

# Attachment 1

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Jeff Sessions | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

CAFA Notice Service List
USPS Certified Mail

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Jahna Lindemuth | PO Box 110300 | | Juneau | AK | 99811 |
| Office of the Attorney General | Steve Marshall | 501 Washington Ave | | Montgomery | AL | 36104 |
| Office of the Attorney General | Leslie Carol Rutledge | 323 Center St Ste 200 | | Little Rock | AR | 72201 |
| Office of the Attorney General | Mark Brnovich | 1275 West Washington St | | Phoenix | AZ | 85007 |
| Office of the Attorney General | CAFA Coordinator | Consumer Law Section | 455 Golden Gate Ave Ste 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Cynthia Coffman | Ralph L Carr Colorado Judicial Center | 1300 Broadway 10th Fl | Denver | CO | 80203 |
| Office of the Attorney General | George Jepsen | 55 Elm St | | Hartford | CT | 6106 |
| Office of the Attorney General | Karl A. Racine | 441 4th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Matt Denn | Carvel State Office Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Pam Bondi | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Chris Carr | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Douglas S. Chin | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Thomas J Miller | 1305 E Walnut St | | Des Moines | IA | 50319 |
| Office of the Attorney General | Lawrence G Wasden | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Lisa Madigan | 100 W Randolph St | | Chicago | IL | 60601 |
| Indiana Attorney General's Office | Curtis T Hill Jr | Indiana Government Center South | 302 W Washington St 5th Fl | Indianapolis | IN | 46204 |
| Office of the Attorney General | Derek Schmidt | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Andy Beshear | Capitol Ste 118 | 700 Capitol Ave | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | 1885 N Third St | | Baton Rouge | LA | 70802 |
| Office of the Attorney General | Maura Healey | 1 Ashburton Pl | | Boston | MA | 2108 |
| Office of the Attorney General | Brian E. Frosh | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Janet T Mills | 6 State House Sta | | Augusta | ME | 4333 |
| Department of Attorney General | Bill Schuette | PO Box 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Lori Swanson | 445 Minnesota St | Suite 1400 | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Josh Hawley | PO Box 899 | | Jefferson City | MO | 65102 |
| MS Attorney General's Office | Jim Hood | Walter Sillers Bldg | 550 High St Ste 1200 | Jackson | MS | 39201 |
| Office of the Attorney General | Tim Fox | Department of Justice | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Josh Stein | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Wayne Stenehjem | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505 |
| Office of the Attorney General | Doug Peterson | 2115 State Capitol | | Lincoln | NE | 68509 |
| Office of the Attorney General | Gordon MacDonald | NH Department of Justice | 33 Capitol St | Concord | NH | 3301 |
| Office of the Attorney General | Christopher S. Porrino | 8th Fl West Wing | 25 Market St | Trenton | NJ | 8625 |
| Office of the Attorney General | Hector Balderas | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | Adam Paul Laxalt | 100 N Carson St | | Carson City | NV | 89701 |
| Office of the Attorney General | Eric T Schneiderman | The Capitol | | Albany | NY | 12224 |
| Office of the Attorney General | Mike DeWine | 30 E Broad St 14th Fl | | Columbus | OH | 43215 |
| Office of the Attorney General | Mike Hunter | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Josh Shapiro | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter Kilmartin | 150 S Main St | | Providence | RI | 2903 |
| Office of the Attorney General | Alan Wilson | Rembert Dennis Office Bldg | 1000 Assembly St Rm 519 | Columbia | SC | 29201 |
| Office of the Attorney General | Marty J Jackley | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Herbert H. Slatery III | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | 300 W 15th St | | Austin | TX | 78701 |
| Office of the Attorney General | Sean D. Reyes | Utah State Capitol Complex | 350 North State St Ste 230 | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Mark R. Herring | 202 North Ninth Street | | Richmond | VA | 23219 |
| Office of the Attorney General | TJ Donovan | 109 State St | | Montpelier | VT | 5609 |
| Office of the Attorney General | Bob Ferguson | PO Box 40100 | | Olympia | WA | 98504 |
| Office of the Attorney General | Brad D. Schimel | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex | Bldg 1 Room E 26 | Charleston | WV | 25305 |
| Office of the Attorney General | Peter K Michael | 2320 Capitol Avenue | | Cheyenne | WY | 82002 |
| Office of the Attorney General | Talauega Eleasalo V. Ale | Utulei Territory of American Samoa | PO Box 7 | Pago Pago | AS | 96799 |
| Attorney General Office | Elizabeth Barrett-Anderson | ITC Building | 590 S Marine Corps Dr Ste 706 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| PR Department of Justice | Wanda Vazquez Garced | Apartado 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Claude Walker | 34-38 Kronprindsens Gade | GERS Bldg 2nd Fl | St Thomas | VI | 00802 |
| San Francisco District Attorney's Office | June D. Cravett | 732 Brannan Street | | San Francisco | CA | 94103 |
| Los Angeles District Attorney's Office | Stanley Phillip Williams | 211 West Temple Street | Suite 1000 | Los Angeles | CA | 90012 |
| Arizona Department of Transportation | John S. Halikowski | 206 South 17th Ave. | | Phoenix | AZ | 85007 |
| Arkansas Public Service Commission | Ted J. Thomas | PO Box 400 | | Little Rock | AR | 72203 |
| Colorado Department of Regulatory Agencies | Ron Jack | Public Utilities Commission | 1560 Broadway Suite 250 | Denver | CO | 80202 |
| Delaware Department of Transportation | Jennifer Cohan | PO Box 778 | | Dover | DE | 19903 |
| District of Columbia Taxicab Commission | Ernest Chrappah | Executive Offices Suite 3001 | 2235 Shannon Place SE | Washington | DC | 20020 |
| Georgia Department of Public Safety | Colonel Mark W. McDonough | PO Box 1456 | | Atlanta | GA | 30371 |
| Indiana Department of Revenue | Andrew Kossack | 100 N Senate Ave. | Room N248 | Indianapolis | IN | 46204 |
| Kentucky Transportation Cabinet | Mike Hancock | Office of the Secretary | 200 Mero Street | Frankfort | KY | 40622 |
| Maine Bureau of Motor Vehicles | Patty Morneault | 29 State House Station | | Augusta | ME | 04333 |

**CAFA Notice Service List**
**USPS Certified Mail**

| | | | | | | |
|---|---|---|---|---|---|---|
| Maryland Public Service Commission | W. Kevin Hughes | William Donald Schaefer Tower | 6 St. Paul St. 16th Floor | Baltimore | MD | 21202 |
| Massachusetts Department of Public Utilities | Angela M. O'Connor | One South Station | | Boston | MA | 02110 |
| Mississippi Department of Insurance | Mike Chaney | P.O. Box 79 | | Jackson | MS | 39205 |
| Nebraska Public Service Commission | Jeff Pursley | 1200 N Street Suite 300 | | Lincoln | NE | 68508 |
| Nevada Transportation Authority | Ann Wilkinson | 2290 South Jones Blvd | Suite 110 | Las Vegas | NV | 89146 |
| North Carolina Department of Transportation | Kelly J. Thomas | DMV Commissioner | 1501 Mail Service Center | Raleigh | NC | 27699 |
| Oklahoma Corporation Commission | Bob Anthony | PO Box 52000 | | Oklahoma City | OK | 73152 |
| State of South Carolina | C. Dukes Scott | Office of Regulatory Staff | 1401 Main Street Suite 900 | Columbia | SC | 29201 |
| Utah Department of Commerce | Daniel O'Bannon | Division of Consumer Protection | PO Box 146704 | Salt Lake City | UT | 84114 |
| Virginia Department of Motor Vehicles | Richard D. Holcomb | PO Box 27412 | | Richmond | VA | 23269 |
| State of Wisconsin | Dave Ross | Department of Safety & Professional Services | PO Box 8935 | Madison | WI | 53708 |
| California Public Utilities Commission | Timothy Sullivan | 505 Van Ness Avenue | | San Francisco | CA | 94102 |
| Pennsylvania Public Utility Commission | Bohdan R. Pankiw | Chief Counsel | PO Box 3265 | Harrisburg | PA | 17105 |
| West Virginia Department of Motor Vehicles | Pat Reed | Commissioner | 5707 MacCorkle Avenue, SE | Charleston | WV | 25317 |
| Iowa Department of Transportation | John Putney | 800 Lincoln Way | | Ames | IA | 50010 |
| Department of Licensing and Regulatory Affairs | Shelly Edgerton | PO Box 30004 | | Lansing | MI | 48909 |
| Department of Revenue | Joel W. Walters | Harry S Truman State Office Building | 301 High Street | Jefferson City | MO | 65101 |
| Public Service Commission | Jeff Pursley | 1200 N. Street | Suite 300 | Lincoln | NE | 68508 |
| Public Utilities Commission | Asim Z. Haque | 180 E. Broad St. | | Columbus | OH | 43215 |
| Texas Department of Licensing and Regulation | Mike Arismendez | 920 Colorado St | | Austin | TX | 78701 |

Attachment 2

**NOTICE ADMINISTRATOR FOR UNITED STATES DISTRICT COURT**

HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqsystems.com

June 9, 2017

**VIA UPS OR USPS CERTIFIED MAIL**

| Class Action Fairness Act – Notice to Federal and State Officials |
|---|

Dear Sir or Madam:

On February 19, 2016, Notice of a proposed class action settlement was provided to you as required by the "Class Action Fairness Act," 28 U.S.C. §1715 from Uber Technologies, Inc. and Rasier, LLC.  Subsequently, on June 1, 2017, an amended settlement agreement was filed with the court.  As a result, pursuant to the Class Action Fairness Act, please find enclosed supplemental information from Uber Technologies, Inc. and Rasier, LLC relating to the amended settlement of a class action lawsuit.

- **Case:** *McKnight et al. v. Uber Technologies, Inc. et al.*, Case No. 3:14-cv-05615-JST (previously *Philliben et al. v. Uber Technologies, Inc. et al.*, Case No. 3:14-cv-05615-JST).

- **Court:** United States District Court for the Northern District of California.

- **Defendants:**  Uber Technologies, Inc. and Rasier, LLC.

- **Judicial Hearing Scheduled:**  At this time, a Final Approval Hearing has not been scheduled by the Court. At the time of the hearing, these matters may be continued without further notice.

- **Documents Enclosed:** Copies of the following documents are contained on the enclosed CD in Adobe Acrobat PDF format:

  1. Class Action Complaints, First Amended Complaint and the Consolidated Class Action Complaint;

  2. Amended Stipulation of Settlement (with exhibits A-I), which includes the [Proposed] Final Order, [Proposed] Final Judgment, [Proposed] Preliminary Approval Order and Forms of Notice; and

  3. Estimated geographic distribution of class members.

Very truly yours,

Notice Administrator for United States District Court

Enclosures

# Attachment 2

| From: | mail@msgbsvc.com on behalf of Rideshare Settlement |
| | <donotreply@ridesharesettlement.com> |
| Sent: | Wednesday, September 06, 2017 2:47 PM |
| To: | ████████ |
| Subject: | HTML Sample -- Legal Notice about a Class Action Settlement with Uber |

Legal Notice

# If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.

**Your Class Member Identification Number is as follows:** ████████

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber to their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

**Who is included?**
The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

These people are called the "Class" or "Class Members."

**You are receiving this notice because Uber has identified you as a potential member of the Class. Your Class Member Identification Number is as follows:** ████████

**What do I get from the Settlement?**

If the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will *automatically* receive your Settlement Share if you still have an Uber account. You have three options as to how your Settlement Share will be paid to you:

- Option 1 (the "Uber Rider Account" option). Your Settlement Share will be paid to your Uber Rider Account (this is the account you created when you registered to use Uber), which will then be applied toward your next Uber ride in the United States. If you do not use the payment to your Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay your Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card, U.S. debit card, PayPal Account, or other payment method associated with your Uber account.

- Option 2 (the "PayPal Account" option). Your Settlement Share will be paid to your PayPal Account, which you will identify on your Payment Election Form.

- Option 3 (the "eCheck" option). Your Settlement Share will be paid by an electronic check, which will be emailed to the email address you provide on your Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

If you prefer Option 2 or 3, you will need to submit a Payment Election Form by **11:59 p.m. PST on January 8, 2018.** If you do not submit a timely Payment Election Form indicating that you wish to receive your Settlement Share by a payment to your PayPal Account or bank account via eCheck, your Settlement Share will *automatically* be paid to your Uber Rider Account. If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share. You can file your Payment Election Form online at the Settlement website. Use your Class Member Identification Number provided above to file your Form.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g., UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to your Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

**What are my other options?**

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Class by **January 8, 2018**, or you will not be able to sue, or continue to sue, Uber about the issues in this case. If you exclude yourself or "opt out" from the Settlement, you will not receive payment of your share of the Settlement Fund, and you cannot object to the Settlement. If you stay in the Class, you may object to any part of the Settlement by filing an objection by **January 8, 2018**. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

**The Court's Fairness Hearing**

The Court will hold a hearing in the case, known as *McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST, on **February 8, 2018 at 2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates. You or your own lawyer, if you have one, may ask to

appear and speak at the hearing at your own cost, but you do not have to.

**How can I get more information?**
See the Detailed Notice, file a Payment Election Form online, and review other information by visiting
www.RideShareSettlement.com.

Unless otherwise defined, all capitalized terms used herein have the same meaning and effect as defined in the
Amended Settlement Agreement, which is available for download from www.RideShareSettlement.com.

SOURCE: United States District Court for the Northern District of California.

If you would prefer not to receive further messages from this sender, please Click Here and confirm your request.

Attachment 3

4:14-cv-05615-JST   Document 164   Filed 01/25/18   Page 36

# If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees.  Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber to their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

## Who is included?

**The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.**

These people are called the "Class" or "Class Members."

## What do I get from the Settlement?

If you are a Class Member and the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will *automatically* receive your Settlement Share if you still have an Uber account. Class Members have three options as to how their Settlement Share will be paid:

- Option 1 (the "Uber Rider Account" option). A Settlement Share will be paid to an Uber Rider Account (this is the account created when someone registers to use Uber), which will then be applied towards the Class Member's next Uber ride in the United States. If a Class Member does not use the payment to their Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay their Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card,

U.S. debit card, PayPal account or other payment method associated with their Uber account.

- Option 2 (the "PayPal Account" option). A Settlement Share will be paid to a Class Member's PayPal Account as identified on a Payment Election Form.

- Option 3 (the "eCheck" option). A Settlement Share will be paid by an electronic check, which will be emailed to the email address provided on a Payment Election Form.  eChecks are available for deposit in U.S. financial institutions only.

Class Members who prefer Option 2 or 3 will need to submit a Payment Election Form by **11:59 p.m. PST on January 8, 2018**. Class Members who do not submit a timely Payment Election Form indicating that they wish to receive their Settlement Share by a payment to a PayPal Account or bank account via eCheck, will have their Settlement Share *automatically* paid to their Uber Rider Account. Class Members who no longer have an Uber account,  must submit a valid Payment Election Form and elect Option 2 or 3 to receive a Settlement Share. Class Members can file a Payment Election Form online at the Settlement website.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g. UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to an Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time.  Please be patient and check the Settlement website for updates.

## What are my other options?

Class Members who do not want to be legally bound by the Settlement, must exclude themselves from the Class by **January 8, 2018**, or they will not be able to sue, or continue to sue, Uber about the issues in this case. Class Members who exclude themselves or "opt out" from the Settlement, will not receive payment of their share of the Settlement Fund and cannot object to the Settlement. Class Members who stay in the Class, may object to any part of the Settlement by filing an objection by **January 8, 2018**. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

## The Court's Fairness Hearing

The Court will hold a hearing in the case, known as *McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST, on **February 8, 2018 at 2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates.  You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

## How can I get more information?

See the Detailed Notice, file a Payment Election Form online and review other information by visiting www.RideShareSettlement.com.

**1-877-797-6083 • www.RideShareSettlement.com**

Attachment 4

**6C SPORTS**

# GOLF

# Spieth seeks to join Woods as 2-time FedExCup winner

**He'll look to conserve energy as he readies for finale at East Lake**

**Steve DiMeglio**
@steve_dimeglio
USA TODAY Sports



Jordan Spieth won the FedExCup in 2015 and will look to do it again next week.
MARK KONEZNY, USA TODAY SPORTS

LAKE FOREST, ILL. Jordan Spieth needed inspiration heading into the start of the FedEx-Cup Playoffs.

Two close losses are just what he needed.

Now he's in a perfect spot to join Tiger Woods as the only players to win the FedExCup twice.

"The goal was to try and improve each week through the Playoffs to obviously peak next week," Spieth said Wednesday, referring to the Playoff finale in Atlanta at The Tour Championship.

Mission accomplished. After a long summer and the grind of the major championship season, which included Spieth's wild and emotionally draining victory in the British Open at Royal Birkdale, his tank was a bit low heading into the Northern Trust on Long Island in New York, the first event of the lucrative postseason that rewards the FedExCup winner $10 million.

A sluggish first round did nothing to move his needle. But then his putting clicked, and he eventually lost in a playoff to world No. 1 Dustin Johnson. A week later, he finished runner-up to Justin Thomas in the Dell Technologies Championship outside of Boston.

The two second-place finishes moved him into first place in the FedExCup Playoffs standings heading into Thursday's start of the BMW Championship at Conway Farms Golf Club, the third of four Playoff events.

"I'm looking to obviously stay in the No. 1 spot — that's my best chance to win the FedExCup starting in Atlanta," said Spieth, a three-time winner this year. "I've been through this process before, which is nice. We've got a routine we like to go through, and we know how to kind of conserve energy. These last couple weeks have helped, and the FedExCup is a tremendous accomplishment and achievement and something I'm certainly striving for."

Spieth, who won the FedEx-Cup in 2015, is in form, is coming off a good week of rest and likes the golf course. Yet he knows this will be a difficult week in the sense that part of his mind will be on next week. Spieth is all but guaranteed to be in the top five in the standings heading into next week's season-ending tournament. The top five will control their own destiny — if they win at East Lake, they automatically win the FedExCup.

"These Playoffs, if you're in a very good position going in and you feel like you're playing well, the first three events can kind of seem a little more difficult because you see the light at the end of the tunnel. You know that East Lake is what really matters and the way these points work, right?" Spieth said. "There's just such a bigger prize at the end, and that certainly has our attention, the guys in the top five, top 10 of the FedExCup."

But Spieth said he'll have no trouble getting motivated this week. First of all, he likes to win. Secondly, two players are right on his heels in the standings. Spieth has 5,071 points, just 27 ahead of Thomas and 421 ahead of Johnson. And if he were to win the last two Playoff events, he could nudge Thomas for Players of the Year honors.

"I'm motivated to stay where I am ... because No. 1 is a huge difference from No. 3 as you go into East Lake for the scenarios to win," Spieth said. "I'm looking to play well. I took a few days off and, again, it goes back to trying to maintain strength.

"Two of the four years I played East Lake I was certainly tired out by the time I reached there, in '14 and '16. So it's a matter of conserving as much energy as possible, limit the reps on the range and really focus on the short game and next week approach it like a major."

**BMW CHAMPIONSHIP**

**KEY STAT**

**16**

Top-10 finishes in 31 starts in the FedExCup Playoffs for Dustin Johnson. He won the Barclays in 2011 and the Northern Trust this year. He won the BMW Championship in 2010 and '16.

**KEY GROUPS**

On Thursday, points leader Jordan Spieth is out with his two closest pursuers, Justin Thomas and Dustin Johnson (11:33 a.m. ET). Hideki Matsuyama, Jon Rahm and Rickie Fowler are grouped (1:50).

**FEDEXCUP**

Two races are set for the third FedExCup Playoffs event: the one to the top five and the one to the top 30. Each of the top five players after this weekend's BMW Championship will automatically win the FedEx-Cup and $10 million if they win next week's Tour Championship by Coca-Cola. And only the top 30 players advance to the playoff finale Sept. 21-24 at East Lake Golf Club in Atlanta.

| | |
|---|---|
| 1. Jordan Spieth | 5,071 |
| 2. Justin Thomas | 5,044 |
| 3. Dustin Johnson | 4,650 |
| 4. Hideki Matsuyama | 3,021 |
| 5. Jon Rahm | 2,894 |
| 6. Rickie Fowler | 2,217 |
| 7. Marc Leishman | 2,084 |
| 28. Jason Day | 1,241 |
| 29. Gary Woodland | 1,236 |
| 30. Bill Haas | 1,236 |
| 31. Mackenzie Hughes | 1,212 |
| 32. Xander Schauffele | 1,210 |
| 34. Sergio Garcia | 1,161 |
| 36. Phil Mickelson | 1,112 |

**BMW CHAMPIONSHIP**

**Site:** Lake Forest, Ill.
**Course:** Conway Farms GC
**Yardage:** 7,208. **Par:** 71.
**Purse:** $8.75 million
**First prize:** $1,575,000
**TV (ET):** Thursday-Friday, 3-7 p.m. (Golf Channel); Saturday, 1-3 p.m. (Golf Channel), 3-6 p.m. (NBC); Sunday, noon-2 p.m. (Golf Channel), 2-6 p.m. (NBC).

Legal Notice

**If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.**

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber or their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

**Who is included?**

The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

These people are called the "Class" or "Class Members."

**What do I get from the Settlement?**

If you are a Class Member and the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will automatically receive your Settlement Share if you still have an Uber account. Class Members have three options as to how their Settlement Share will be paid:

• Option 1 (the "Uber Rider Account" option). A Settlement Share will be paid to an Uber Rider Account (this is the account created when someone registers to use Uber), which will then be applied towards the Class Member's next Uber ride in the United States. If a Class Member does not use the payment to their Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay their Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card,

U.S. debit card, PayPal account or other payment method associated with their Uber account.

• Option 2 (the "PayPal Account" option). A Settlement Share will be paid to a Class Member's PayPal Account as identified on a Payment Election Form.

• Option 3 (the "eCheck" option). A Settlement Share will be paid by an electronic check, which will be emailed to the email address provided on a Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

Class Members who prefer Option 2 or 3 will need to submit a Payment Election Form by **11:59 p.m. PST on January 8, 2018**. Class Members who do not submit a timely Payment Election Form indicating that they wish to receive their Settlement Share by a payment to a PayPal Account or bank account via eCheck, will have their Settlement Share *automatically* paid to their Uber Rider Account. Class Members who no longer have an Uber account, must submit a valid Payment Election Form and elect Option 2 or 3 to receive a Settlement Share. Class Members can file a Payment Election Form online at the Settlement website.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g. UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to an Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

**What are my other options?**

Class Members who do not want to be legally bound by the Settlement, must exclude themselves from the Class by **January 8, 2018**, or they will not be able to sue, or continue to sue, Uber about the issues in this case. Class Members who exclude themselves or "opt out" from the Settlement, will not receive payment of their share of the Settlement Fund and cannot object to the Settlement. Class Members who stay in the Class, may object to any part of the Settlement by filing an objection by **January 8, 2018**. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

**The Court's Fairness Hearing**

The Court will hold a hearing in the case, known as McKnight et al. v. Uber Technologies, Inc. et al., No. 3:14-cv-05615-JST, on **February 8, 2018 at 2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

**How can I get more information?**

See the Detailed Notice, file a Payment Election Form online and review other information by visiting www.RideShareSettlement.com.

**1-877-797-6083 • www.RideShareSettlement.com**



**Some plays just go down. Others go down in history.**

Each week we'll select 4 of the best college football plays for you to watch and vote on. At the end of the season, with your help, one coach will receive top honors. Check back to see the results!

 Amway FanPoll

Watch, vote, and see if your favorite plays win in the Coach's Call of the Week.

**fanpoll.usatoday.com**

 USA TODAY SPORTS

# STATE-BY-STATE

*Editor's Note:* This is an abbreviated State-By-State page. The full version will return.

**News from across the USA**

**ALABAMA Gadsden:** A pregnant woman who said she used heroin and other drugs faces a chemical endangerment of a child charge.

**ALASKA Anchorage:** The Alaska Eskimo Whaling Commission wants to raise the number of bowhead whales that can be harvested annually by subsistence hunters from 11 villages.

**ARIZONA Phoenix:** Court records say a Phoenix man was arrested after telling police he beat his cat to death because he couldn't find anyone to adopt it.

**ARKANSAS Bentonville:** Alice Walton, daughter of Walmart founder Sam Walton, has created a foundation to display art from vaults and private collections.

**CALIFORNIA San Diego:** Officials say an amphibious vehicle hit a gas line, sparking a fire that injured 15 Camp Pendleton trainees.

**COLORADO Aspen:** State wildlife officials tranquilized a mother bear and her two cubs after they climbed into a tree on a pedestrian mall, *The Aspen Times* reports.

**CONNECTICUT Old Lyme:** State Police seized a kilogram of fentanyl, with a street value of $1 million, during an I-95 traffic stop.

**DELAWARE Wilmington:** Complaints about physician behavior such as sexual misconduct have nearly doubled in Delaware, from an average of 137 a year to 264, *The News Journal* reports.

**DISTRICT OF COLUMBIA:** Residents from across the Washington area filed a record number of noise complaints about Reagan and Dulles airport flights, *The Washington Post* reports.

**FLORIDA Miami:** A nun who became an Internet sensation in a video showing her wielding a chain saw in full habit after Hurricane Irma says she used Google to find out how to start the tool.

**GEORGIA Atlanta:** Authorities say two children were struck in separate incidents by a stolen car being chased by Atlanta police. Neither child was seriously hurt.

**HAWAII Honolulu:** The state Office of Consumer Protection is probing hotel operator resort fees, *Hawaii News Now* reports.

**IDAHO Boise:** Several groups are working to bring the country's first International Dark Sky Reserve to a remote Idaho area.

**ILLINOIS Chicago:** A federal judge says Chicago can move forward with repairs to a crumbling Lake Shore Drive viaduct where dozens of homeless people live.

**INDIANA South Bend:** Mayor Pete Buttgieg wants city workers to get paid parental leave when they have a baby or adopt, *The South Bend Tribune* reports.

**IOWA Des Moines:** Iowa farmland values are up this year, reversing several years of declines, *The Des Moines Register* reports.

**KANSAS Topeka:** The state's Lansing Correctional Facility was put on lockdown Friday after a fight in the dining room between two groups of inmates, *The Topeka Capital-Journal* reports.

**KENTUCKY Frankfort:** Gov. Matt Bevin says Kentucky should consider a constitutional amendment to let the governor appoint the state attorney general.

**LOUISIANA Baton Rouge:** Police are investigating a Louisiana State University student's death as possible fraternity hazing.

**MAINE Machiasport:** Maine has shut down shellfish harvesting along almost a third of its coast because of algae bloom, *The Portland Press Herald* reports.

**MARYLAND College Park:** Oops. The city's announcement about letting non-citizens cast ballots in municipal elections was wrong. The mayor-council vote was 4-3, but charter amendments require six votes to pass.

**MASSACHUSETTS Wrentham:** A man was sentenced to 18 months of probation for animal cruelty in the killing of three baby swans, *The Sun Chronicle* reports.

**MICHIGAN Farmington Hills:** A teacher is on leave after an 11-year-old boy said he was physically forced out of his chair to stand at the Pledge of Allegiance.

**MINNESOTA Brooklyn Park:** Officials say an automated text message erroneously reported a possible shooter at the Brooklyn Park campus of Hennepin Technical College. Instead, the situation was a suspicious package.

**MISSISSIPPI Pocahontas:** Authorities say a trapped driver was rescued from a fire after colliding with a propane truck.

**MISSOURI Springfield:** Mayor Ken McClure says the wooden cross outside First Baptist Church was set on fire, *The Springfield News-Leader* reports.

**MONTANA West Glacier:** Work is being done to protect what's left of the fire damaged Sperry Chalet in Glacier National Park.

**NEBRASKA Omaha:** An exfaculty member and his wife have given $10 million to Creighton University for academics.

**NEVADA Las Vegas:** A federal jury convicted a man of selling the horns of an endangered black rhino to an undercover buyer.

**NEW HAMPSHIRE Lincoln:** Officials say three teens dressed only in shorts and sneakers and without outdoor gear were rescued after they got lost near the top of Little Haystack Mountain.

**NEW JERSEY Atlantic City:** A man who was severely burned after drinking a beer tainted by a chemical used to clean tap lines at an Atlantic City casino's restaurant was awarded $750,000.

**NEW MEXICO Albuquerque:** An endangered Mexican gray wolf was killed by authorities after a Native American tribe complained of cattle deaths.

**NEW YORK New York:** Officials support getting rid of a nearly century-old law that bans dancing at most New York City bars.

**NORTH CAROLINA Randleman:** Police say they found a 5-year-old girl locked in a closet in an empty house without food or water. The girl also had burns and bruises on her body.

**NORTH DAKOTA Bismarck:** Regulators say cleanup is nearly done four years after a pipeline break spilled 20,000 barrels of oil in a North Dakota wheat field.

**OHIO Oak Harbor:** Workers will spend several weeks fixing cracks in a reactor protection wall at Davis-Besse nuclear power plant on Lake Erie.

**OKLAHOMA Oklahoma City:** A bookstore owner was found dead under a book pile in his burning store, sparking a homicide probe.

**OREGON Portland:** Officials say some 1.6 million fish were moved from Cascade Hatchery because of a wildfire in Columbia River gorge, *The Oregonian* reports.

**PENNSYLVANIA West Chester:** Dilworth Farm, where George Washington's troops narrowly escaped the British during the Revolutionary War, has received historic protection.

**RHODE ISLAND Providence:** Prosecutors say a bookkeeper admitted to embezzling more than $700,000 from a medical firm and retirement accounts.

**SOUTH CAROLINA Columbia:** A former state trooper is charged with reckless homicide in a fatal crash by running a stop sign at 80 mph in a 40 mph zone.

**SOUTH DAKOTA Sioux Falls:** The Tri-Valley schools superintendent invited home-school families to the official enrollment count Sept. 29 for a free computer and lunch, *The Argus Leader* reports. But Gov. Dennis Daugaard wants the invite dropped.

**TENNESSEE Knoxville:** The University of Tennessee says one of its professors helped identify a species of prehistoric crocodiles that roamed coastal areas 95 million years ago.

**TEXAS Corpus Christi:** A replica ship built by Spain to honor Christopher Columbus sank in Hurricane Harvey, KRIS-TV reports.

**UTAH Salt Lake City:** Utah lawmakers will convene a special session Wednesday to try to curb violence and drug trafficking in a Salt Lake City neighborhood near a downtown homeless shelter.

**VERMONT South Burlington:** Several flights at Burlington International Airport were delayed or diverted last week when runway lights went out.

**VIRGINIA Roanoke:** Virginia officials expect record numbers of bears killed during the early hunt Oct. 2-4, *The Roanoke Times* reports.

**WASHINGTON Everett:** The city has agreed not to enforce a bikini barista ban during a court challenge.

**WEST VIRGINIA Martinsburg:** A man pleaded guilty to mail fraud involving false insurance claims alleging power surge damages for more than $354,000.

**WISCONSIN Madison:** A federal judge has given class action status to juvenile inmates in a lawsuit over conditions and practices at the Lincoln Hills School for Boys and Copper Lake School for Girls.

**WYOMING Cheyenne:** An appeals court ruling last week gave a big win to environmentalists seeking to block federal coal leases at two Wyoming mines.

*Compiled from staff and wire reports.*

---

**Legal Notice**

**If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.**

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber to their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

**Who is included?**

The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

These people are called the "Class" or "Class Members."

**What do I get from the Settlement?**

If you are a Class Member and the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will *automatically* receive your Settlement Share if you still have an Uber account. Class Members have three options as to how their Settlement Share will be paid:

• Option 1 (the "Uber Rider Account" option). A Settlement Share will be paid to an Uber Rider Account (this is the account created when someone registers to use Uber), which will then be applied towards the Class Member's next Uber ride in the United States. If a Class Member does not use the payment to their Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay their Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card,

U.S. debit card, PayPal account or other payment method associated with their Uber account.

• Option 2 (the "PayPal Account" option). A Settlement Share will be paid to a Class Member's PayPal Account as identified on a Payment Election Form.

• Option 3 (the "eCheck" option). A Settlement Share will be paid by an electronic check, which will be emailed to the email address provided on a Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

Class Members who prefer Option 2 or 3 will need to submit a Payment Election Form by **11:59 p.m. PST on January 8, 2018**. Class Members who do not submit a timely Payment Election Form indicating that they wish to receive their Settlement Share by a payment to a PayPal Account or bank account via eCheck, will have their Settlement Share *automatically* paid to their Uber Rider Account. Class Members who no longer have an Uber account, must submit a valid Payment Election Form and elect Option 2 or 3 to receive a Settlement Share. Class Members can file a Payment Election Form online at the Settlement website.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g. UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to an Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

**What are my other options?**

Class Members who do not want to be legally bound by the Settlement, must exclude themselves from the Class by **January 8, 2018**, or they will not be able to sue, or continue to sue, Uber about the issues in this case. Class Members who exclude themselves or "opt out" from the Settlement, will not receive payment of their share of the Settlement Fund and cannot object to the Settlement. Class Members who stay in the Class, may object to any part of the Settlement by filing an objection by **January 8, 2018**. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

**The Court's Fairness Hearing**

The Court will hold a hearing in the case, known as *McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST, on **February 8, 2018** at **2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

**How can I get more information?**

See the Detailed Notice, Payment Election Form online and review other information by visiting www.RideShareSettlement.com.

**1-877-797-6083 • www.RideShareSettlement.com**



# Get USA TODAY delivered.

**For as low as 38¢ per day.***



**Subscribe Today:**
offers.usatoday.com/PH7UJ

**or call** 1-800-872-0001, ask for offer PH7UJ



*Offer available to new subscribers only. Certain restrictions apply. For more details, visit website or call. Daily price based on the first three months for $25.

# Walmart wants to deliver right to your fridge

**Charisse Jones**
@charissejones
USA TODAY

Walmart is taking its battle against online giant Amazon to the next level, piloting a service that will not only deliver groceries to a customer's front door but have the driver carry them inside and load perishables right into the refrigerator.

The big box retailer announced the trial in a blog post last week noting that it's being done in partnership with August Home, which makes the keyless locks that can be controlled with a smartphone that are crucial to the service.

In a test being conducted with some August Home customers in Silicon Valley, users can order products, including groceries, from Walmart.com.

A driver for delivery service Deliv will then be dispatched to drop off the order, and if the customer is not home, the driver will enter a one-time passcode into the house's smart lock keypad. The driver will enter and leave the packages in the hallway. If the customer has ordered vegetables, steak or other items that need to be kept cold, the deliverer will



**Walmart is testing the delivery service with some August Home customers in Silicon Valley.** AP FILE PHOTO

store the groceries in the refrigerator or freezer.

The homeowner will get a message telling them when their packages have arrived. They can then view details about the delivery — from the time the driver enters until he/she walks back out the door — through the August Home app. They'll even be notified that the front door has been locked once the driver takes off.

Walmart, the largest U.S. company by revenue, and Amazon, the online behemoth that has revolutionized e-commerce and forced many traditional stores to play catch-up, have been in a vigorous battle to win over shoppers with speed and convenience.

One of the biggest battlegrounds has been over delivery, where Amazon has had a distinct advantage. Fighting back, Walmart is offering discounts on online orders if customers will pick them up, as well as testing employee delivery of Walmart.com orders from a few stores.

The grocery part of delivery becomes even more important in the wake of Amazon's purchase of Whole Foods Market, which will give it a chance to expand its grocery delivery service through the premium grocer's network of 468 supermarkets. Walmart has said it will extend its own delivery service to 1,100 locations by the end of this year.

# 'SUPER CRUISE' CONTROL DOES ALL OF THE DRIVING

Hands-free tech arriving soon on some Cadillac CT6s

**Nathan Bomey**
@NathanBomey
USA TODAY



**Premium versions of the Cadillac CT6 can drive themselves on the freeway. The Super Cruise function doesn't work for city driving, which is more complicated.** JARRAD HENDERSON, USA TODAY

WASHINGTON As I merged onto the freeway, a strip of lights on the top of the steering wheel turned green. My moment of truth had arrived.

I let go of the wheel and took my foot off the accelerator.

The car, a 2018 Cadillac CT6 sedan, began driving itself.

In a test drive of the new partially self-driving car technology offered by General Motors, I zipped around the Washington, D.C., area for about an hour Monday, often allowing the car to drive itself on the freeway for minutes at a time.

It was briefly unnerving, but jitters quickly gave way to trust as the car stayed safely centered in its lane, alternately braking and accelerating like a professional driver.

The technology, dubbed Super Cruise, which starts shipping to dealerships this week on premium versions of the CT6, worked precisely as described.

The technology allows you to take your hands off the wheel and feet off the accelerator and brakes. It works only on highways or freeways with ramp access, not in city driving, which is harder for self-driving cars.

Super Cruise is an interim step toward full autonomous driving. For now, it's state-of-the-art, providing a capability similar to Tesla's Autopilot system, which also requires that the driver stay alert and occasionally take part in guiding the car. It also adds a new safety feature that federal regulators want automakers to embrace as an extra layer of protection.

Super Cruise is a $5,000 package, which includes adaptive cruise control, is a $5,000 option on the CT6. The CT6 Platinum comes

> **You can take your hands off the wheel and feet off the accelerator and brakes. You still must keep your eyes on the road, though.**

with it standard at a base price of $85,290. It works like this:

Once you're centered in the lane, the steering wheel's green strip lights up, signaling that you can let the car start driving itself. Using advanced GPS, cameras and sensors, the car stays dead center in the lane, deftly handling

curves and staying a safe distance behind the vehicle ahead of it.

A driver-facing camera monitors your eye movement, without recording video, to ensure that you're still watching the road. At night, it uses infrared technology to monitor your attentiveness.

That's a feature National Transportation Safety Board members said they want automakers to adopt after a Tesla Model S with Autopilot crashed and killed an Ohio resident who wasn't paying attention to the road in May 2016. Instead of a camera, Tesla requires the driver to grip the steering wheel so that the vehicle knows the driver is still monitoring the road.

Anytime I looked away from the road for more than a few seconds, the green strip started blinking. If the car sensed that I was still distracted after a few seconds, the strip turned red, a

chime sounded and the car began coasting, essentially forcing me to take the wheel. If I hadn't done anything, the car would have come to a gradual, controlled stop in its lane. That's designed to protect a passenger who is suddenly incapacitated.

Tesla's system does one thing on the freeway that Cadillac's does not. It can change lanes when the driver activates the turn signal.

As I sped along on the Capital Beltway encircling Washington, Super Cruise forced me to pay attention to the road several times. In fact, I'd say it sided toward being overly cautious. When I squinted in bright sunlight, the system gave me the standard warnings anyway, including a buzzer embedded in the seat.

That's a small quibble. I can deal with it. Better safe than sorry.

# Internet giants under scrutiny

▶ CONTINUED FROM 1B

the past, its recent $13.7 billion purchase of Whole Foods was flagged for its monopolistic implications by some Democrats.

"We should really be concerned about the influence these companies have on the ways we structure our thoughts and our lives," says Siva Vaidhyanathan, professor of media studies at the University of Virginia and the author of The Googlization of Everything: (And Why We Should Worry). "Our everyday interaction with Google and Facebook seems to imply no danger or annoyance. But that doesn't mean there is nothing to worry about."

While Trump administration officials have not displayed an eagerness to curtail Facebook, Google and Amazon, those vying for the White House next may sing a more modern antitrust tune.

"Americans don't like bigness, whether it's big businesses or big government," says Margaret O'Mara, a University of Washington history professor who focuses on the high-tech economy. "You can always win an election by getting up on a podium and railing against bigness."

> **"We should really be concerned about the influence these companies have on the ways we structure our thoughts and our lives."**
>
> **Siva Vaidhyanathan**, professor of media studies at the University of Virginia and the author of The Googlization of Everything: (And Why We Should Worry).

# U.S.-centric stocks looking sad

▶ CONTINUED FROM 1B

home, such as auto parts retailers Advance Auto Parts, down 42% in 2017 through Sept. 25, or department stores such as Macy's, down 39%.

▶ **Blame Amazon.** A lot of the domestic stocks that have suffered year-to-date declines of more than 10% and as much as 45% include a who's-who list of retailers, such as Macy's, Target and AutoZone and grocery stores such as Kroger that have been hurt by the rapid shift to online shopping and the domination of Amazon.

▶ **Blame Trump.** The Republican-controlled Congress was supposed to pass Trump's America First agenda, which included plans to invest big in infrastruc-

ture projects and lower corporate taxes. But those policies haven't been passed.

"The lack of domestic stimulus via infrastructure spending and tax cuts have hurt stocks more heavily focused on the domestic economy," says Lindsey Bell, investment strategist at CFRA Research, a New York-based Wall Street firm.

▶ **Blame oil.** The oil market is still suffering from oversupply, says Howard Silverblatt, senior index analyst at S&P Dow Jones Indexes.

A barrel of U.S. produced crude is now trading around $52 per barrel. The energy sector is currently the worst-performing sector in the Standard & Poor's 500 stock index. It is down 9% this year.

> **"It's 100% related to the dollar."**
>
> **Paul Hickey**, co-founder, Bespoke Investment Group

**Legal Notice**

## If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber to their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

**Who is included?**

**The Settlement** includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With a Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

These people are called the "Class" or "Class Members."

**What do I get from the Settlement?**

If you are a Class Member and the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will *automatically* receive your Settlement Share if you still have an Uber account. Class Members have three options as to how their Settlement Share will be paid:

- Option 1 (the "Uber Rider Account" option). A Settlement Share will be paid to an Uber Rider Account (this is the account created when someone registers to use Uber), which will then be applied towards the Class Member's next Uber ride in the United States. If a Class Member does not use the payment to their Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay their Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card,

U.S. debit card, PayPal account or other payment method associated with their Uber account.

- Option 2 (the "PayPal Account" option). A Settlement Share will be paid to a Class Member's PayPal Account as identified on a Payment Election Form.
- Option 3 (the "eCheck" option). A Settlement Share will be paid by an electronic check, which will be emailed to the email address provided on a Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

Class Members who prefer Option 2 or 3 will need to submit a Payment Election Form by 11:59 p.m. PST on January 8, 2018. Class Members who do not submit a timely Payment Election Form indicating that they wish to receive their Settlement Share by a payment to a PayPal Account or bank account via eCheck, will have their Settlement Share *automatically* paid to their Uber Rider Account. Class Members who no longer have an Uber account, must submit a valid Payment Election Form and elect Option 2 or 3 to receive a Settlement Share. Class Members can file a Payment Election Form online at the Settlement website.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g. UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to an Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

**What are my other options?**

Class Members who do not want to be legally bound by the Settlement, must exclude themselves from the Class by January 8, 2018, or they will not be able to sue, or continue to sue, Uber about the issues in this case. Class Members who exclude themselves or "opt out" from the Settlement, will not receive payment of their share of the Settlement Fund and cannot object to the Settlement. Class Members who stay in the Class, may object to any part of the Settlement by filing an objection by January 8, 2018. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

**The Court's Fairness Hearing**

The Court will hold a hearing in the case, known as *McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST, on **February 8, 2018 at 2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

**How can I get more information?**

See the Detailed Notice, file a Payment Election Form online and review other information by visiting www.RideShareSettlement.com.

**1-877-797-6083 • www.RideShareSettlement.com**

# Tiger widows try to rebuild their lives

After losing husbands,
women of Sundarbans
also battle exclusion

**Sujoy Dhar**
Special for USA TODAY

JHARKHALI, INDIA  Shibani Mistry's husband went crab fishing for extra income four years ago — only to die from a regrettably familiar cause on this West Bengali island: a tiger attack.

"We had very little money ahead of a religious festival, and so he had no other option since a catch of the crabs only fetch a good price in the market," said Mistry, 35, who lives in Malipara village and depends on handouts from neighbors and a local charity. "He went, and he never returned. He was taken away by a tiger."

In the mangroves of Sundarbans, a lush green U.N. world heritage site spread over 7,700 square miles of mostly swamp between India and Bangladesh, every villager who is a crab fisherman or a honey collector has a tragic tiger story to share.

The women, who are known as the tiger widows of Sundarbans, live lonely, impoverished lives battling more than just the loss of their spouses.

USA TODAY tracked at least nine families who have lost male members to tiger attacks here.

"We live a miserable life," Mistry said. "I have sent my son to live with my parents in Kolkata while I live here with my teenage daughter. She goes to school, but I can hardly get him books or afford a private tutor."

In an adjoining village, Aparna Shiyali, 30, is a tiger widow who now risks her own life to go crab fishing.

"It was a spring day when he went crab fishing and never returned. Now I go crab fishing because if I do not go, my children will starve," Shiyali said as her young daughter came running to stand by her mother.

Kanan Ojha, 55, who lost her husband two decades ago, stares blankly. "I am a living corpse ac-


"We live a miserable life," says Shibani Mistry, who lost her husband to a tiger attack four years ago. AVISHEK MITRA AND SUJOY DHAR, SPECIAL FOR USA TODAY

tually. I had to face a lot since my husband's death. I was branded unlucky," Ojha said. "I married off my only daughter and my parents-in-law are also gone now. Looking back I have lived a terrible life."

## TIGER ATTACKS ON THE RISE

Conflicts with tigers in the mangroves of Sundarbans is unavoidable for villagers who have no alternative livelihood besides fishing, honey collection and subsistence farming.

Tiger attacks are increasing because of conservation efforts to protect the endangered animals, who are facing a steady loss of habitat and scarcity of prey.

Sundarbans is home to one of the largest populations of the protected Royal Bengal tigers, who co-exist with nearly 4.3 million people.

The West Bengal forest department puts the toll from tiger attacks at 10 every year, but villagers and social workers in the region say at least 10 tiger deaths occur every month.

Ajit Baidya remembers his chilling encounter two years ago with a Royal Bengal tiger when he


Game officials watch as a young female Royal Bengal tiger is released into the Sundarban Wildlife Reserve in April 2010. JOYDIP SUCHANDRA KUNDU, AP

lost his friend in the swamps of Sundarbans forest.

Baidya had gone crab fishing — considered more lucrative than common fishing — when a tiger leapt into their boat and snatched his friend. As the animal dug its teeth into the neck of his friend, dragging him into the water, Baidya put up a fight and risked his

own life.

"I too jumped into the water and pulled my friend by his feet while the tiger was holding him by his neck and trying to drag him to the shore. It was a tug of war which I won and lost," he said.

Baidya had managed to free his friend who died from the bite.

## CONSERVATION GAINS AND HUMAN LOSSES

Nilanjan Mallick, chief conservator of forest and field director of Sunderbans Tiger Reserve, said conservation efforts show the area's population is improving.

On the last tiger count in 2016-17, Mallick said, cameras installed in the forests showed 87 tigers captured, excluding cubs. He said the actual number of tigers is much higher since cameras do not cover the entire area. As a result of concerted efforts under India's "Project Tiger" initiative, the country is now home to the most tigers in the world: 2,226, according to the official 2014 estimate, up 30% from 1,706 in 2010.

"We have been able to stop organized poaching, and the animal has a sufficient prey base," Mallick said. To keep them away from humans, "we try to barricade the villages with nylon nets or set up trap cages with live bait. Straying is a permanent issue."

Hunting in the marshland is not easy for Sundarban tigers, so they see everything as prey even though humans are not their preferred food. "Human beings are the easiest prey when they come close to the animal," he said.

## WIDOWS STRUGGLE FOR LIVELIHOOD

The villagers of Sundarban — whether Hindus or Muslims —worship Bonobibi, Queen of the Forest, who is their guardian deity, as well as Dakkhin Ray, the God of the tiger, before they venture out to fish or collect honey.

But these deities do not always provide the hoped for protection, especially if the villagers wander into areas restricted to the tigers.

If loss of a loved one isn't bad enough, tiger widows often fail to receive government compensation they are owed because of corruption in West Bengal state, according to N.C. Jana, who runs the non-profit Sundarban Tiger Widow Welfare Society.

Widows interviewed in the villages said they never got any government support after their husbands' deaths. "The families of the victims are not even aware of the compensation they are entitled to," Jana said.

---

**Legal Notice**

**If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.**

A settlement has been reached in a class action lawsuit about whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber.

The United States District Court for the Northern District of California will hold a hearing to decide whether to approve the Settlement, so that benefits can be issued. Those included have legal rights and options, such as receiving an automatic payment from Uber or their Uber Rider Account, submitting a Payment Election Form requesting payment to their PayPal Account or bank account via eCheck, or excluding themselves from or objecting to the Settlement. This notice is only a summary. Go to www.RideShareSettlement.com for detailed information.

**Who is included?**

The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

These people are called the "Class" or "Class Members."

**What do I get from the Settlement?**

If you are a Class Member and the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement, you will *automatically* receive your Settlement Share if you still have an Uber account. Class Members have three options as to how their Settlement Share will be paid:

• Option 1 (the "Uber Rider Account" option). A Settlement Share will be paid to an Uber Rider Account (this is the account created when someone registers to use Uber), which will then be applied towards the Class Member's next Uber ride in the United States. If a Class Member does not use the payment to their Uber Rider Account within 365 days of the Effective Date, a single attempt will be made to pay their Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card,

U.S. debit card, PayPal account or other payment method associated with their Uber account.

• Option 2 (the "PayPal Account" option). A Settlement Share will be paid to a Class Member's PayPal Account as identified on a Payment Election Form.

• Option 3 (the "eCheck" option). A Settlement Share will be paid by an electronic check, which will be emailed to the email address provided on a Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

Class Members who prefer Option 2 or 3 will need to submit a Payment Election Form by **11:59 p.m. PST on January 8, 2018**. Class Members who do not submit a timely Payment Election Form indicating that they wish to receive their Settlement Share by a payment to a PayPal Account or bank account via eCheck, will have their Settlement Share *automatically* paid to their Uber Rider Account. Class Members who no longer have an Uber account, must submit a valid Payment Election Form and elect Option 2 or 3 to receive a Settlement Share. Class Members can file a Payment Election Form online at the Settlement website.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With a Safe Rides Fee (e.g. UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

Payments to Class Members (either to an Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

**What are my other options?**

Class Members who do not want to be legally bound by the Settlement, must exclude themselves from the Class by **January 8, 2018**, or they will not be able to sue, or continue to sue, Uber about the issues in this case. Class Members who exclude themselves or "opt out" from the Settlement, will not receive payment of their share of the Settlement Fund and cannot object to the Settlement. Class Members who stay in the Class, may object to any part of the Settlement by filing an objection by **January 8, 2018**. The Detailed Notice available at the Settlement website explains how to exclude yourself or object.

**The Court's Fairness Hearing**

The Court will hold a hearing in the case, known as *McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST, on **February 8, 2018 at 2:00 p.m.**, to consider whether to approve the Settlement, and the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to.

**How can I get more information?**

See the Detailed Notice, file a Payment Election Form online and review other information by visiting www.RideShareSettlement.com.

**1-877-797-6083 • www.RideShareSettlement.com**

**Get USA TODAY delivered.**

For as low as 38¢ per day.*



**Subscribe Today:**
offers.usatoday.com/PH7UJ

or call 1-800-872-0001, ask for offer PH7UJ

USA TODAY

*Offer available to new subscribers only. Certain restrictions apply. For more details, visit website or call. Daily price based on the first three months for $25.

Attachment 5

Case 4:17-cv-05615-JSW Document 1 Filed 11/15/17 Page 43 of 61

If you used Uber in the U.S. and paid a Safe Rides Fee, you
may be entitled to a payment from a class action settlement.
Legal Notice          www.RideShareSettlement.com          Legal Notice

World > North America > United States > California > **Westlake Village**

ENGLISH (US), °F ⚙

 **AccuWeather** 
in partnership with

Westlake Village, CA 🔍

Follow us on
   

| United States Weather | Westlake Village, CA Local Weather ☀ 75°F ▾ | Personalized Forecasts: Allergies ▾ |

| **Now 10:26 am PDT** | Weekend | Extended | Month | Radar | MinuteCast® | Watch Videos ⊖ |

**CURRENT WEATHER**



**75°**F
RealFeel® 80°

Sunny

See Hourly ⊖

**TODAY**
SEP 8



**83°** Hi
RealFeel® 90°

Mostly sunny

More

**TONIGHT**
SEP 8

🌙☁

**59°** Lo
RealFeel® 59°

Partly cloudy

More

**TOMORROW**
SEP 9



**83°** Hi
RealFeel® 89°

Plenty of
sunshine

More

### Trending Now

Florida braces for Irma's wrath

Deadly Irma slams Cuba, the Bahamas

Terrifying video shows strongest earthquake in
a century rattling Mexico

### Be AccuWeather Ready

✔ Hurricane preparedness checklist

✔ Be in the know about tropical storms

LOOKING AHEAD
Showers and a thunderstorm late tomorrow night through Sunday afternoon ⊖





Attachment 6

**McKnight v Uber Sponsored Search Keywords**

Uber Settlement
Uber Ride Settlement
Uber Ride Share Settlement
Uber Fee Settlement
Uber Ride Fee Settlement
Uber Safe Ride Fee Settlement
Uber Class Action
Uber Ride Class Action
Uber Ride Share Class Action
Uber Fee Class Action
Uber Ride Fee Class Action
Uber Safe Ride Fee Class Action
Uber Class Action Settlement
Uber Ride Class Action Settlement
Uber Ride Share Class Action Settlement
Uber Fee Class Action Settlement
Uber Ride Fee Class Action Settlement
Uber Safe Ride Fee Class Action Settlement
Uber Lawsuit
Uber Ride Lawsuit
Uber Ride Share Lawsuit
Uber Fee Lawsuit
Uber Ride Fee Lawsuit
Uber Safe Ride Fee Lawsuit
Uber Litigation
Uber Ride Litigation
Uber Ride Share Litigation
Uber Fee Litigation
Uber Ride Fee Litigation
Uber Safe Ride Fee Litigation
Uber Claims
Uber Ride Claims
Uber Ride Share Claims
Uber Fee Claims
Uber Ride Fee Claims
Uber Safe Ride Fee Claims

# Attachment 7



Google

Uber Class Action

All    News    Videos    Images    Shopping    More    Settings    Tools

About 15,400,000 results (0.45 seconds)

**Class Action Settlement - Safe Rides Fee**
[Ad] www.ridesharesettlement.com/ ▼
Persons who obtained service with a Safe Rides Fee may be entitled to a payment.

**Uber Drivers Win Preliminary Class-Action Status in Labor Case - The ...**
https://www.nytimes.com/2017/07/12/business/uber-drivers-class-action.html
Jul 12, 2017 - A federal court in North Carolina gave conditional certification on Wednesday to a **class-action** lawsuit by several **Uber** drivers that was brought ...

**Uber Lawsuit Information**
uberlawsuit.com/ ▼
**Uber** drivers have filed a **class action** lawsuit claiming they have been misclassified as independent contractors and are entitled to be reimbursed for their ...

**Uber Class Action Lawsuit - Auto Settlement & Recall Lawyers**
https://www.classaction.com/uber/lawsuit/ ▼
**Uber class action** lawsuits filed in numerous states challenge whether drivers for the ride-sharing company are independent contractors—as **Uber** claims—or ...

**Lawsuit accuses Uber of ripping off drivers, paying them smaller fares ...**
www.latimes.com/local/lanow/la-me-uber-drivers-lawsuit-20170429-story.html ▼
Apr 28, 2017 - For years, **Uber** has been fighting **class-action** lawsuits that seek to redefine the employment status of drivers in California and elsewhere from ...

**Lawsuit Accuses Uber Of Fare Fraud - Fast Company**
https://www.fastcompany.com/40424171/lawsuit-accuses-uber-of-fare-fraud ▼
May 24, 2017 - Some **Uber** customers think **Uber** is taking them for a ride—and not in a good way. According to a federal **class-action** lawsuit filed today, **Uber** is ...

Uber Class Action

Web    Images    Video    News    More ⌄    Anytime ⌄

Also try: **uber class action lawsuit**, **uber class action suit**

Ads related to: Uber Class Action

**Class Action Settlement – Safe Rides Fee**
www.RideShareSettlement.com
Persons who used **Uber** and paid a Safe Rides Fee may be entitled to a payment.

Ad related to: Uber Class Action

**Uber class action - On Downloadsearch.cnet.com**
downloadsearch.cnet.com/Uber Class Action/Search no more
**Uber class action** Results for your search. See yourself.

**Uber Official Website - Work When You Want With Uber**
www.Uber.com · Uber
Uber.com has been visited by 100K+ users in the past month
Drive Your Car & Be Your Own Boss. Work When You Want With **Uber**.
Get paid instantly · Affordable leases · Get approved quickly
Insurance coverage: Commercial, Uninsured Motorist, Collision

Need a Car? We Can help                Signup To Drive With Uber
Make Good Money Driving             Industry-Leading Coverage
Just Looking For A Ride?               Need a Car? We Can help

**Uber Lawsuit Information**
uberlawsuit.com ⌄
**Uber** drivers have filed a **class action** lawsuit claiming they have been misclassified as independent contractors and are entitled to be reimbursed for their expenses ...



Uber Settlement

| Web | Images | Videos | Maps | News | | My saves |

19,000,000 RESULTS    Any time ▾

## Class Action Settlement
Ad · www.RideShareSettlement.com ▾
Persons who obtained service with a Safe Rides Fee may be entitled to a payment.

## Uber.com - Make $676/Wk - Get Paid Instantly, No Minimum
Ad · Uber.com/Make_$676/Wk_In_Portland ▾    816,400+ followers on Twitter
Get Paid Instantly, No Minimum! Earnings May Vary. Sign Up Today.
uber.com has been visited by 100K+ users in the past month

## Uber Settlements - Current Cash Settlement & Rebate Info
https://www.classaction.com/uber/settlement ▾
One Uber class action lawsuit tentatively reached a $100 million settlement, but a judge struck it down for being unfair to drivers. Uber Technologies, Inc. is facing ...

## Class Action Settlement | Uber News
https://newsroom.uber.com/class-action-settlement ▾
Today we have asked for approval from the U.S. District Court for the Northern District of California to settle two cases: Philliben v. Uber Technologies, Inc.

Help · Sign up to Ride

### Related searches
uber settlement **claim form**

uber **driver** settlement

uber settlement **class action**

uber settlement **california**

uber **class action lawsuit california**

uber **lawsuits** settlements **amounts**

uber settlement **payout**

uber **drivers independent contractors 2016**

# Attachment 8

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If you used Uber in the U.S. and paid a Safe Rides Fee, you may be entitled to a payment from a class action settlement.

*A federal court directed this notice. This is not a solicitation from a lawyer.*

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO UBER, THE CLERK OF THE COURT, OR THE JUDGE.**

- A settlement has been reached in a class action lawsuit regarding whether Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber" or Defendants) made misrepresentations about the "Safe Rides Fee," safety measures, and the background check process for potential drivers. Uber denies the allegations in the lawsuit, and the Court has not decided who is right.

- The Settlement requires Uber to make certain changes to how it advertises background checks and certain fees. Additionally, the Settlement will result in the creation of a $32,500,000 Settlement Fund to be paid to eligible users of Uber, called "Class Members" (described in Section 5 below).

- There are three methods to receive payment of your share of the Settlement Fund. If you do nothing, the default method (Option 1, the "Uber Rider Account" option) will result in payment to your Uber account and will be paid toward your next Uber ride in the United States, after the payment is made. Option 2 (the "PayPal Account" option) will result in payment to your PayPal Account. Option 3 (the "eCheck" option) will result in payment by an electronic check that will be emailed to you. eChecks are available for deposit in U.S. financial institutions only. For Options 2 and 3, you must submit a valid Payment Election Form by **January 8, 2018**. If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Receive an automatic payment to your Uber Rider Account. Give up any rights you might have to sue Uber about the claims resolved by the Settlement. If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share. |
| **SUBMIT A PAYMENT ELECTION FORM** | Submit a Payment Election Form by **January 8, 2018**, requesting that payment be made to your PayPal Account or bank account via eCheck. Give up any rights you might have to sue Uber about the claims resolved by the Settlement. |
| **EXCLUDE YOURSELF** | Request to be excluded and receive no benefits from the Settlement. This is the only option that allows you to start or continue your own lawsuit against Uber for the claims at issue in the Settlement. You must submit your request to exclude yourself by **January 8, 2018**. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. You must submit or file your objection by **January 8, 2018**. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement at a hearing scheduled for **February 8, 2018 at 2:00 p.m.** |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to Class Members who do not request exclusion from the Settlement. Please be patient.

QUESTIONS? CALL **1-877-797-6083** OR VISIT WWW.RIDESHARESETTLEMENT.COM

O7671 v.09 09.06.2017

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................................................................ **PAGE 3**
    1. Why is there a notice?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT** ................................................................ **PAGE 3**
    5. Who is included in the Settlement?
    6. What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS** ............................................................................ **PAGE 4**
    7. What does the Settlement provide?
    8. What else does the Settlement provide?

**HOW YOU WILL RECEIVE PAYMENT** ................................................................ **PAGE 5**
    9. How will I receive payment?
    10. How much will my payment be?
    11. How do I file a Payment Election Form?
    12. If I do not choose to file a Payment Election Form, what happens?
    13. When would I get my payment?
    14. What am I giving up to get a payment and stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ............................................ **PAGE 6**
    15. How do I get out of the Settlement?
    16. If I don't exclude myself, can I sue the Defendants for the same thing later?
    17. If I exclude myself, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** .................................................................. **PAGE 7**
    18. Do I have a lawyer in the case?
    19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................................................... **PAGE 8**
    20. How do I tell the Court if I do not like the Settlement?
    21. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** .................................................................... **PAGE 8**
    22. When and where will the Court decide whether to approve the Settlement?
    23. Do I have to attend the hearing?

**IF YOU DO NOTHING** ........................................................................................ **PAGE 9**
    24. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...................................................................... **PAGE 9**
    25. How do I get more information?

# BASIC INFORMATION

## 1.    Why is there a notice?

A court authorized this notice because you have a right to know about the proposed Settlement of a class action lawsuit known as *McKnight et al. v. Uber Technologies, Inc. et al.*, Case No. 3:14-cv-05615-JST and about all of your options before the Court decides whether to approve the Settlement.

This notice explains the lawsuit, the Settlement, your legal rights, what benefits are provided by the Settlement, who is eligible for them, and how to get them. If the Court approves the Settlement and after objections and appeals are resolved, then the payments agreed to in the Settlement will be made.

Judge Jon S. Tigar of the United States District Court, Northern District of California is overseeing this case. The people who sued are called the "Plaintiffs." Uber Technologies, Inc. and Rasier, LLC are the "Defendants."

## 2.    What is this lawsuit about?

The lawsuit alleges that Uber made misrepresentations or omissions regarding the "Safe Rides Fee," safety measures, and the background check process for potential drivers. The lawsuit asserted a number of causes of action, including Breach of Implied Contract, alleged violations of California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), and other violations of law.

The Defendants vigorously deny and continue to dispute all of the claims and contentions alleged in the lawsuit, and they deny any and all allegations of wrongdoing, fault, liability, or damage of any kind. Defendants further deny that they acted improperly or wrongfully in any way, and they believe that the lawsuit has no merit.

A copy of the lawsuit (the Plaintiffs' Consolidated Class Action Complaint), the Settlement Agreement, and other case-related documents are posted on the Settlement website, www.RideShareSettlement.com. The Settlement resolves the lawsuit. The Court has not decided who is right.

## 3.    Why is this a class action?

In a class action, one or more people called "Class Representatives" (in this case, Plaintiffs Nate Coolidge, Byron McKnight, Ernesto Mejia, Julian Mena, and Todd Schreiber) sue on behalf of themselves and other people with similar claims. Together, all the people with similar claims (except those who exclude themselves) are members of a "Class." Please see response to Question 5 (below) to determine whether you are part of the Class.

## 4.    Why is there a settlement?

The Court has not decided in favor of the Plaintiffs or Defendants. Instead, both sides have agreed to the Settlement. By agreeing to the Settlement, the Parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Class Members will receive the benefits described in this notice. The proposed Settlement does not mean that any law was broken or that the Defendants did anything wrong. The Defendants deny all legal claims in this case. Plaintiffs and their lawyers think the proposed Settlement is best for everyone who is affected.

# WHO IS PART OF THE SETTLEMENT

To see if you will get money from this Settlement, you first have to decide if you are a Class Member.

## 5.    Who is included in the Settlement?

The Settlement includes all persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or

service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff. "Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

## 6.   What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are in the Class or have any other questions about the Settlement, visit the Settlement website at www.RideShareSettlement.com or call the toll-free number, 1-877-797-6083. You also may send questions to the Settlement Administrator at McKnight v. Uber Settlement, Rideshare Settlement Administrator, PO Box 3967, Portland, OR 97208-3967. Please do not address any questions about the Settlement to Uber, the clerk of the Court, or the judge.

# THE SETTLEMENT BENEFITS

## 7.   What does the Settlement provide?

The Defendants have agreed to pay $32,500,000 to create a "Settlement Fund." The Settlement Fund will be used to pay the costs and expenses related to notice and administration of the Settlement, payments to Class Members (called "Settlement Shares"), the Service Awards to the Class Representatives as approved by the Court, and the Attorneys' Fees and Expenses to Class Counsel as approved by the Court. If there are any funds remaining in the Settlement Fund after all Settlement Shares have been distributed (because, for example, it was not possible to pay a Class Member's Uber Payment Account), they will be distributed to the nonprofit organization known as the National Consumer Law Center and not returned to the Defendants.

You can choose to receive your Settlement Share as a payment to your PayPal Account or bank account via eCheck by filing a Payment Election Form. For more information regarding the Payment Election Form and how to file one, see Questions 9 and 11. If you do not file a Payment Election Form, you will receive a payment to your Uber Rider Account *automatically*, as described in response to Question 9. However, if you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share.

## 8.   What else does the Settlement provide?

As part of the Settlement, Defendants have agreed to certain changes in their business practices. These include the following:

(a)  Defendants will not describe or title any fee that they charge for their services, including any charge for Uber's Rideshare Services, as the "Safe Rides Fee."

(b)  In any Commercial Advertising, Defendants will not make the following representations regarding their background checks:

(i) Defendants shall not list any offense type that does not result in automatic disqualification as a driver during the initial screening process without explaining the disqualification criteria; and

(ii) Defendants shall not represent that they screen against arrests for any instances where Defendants actually screen only against convictions.

(c) In any Commercial Advertising regarding background checks, Defendants shall identify the time period covered by the background check report Defendants use to screen potential drivers or, if shorter, any time period used for disqualification purposes.

(d) In any Commercial Advertising, Defendants shall not use the terms "best available," "industry leading," "gold standard," "safest," or "best-in-class" in connection with their background checks.

(e) In any Commercial Advertising, Defendants shall not use the following phrases to describe Uber's Rideshare Services: "safest ride on the road," "strictest safety standards possible," "safest experience on the road," "best-in-class safety and accountability," "safest transportation option," "background checks that exceed any local or national standard," or "safest possible platform."

# HOW YOU WILL RECEIVE PAYMENT

**9.    How will I receive payment?**

If the Settlement is approved by the Court and as long as you do not exclude yourself from the Settlement (see Question 15), you will *automatically* receive your Settlement Share if you still have an Uber account (see Question 10 on how your Settlement Share is calculated). You have three options as to how your Settlement Share will be paid to you:

- • Option 1 (the "Uber Rider Account" option). Your Settlement Share will be paid to your Uber Rider Account (this is the account you created when you registered to use Uber), which will then be applied toward your next Uber ride in the United States. If you do not use the payment to your Uber Rider Account within 365 days of the Effective Date (the Effective Date is the date the Court's final approval of the Settlement becomes effective), a single attempt will be made to pay your Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card, U.S. debit card, PayPal account, or other payment method associated with your Uber account.

- • Option 2 (the "PayPal Account" option). Your Settlement Share will be paid to your PayPal Account, which you will identify on your Payment Election Form.

- • Option 3 (the "bank account via eCheck" option). Your Settlement Share will be paid by an electronic check, which will be emailed to the email address you provide on your Payment Election Form. eChecks are available for deposit in U.S. financial institutions only.

If you would like to receive your Settlement Share by a payment to your PayPal Account or by bank account via eCheck, instead of your Uber Rider Account, you will need to submit a Payment Election Form (see Question 11) by **11:59 p.m. PST on January 8, 2018.** If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share.

If you do not submit a timely Payment Election Form indicating that you wish to receive your Settlement Share by a payment to your PayPal Account or bank account via eCheck, your Settlement Share will automatically be paid to your Uber Rider Account and applied to your next Uber ride in the United States that takes place after the payment to your Uber Rider Account. If you do not use Uber within 365 days of the Effective Date, then a single attempt will be made to pay your Settlement Share (less the average cost of distributing the Settlement Share) to a default U.S. credit card, U.S. debit card, PayPal account, or other payment method associated with your Uber Account. In this event, if the payment attempt is unsuccessful for any reason, your share of the Settlement will be paid to the following nonprofit organization: National Consumer Law Center.

**10.    How much will my payment be?**

The amount that you will receive as payment under the Settlement is called your "Settlement Share." The Settlement Share is calculated by allocating the $32,500,000 Settlement Fund *after* deducting the costs of and expenses related to notice and administration of the Settlement (capped at $487,000 for payments to the Settlement Administrator), the Service Award to the Class Representatives as approved by the Court, and the Attorneys' Fees and Expenses to Class Counsel as approved by the Court. The amount remaining after deducting these costs from the Settlement Fund is called the Settlement Fund Balance. The Settlement Fund Balance will be allocated across all Class Members who have not opted out of the Settlement such that each Class Member will receive $0.25 for her or his first ride on an Uber Ride Service With A Safe Rides Fee, and then a per-ride amount for each additional ride on an Uber Ride Service With A Safe Rides Fee during the Class Period.

It is not possible to know at this point exactly how much your Settlement Share payment will be, since the amount of payment will depend on factors that are not presently known, including (i) the number of Class Members who ultimately participate in the Settlement; (ii) the ultimate costs of providing notice and administrating the Settlement; (iii) the amount of the Service Award to the Class Representatives as approved by the Court; and (iv) the amount of the Attorneys' Fees and Expenses to Class Counsel as approved by the Court.

The Settlement Share for the average Class Member is estimated to be approximately $1.07. You can estimate your own Settlement Share by starting with $0.25 for your first ride on an Uber Ride Service With A Safe Rides Fee (e.g., UberX), and then adding $0.05 for each subsequent ride taken during the Class Period.

## 11.   How do I file a Payment Election Form?

You may file a Payment Election Form online at the Settlement website, www.RideShareSettlement.com. The deadline to file an online Payment Election Form is **11:59 p.m. PST on January 8, 2018**. You may also download a Payment Election Form from the Settlement website and submit it by mail, postmarked by **January 8, 2018.**

Class Members who file a valid Payment Election Form electing payment to their PayPal Account or bank account via eCheck, if applicable, before the deadline will receive their Settlement Share by the method selected. Class Members who do nothing, or file a valid Payment Election Form electing payment to their Uber Rider Account before the deadline, will receive their Settlement Share as a payment to their Uber Rider Account.

Because only one attempt will be made to pay your Settlement Share to your PayPal Account or bank account via eCheck, it is your responsibility to make sure that the information you provide is current and accurate until the time the payment of the Settlement Share has been issued.

## 12.   If I do not choose to file a Payment Election Form, what happens?

Class Members who do not submit a Payment Election Form will *automatically* receive their Settlement Share as a payment to their Uber Rider Account if they still have an Uber account. The Settlement Share payment to a Class Member's Uber Rider Account is non-transferable and will be applied to the first Uber Rideshare Service in the United States billed to the Class Member's Uber Rider Account. If the payment to a Class Member's Uber Rider Account has not been used within 365 days after the Effective Date, one attempt will be made to apply the payment to the Class Member's Uber Payment Account (less the average cost of distributing the Settlement Share). When known, the date the payment will be made to your Uber Rider Account and the deadline to use payments applied to your Uber Rider Account will be posted on the Settlement website. If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share.

Payments to Class Members (either to your Uber Rider Account, PayPal Account, or bank account via eCheck) will be made only after the Court grants "final approval" to the Settlement and after any appeals are resolved (see "The Court's Fairness Hearing" below). If there are appeals, resolving them can take time. Please be patient and check the Settlement website for updates.

## 13.   When would I get my payment?

Class Members who do not opt out of the Settlement will receive their payments only after the Court grants final approval to the Settlement and after any appeals are resolved (see "The Court's Fairness Hearing" below). If there are appeals, resolving them can take time. Please be patient.

## 14.   What am I giving up to get a payment and stay in the Class?

Unless you exclude yourself from the Settlement, you cannot sue or be part of any other lawsuit against the Defendants about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you. If you file a Payment Election Form for benefits or do nothing at all, you will be releasing Defendants from all of the claims described and identified in Paragraphs 31, 32, 33, 94, and 95 of the Settlement Agreement.

The Settlement Agreement, available at www.RideShareSettlement.com, provides more detail regarding the release and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Class listed in Question 18 for free, or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep any right you might have to sue the Defendants about the issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself—or is sometimes referred to as "opting out" of the Class.

## 15.    How do I get out of the Settlement?

To exclude yourself or "opt out" from the Settlement, you must send a letter by mail that contains all of the following: (a) your full name; (b) the email address and/or telephone number associated with your Uber account; (c) a clear statement that you elect to be excluded from the Class, do not wish to be a Class Member, and elect to be excluded from any judgment entered pursuant to the Settlement; (d) the case name and number (*McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST); and (e) your signature. You must mail your exclusion request postmarked no later than **January 8, 2018** to the following address:

McKnight v. Uber Settlement
Rideshare Settlement Administrator
PO Box 3967
Portland, OR 97208-3967

You cannot ask to be excluded on the phone, by email, or at the Settlement website.

If you exclude yourself or "opt out" from the Settlement, you will not receive payment of your share of the Settlement Fund, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Defendants in the future.

## 16.    If I don't exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Defendants for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit. Remember, the exclusion deadline is **January 8, 2018**.

## 17.    If I exclude myself, can I still get a payment?

No. If you exclude yourself, you will not receive payment of your share of the Settlement Fund. But, you may sue, continue to sue, or be part of a different lawsuit against Defendants.

# THE LAWYERS REPRESENTING YOU

## 18.    Do I have a lawyer in the case?

The Court has appointed the following lawyers as "Class Counsel" to represent all members of the Class:

| | | |
|---|---|---|
| Robert R. Ahdoot | Mike Arias | Nicholas Coulson |
| Tina Wolfson | Alfredo Torrijos | LIDDLE & DUBIN, P.C. |
| AHDOOT & WOLFSON, PC | ARIAS, SANGUINETTI, | 975 E. Jefferson Avenue |
| 1016 Palm Avenue | STAHLE & TORRIJOS, LLP | Detroit, MI 48207 |
| West Hollywood, CA 90069 | 6701 Center Drive West, 14th Floor | |
| | Los Angeles, CA 90045 | |

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

## 19.    How will the lawyers be paid?

Class Counsel intend to request up to twenty-five percent (25%) of the value of the Settlement Fund for attorneys' fees, plus reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation. The fees and expenses awarded by the Court will be paid out of the Settlement Fund. The Court will decide the amount of fees and expenses to award.

Class Counsel also will request that Service Awards of up to $500 each be paid from the Settlement Fund to the Class Representatives for their service as representatives on behalf of the Class.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

## 20. How do I tell the Court if I do not like the Settlement?

If you're a Class Member, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger payment; the Court can only approve or deny the Settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed Settlement in writing. You may also appear at the Fairness Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

All written objections and supporting papers must (a) clearly identify the case name and number (*McKnight et al. v. Uber Technologies, Inc. et al.*, No. 3:14-cv-05615-JST); (b) be submitted to the Court by (1) filing the written objection through the Court's Case Management/Electronic Case Files ("CM/ECF") system, (2) by mailing the written objection to the Class Action Clerk for United States District Court for the Northern District of California at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or (3) by filing the written objection in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before **January 8, 2018**.

## 21. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Fairness Hearing").

## 22. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Fairness Hearing on **February 8, 2018 at 2:00 p.m.**, at the United States District Court for the Northern District of California at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, Court Room 9 (19th Floor), San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.RideShareSettlement.com for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the requests by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Class Representatives. If there are objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. It is unknown how long these decisions will take.

## 23. Do I have to attend the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you file or submit your written objection on time, to the proper location or address, and it complies with the other requirements set forth above, the Court will consider it. You also may pay your own lawyer to attend the hearing, but it is not necessary.

# IF YOU DO NOTHING

## 24.    What happens if I do nothing at all?

If you are a Class Member with an Uber account and do nothing, you will automatically receive your Settlement Share as a payment to your Uber Rider Account, and you will give up the right to request that your Settlement Share be paid to your PayPal Account or bank account via eCheck. If you no longer have an Uber account, you must submit a valid Payment Election Form and elect Option 2 or 3 to receive your Settlement Share. And, unless you exclude yourself, you will be bound by the judgment entered by the Court. This means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit or proceeding against the Defendants about the statements and claims at issue in this case.

# GETTING MORE INFORMATION

## 25.    How do I get more information?

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.RideShareSettlement.com. You may also contact Class Counsel (see Question 18), access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at www.cand.uscourts.gov/cm-ecf, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of California in the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may also write with questions to the Settlement Administrator at McKnight v. Uber Settlement, Rideshare Settlement Administrator, PO Box 3967, Portland, OR 97208-3967; call the toll-free number, 1-877-797-6083; or email info@ridesharesettlement.com.

PLEASE DO NOT CONTACT UBER, THE COURT, OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.

Attachment 9



## Mcknight v Uber (8796)
## Opt-Out Received Summary

| | | Opt-Out Deadline 1/8/2018 | | | |
|---|---|---|---|---|---|
| Claimant Name | Doc ID | Postmark Date | Epiq Received | Document Status | Class List |
| PETER ARNOLD | 900000001 | 9/14/2017 | 9/19/2017 | Complete | TRUE |
| KEVIN BAKER | 900000002 | 9/22/2017 | 9/25/2017 | Complete | TRUE |
| JOSEPH LEBOURGEOIS | 900000003 | 9/20/2017 | 9/25/2017 | Complete | TRUE |
| KATHERINE JOHNSTON | 900000004 | 9/25/2017 | 9/27/2017 | Complete | TRUE |
| CHUCK PICCIRILLO | 900000005 | 9/25/2017 | 9/29/2017 | Complete | TRUE |
| JONATHAN COTTRILL | 900000006 | 9/25/2017 | 9/28/2017 | Complete | TRUE |
| THOMAS JAEHNE | 900000007 | 9/28/2017 | 10/2/2017 | Complete | FALSE |
| THOMAS JAEHNE | 900000008 | 9/29/2017 | 10/2/2017 | Complete | FALSE |
| MICHELLE KARKER | 900000009 | 9/28/2017 | 10/2/2017 | Complete | TRUE |
| STEVENSON KAMINER | 900000010 | 10/3/2017 | 10/6/2017 | Complete | TRUE |
| HILLARY PROKOP | 900000011 | 10/2/2017 | 10/9/2017 | Complete | TRUE |
| DIAN CANTON | 900000012 | 10/2/2017 | 10/9/2017 | Complete | TRUE |
| WILLIAM HORKA | 900000013 | 10/3/2017 | 10/9/2017 | Complete | TRUE |
| ROBERT CHO | 900000014 | 10/3/2017 | 10/9/2017 | Complete | TRUE |
| GWEN PASTEL | 900000015 | 10/11/2017 | 10/13/2017 | Complete | TRUE |
| CHRISTOPHER ZAMMIT | 900000016 | 10/10/2017 | 10/13/2017 | Complete | TRUE |
| ROMAN SMIRNOV | 900000017 | 10/13/2017 | 10/16/2017 | Complete | TRUE |
| LISA CHEPONKUTE | 900000018 | 10/12/2017 | 10/23/2017 | Complete | TRUE |
| ROBERT NARDIL | 900000019 | 10/17/2017 | 10/23/2017 | Complete | TRUE |
| KYLE KING | 900000020 | 10/23/2017 | 10/30/2017 | Complete | TRUE |
| KATHRYN WALLER | 900000021 | 10/23/2017 | 10/30/2017 | Complete | TRUE |
| SAM KELLOW | 900000022 | 10/24/2014 | 10/30/2017 | Complete | TRUE |
| MILJA ALVAREZ | 900000023 | 10/1/2017 | 11/3/2017 | Complete | TRUE |
| JOSEPH GNEHM | 900000024 | 11/3/2017 | 11/8/2017 | Complete | TRUE |
| ALICIA DENBESTE | 900000025 | 11/2/2017 | 11/8/2017 | Complete | TRUE |
| CINDY STOWERS | 900000026 | 11/15/2017 | 11/20/2017 | Complete | TRUE |
| TAMARA NELSON | 900000027 | 12/5/2017 | 12/11/2017 | Complete | TRUE |
| JAKE UNGAR | 900000028 | 12/8/2017 | 12/12/2017 | Complete | TRUE |
| WENDI STRAWN | 900000029 | Null | 12/21/2017 | Complete | TRUE |
| VIRGINIA MELONI | 900000030 | 12/22/2017 | 12/26/2017 | Complete | TRUE |
| OLENA MCHUGH | 900000031 | 12/20/2017 | 12/26/2017 | Complete | TRUE |
| ZEINAH SALAHI | 900000032 | Null | 1/4/2018 | Complete | TRUE |
| MICHELLE KANG | 900000033 | 1/2/2018 | 1/5/2018 | Complete | TRUE |
| NICHOLAS WEBER | 900000034 | Null | 1/5/2018 | Complete | TRUE |
| LAITH UKRA | 900000035 | 1/4/2018 | 1/8/2018 | Complete | TRUE |
| VIVIAN LY | 900000036 | 1/3/2018 | 1/8/2018 | Complete | FALSE |
| WALTER NELSON | 900000037 | 1/5/2018 | 1/5/2018 | Complete | FALSE |
| SHEINAGH VILLANUEVA | 900000038 | 1/8/2018 | 1/11/2018 | Complete | TRUE |
| AARON SYLVESTER | 900000039 | 1/8/2018 | 1/8/2018 | Incomplete | TRUE |
| CIANAN LESLEY | 900000040 | 1/12/2018 | 1/16/2018 | Late | TRUE |