UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON MCKNIGHT, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05615-JST<br><br>**ORDER GRANTING FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Re: ECF Nos. 140, 162 |

Before the Court are Plaintiffs' motions for final approval of the class action settlement, ECF No. 162, and for attorney's fees, costs, and incentive awards, ECF No. 140. Defendants did not oppose either motion. The Court will grant final approval. It will grant Plaintiffs' motion for attorney's fees, costs, and incentive awards in part and deny it in part.

**I.  BACKGROUND**

These motions arise from a putative class action against Defendants Uber Technologies, Inc., and Rasier, LLC (collectively, "Uber" or "Defendants") based on Uber's alleged misrepresentations and omissions regarding its "Safe Rides Fee" and the safety measures, background checks, and other efforts it takes to provide safety for its customers. ECF No. 67 (consolidated class action complaint). Plaintiffs Byron McKnight, Julian Mena, Todd Schreiber, Nate Coolidge, and Ernesto Mejia bring eight claims for relief: (1) breach of implied contract under California law; (2) breach of implied contract under Illinois law; (3) breach of implied contract under Massachusetts law; (4) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (5) unlawful business practices in violation of California Business and Professions Code section 17200, *et seq.*; (6) unfair business practices in violation of section 17200, *et seq.*; (7) violation of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/2, *et seq.*;

and (8) false advertising in violation of California Business and Professions Code section 17500, *et seq. Id.* ¶ 14. Plaintiffs seek monetary relief as well as equitable relief enjoining Uber from continuing the alleged harmful conduct. *Id.* at 40.

On August 7, 2017, the Court conditionally certified a settlement class and granted preliminary approval of the class action settlement agreement. ECF No. 136. The settlement class consists of "[a]ll persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services with a Safe Rides Fee in the United States or its territories." *Id.* at 12. "'Uber Rideshare Services' means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested." *Id.* The proposed class consists of approximately 22.4 million potential members. ECF No. 127 at 16. The settlement provides for a $32.5 million non-reversionary settlement fund. *Id.* at 10. After accounting for administrative costs, attorney's fees, and service awards, "each [c]lass [m]ember will receive $0.25 for their first Safe Rides Fee Service and $0.05 for each subsequent Safe Rides Fee Service." *Id.* at 16. The average settlement share will be approximately $1.07. *Id.* Any residual funds will be paid to the National Consumer Law Center. *Id.* at 15. Defendants agree to cease charging "Safe Rides Fees" and to refrain from using statements like "safest ride on the road" and "industry-leading" when describing their safety measures in commercial advertising. *Id.* at 16.

The Court held a fairness hearing on February 8, 2018. ECF No. 170. No objectors appeared. *Id.* At that hearing, the Court ordered Plaintiffs to provide supplemental briefing on the applicability of *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). *Id.* On April 19, 2018, the Court stayed further consideration of the settlement: "Because both parties in *Hyundai* recently petitioned the Ninth Circuit for *en banc* review, the Court will defer ruling on the motion for final approval until the *Hyundai* petition for review is resolved and any subsequent Ninth Circuit proceedings are completed." ECF No. 178 (citations omitted). The Ninth Circuit's en banc proceedings have concluded, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc), and the Court now proceeds to evaluate the final fairness of the proposed settlement.

2

1   The parties provided the required notice to federal and state attorneys general under the
2   Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). ECF No. 154 ¶¶ 10-12. Notice
3   occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d). *Id.*

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. To assess a settlement proposal, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). There is no governmental participant in this case, so the Court need not consider that factor.

### A. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court approved the parties' proposed notice procedures when it granted preliminary approval. ECF No. 136 at 8. The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. *Id.* at 17. Epiq also created a website, banner ads, and a toll free number. *Id.* at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28.

3

In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.

### B. Fairness, Adequacy, and Reasonableness

#### 1. Applicability of Coupon Settlement Rules

Before examining the fairness of the settlement, the Court first considers an issue raised by one of the objectors: whether the settlement is a coupon settlement subject to special provisions under CAFA, 28 U.S.C. § 1712. ECF No. 154 at 9-12. CAFA does not define what constitutes a coupon. *See* 28 U.S.C. § 1711. However, "[i]n CAFA's findings and purposes, Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which 'counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) (quoting Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4 (2005)). Particularly problematic are "settlements in which 'class members receive nothing more than promotional coupons to purchase more products from the defendants.'" *Id.* (quoting S. Rep. No. 109-14, at 15 (2005), 2005 U.S.C.C.A.N. 3, 16). The Ninth Circuit distinguished between coupon settlements that offer mere discounts and require a class member to spend their own money, and non-coupon settlements that enable a class member to purchase an entire product or service or that are otherwise transferrable, do not expire, and enable class members to purchase more than one type of good or service. *Id.* at 951-52.

The settlement in this case will be paid out as follows: Class members who wish to receive their $1.07 share of the settlement in cash, either via PayPal or to their bank account via eCheck, may submit a claim form. ECF No. 125 ¶¶ 67-76; ECF No. 125-8. If they do not do so, either because they did not receive notice, or because they received notice and decided that an Uber credit was preferable to filling out a claim form for a $1.07 cash payment, class members will receive an Uber credit, which will be automatically uploaded to their account. If a class member fails to submit a claim form and no longer has an Uber account, that class member's share will go to the National Consumer Law Center via *cy pres*. ECF No. 127 at 15. If a class member has an account and receives a credit, but does not use the credit within one year, Uber will make one

4

attempt to make a cash payment to the class member's card on file; if the payment is unsuccessful, the funds will revert to the *cy pres* recipient. ECF No. 125 ¶¶ 67-76. Only 82,375 class members, or less than 0.4% of the class, submitted a claim form; the remaining 99.6% of class members will receive an Uber credit by default, as will the approximately 18,000 class members who submitted a claim form electing an Uber credit. ECF No. 162 at 18.

Whether the settlement is a coupon settlement is a close call. It is not disputed that the average settlement amount of $1.07 is too small to purchase an Uber ride. Thus, class members who receive an Uber credit will need to spend their own money to be able to use the value of the settlement. That the Uber credits can only be used to purchase Uber rides, are of little value, and cannot purchase an entire Uber ride weigh in favor of concluding the credits are a coupon. On the other hand, that class members can select a cash payment and may be passively paid in cash if they fail to use their credit weigh against such a determination.

Plaintiffs urge the Court to rely on *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017), and argue that the settlement here is even less coupon-like than the settlement in that case. Class members there had the option of submitting a claim form to receive $11.50 in cash or receiving a gift card of equivalent value if they did not do so. *Williamson*, 2016 WL 4524307, at *6 (N.D. Cal. Aug. 30, 2016). The court concluded that the settlement was "not a coupon settlement, since class members had the option to receive cash instead of value certificates, even though they received certificates by default." *Williamson*, 2017 WL 6033070, at *1. In one sense, Plaintiffs are correct that this settlement is less coupon-like than the one in *Williamson* because class members who do not use their credit within one year may be paid in cash. On the other hand, a class member would be more likely to conclude that $11.50 in cash, as compared with the $1.07 average payout here, was worth the transaction costs of submitting a claim form. In fact, more than three times the number of class members in *Williamson* submitted a claim form, out of a class that was less than a third the size of the class here. *See* 2017 WL 6033070, at *1 (263,261 class members submitted a claim form); 2016 WL 4524307, at *4 (7.53 million class members).

On balance, the Court concludes that the settlement is sufficiently coupon-like to warrant

5

application of 28 U.S.C. § 1712. *Dardarian v. OfficeMax N. Am., Inc.*, No. 11-cv-00947-YGR, 2014 WL 7463317, at *3 (N.D. Cal. Dec. 30, 2014) (instructing that "at a minimum, the intent of CAFA" must be followed where a settlement was "essentially" or "effectively" a coupon); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008) ("[E]ven if the instant case did not involve any coupons such that CAFA would not apply, courts have still found the above CAFA provision instructive when the benefit to the class is coupon-like."); *Yeagley v. Wells Fargo & Co.*, No. C05-03403 CRB, 2008 WL 171083, at *9 (N.D. Cal. Jan. 18, 2008), *rev'd on other grounds*, 365 F. App'x 886 (9th Cir. 2010) (same); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (concluding that CAFA coupon provisions should guide the scrutiny of a settlement choice between $52 worth of prepaid envelopes or $30 in cash). The Court will therefore "apply heightened scrutiny" to assess whether the settlement is fair, adequate, and reasonable. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949. CAFA provides:

> In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

28 U.S.C. § 1712(e). "Although the 'fair, reasonable, and adequate' language used in section 1712(e) is identical to the language relating to settlement approval contained in Fed. R. Civ. P. 23(e)(2), several courts have interpreted section 1712(e) as imposing a heightened level of scrutiny in reviewing such settlements." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (citing *Synfuel Techs.*, 463 F.3d at 654); *but see Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 55 (D.D.C. 2010) (rejecting argument that CAFA requires heightened scrutiny of coupon settlements). The Court has already applied heightened scrutiny to this settlement, including when it rejected the first motion for preliminary approval, and it continues to do so now. ECF No. 98.

### 2. Analysis

With the exception of the reaction of class members, the Court strictly analyzed the necessary factors and found the current settlement to be fair, adequate, and reasonable when it granted the second preliminary approval motion. ECF No. 136 at 5-10. The Court likewise found it proper to conditionally certify the proposed settlement class. *Id.* at 11-12. The Court finds no reason to alter either of these conclusions now that class members have received notice and an opportunity to be heard and the settlement is before the Court for final approval. The reaction of the class was relatively positive. Of 20 million mailings sent and 82,375 payment election forms submitted, 38 persons opted out, and eight objected. ECF No. 162 at 16. Together, these individuals represent much less than one percent of the class.

The Court received objections from Thomas Chial, ECF No. 137; Mathew Meyer, ECF Nos. 150, 157; Robert Hudson, represented by John Pentz and Benjamin Nutley, ECF No. 152; Gordon Morgan, represented by Chris Bandas and Timothy Hanigan, ECF No. 154; Albert Zang, represented by Michael Creamer, ECF No. 155; Jennifer Hinojosa, represented by Alan Sherwood, ECF No. 156; Sean Cochran, ECF No. 158; and Patrick S. Sweeney, ECF No. 160.[1] Many of the objections concern attorney's fees. One letter objects that the requested attorney's fees are too high given the modest $1.07 average payout per class member. ECF No. 150 at 3. Another letter argues that the fees should be adjusted downward from the 25% benchmark to 10%, or $3.25 million, because the case lasted less than one year from filing to settlement, and the lodestar should be adjusted downward to a more reasonable average hourly rate. ECF No. 152 at 1-2. The letter points out that the only substantive motion was Uber's motion to stay, which was never decided. *Id.* at 2. The letter also argues there was little risk of zero recovery after Uber agreed to the first settlement in December 2016. *Id.* at 20. A third letter objects because approximately 99% of the class will receive only an Uber credit or nothing, given that only about

---

[1] The Court also received an extremely late objection, dated July 21, 2019, from Brian Cooper and Tiffany Swanson-Cooper. ECF No. 188. The Coopers complain that they did not receive earlier notice of the settlement and that they "have a current claim against Uber in the State of Arizona," which appears to be unrelated to the issues raised in this case. *Id.* at 1. The Coopers do not assert that they are class members, nor do they argue that the settlement is unfair, unreasonable, or inadequate in any way.

7

1   80 thousand of the 22 million class members submitted payment election forms. ECF No. 154 at
2   5. Moreover, since the minimum and average Uber fare is more than $1.07, an Uber credit in the
3   average amount of $1.07 will require class members to spend their own money to use it. *Id.* The
4   letter also objects to the procedures required to object as vague and burdensome. *Id.* at 8. Finally,
5   the letter objects to class counsel's discretion to allocate fees among the various lawyers
6   representing the class. *Id.* at 18. A fourth letter objects because the settlement does not make an
7   additional redistribution to class members of the residual funds. ECF No. 155 at 2. A fifth letter
8   objects because counsel spent 40% of their time on settlement activities. ECF No. 156 at 2. One
9   objector filed a supplemental objection taking issue with the use of a lodestar multiplier. ECF
10  Nos. 150, 157. Another letter objects because of the lack of injunctive relief in the form of
11  increased safety. ECF No. 158. One letter objects because the requested attorney's fees are
12  excessive. ECF No. 160. A final letter objects to the modest size of the payments class members
13  will receive. ECF No. 137.

14  Plaintiffs respond that "virtually all" of these objectors are serial objectors acting with an
15  improper purpose. ECF No. 161 at 7. John Pentz has been cited by numerous courts for filing
16  frivolous objections in pursuit of a payoff. *Id.* at 7-8; *see also* ECF No. 163 ¶¶ 6-9. Benjamin
17  Nutley, Patrick S. Sweeney, Gordon Morgan, and Chris Bandas have similar histories. ECF No.
18  161 at 10, 12-13. Timothy Hanigan is also a serial objector; Michael Creamer has been sanctioned
19  for a frivolous appeal; and Alan Sherwood has made previous meritless objections. *Id.* at 15.
20  Class counsel also suspects that Sean Cochran is represented by serial objector George Cochran or
21  Edward Cochran. *Id.* at 16-17.

22  As to the merits of Zang's objection, ECF No. 161, Plaintiffs reject his contention that any
23  leftover funds should be redistributed to the class instead of to *cy pres* because such a large
24  proportion of class members will receive payment that a further distribution would not merit the
25  additional transaction costs. ECF No. 161 at 20 (citing *Lane v. Facebook, Inc.*, 696 F.3d 811, 825
26  (9th Cir. 2012)). As to Cochran's argument that the settlement is a small amount of the potential
27  recovery, Plaintiffs explain the Court has already addressed this. *Id.* at 22. As to objections
28  related to fees, Plaintiffs explain that it is well understood that class counsel fees will often be out

8

of proportion to class members' individual recovery. *Id.* at 24-25. Plaintiffs also argue they are entitled to the 25% benchmark fee. *Id.* at 26.

Two objectors, Morgan and Hinojosa, replied to Plaintiffs' responses. ECF No. 165 (arguing the settlement involves coupons, even if only partially, and that the Court is required to do a choice-of-law analysis under the panel decision in *Hyundai*, and denying claim that his counsel is a serial objector sanctioned by courts); ECF No. 166 (objecting to the small payout and citing *Hyundai*). The Court's scheduling order did not provide for such replies, ECF No. 136, nor have the objectors identified any local or other rule that might provide them a mechanism to file such replies, see ECF Nos. 165, 166. The Court strikes the replies, denies Morgan's request for leave to file a reply, ECF No. 169, and denies Plaintiffs' administrative motion as moot, ECF No. 167. However, as discussed above, the Court has already considered the argument that the settlement should be subject to CAFA's requirements regarding coupon settlements.

The Court has also considered the parties' conclusory arguments regarding choice of law and does not find that they preclude final approval of the settlement. In his reply, Morgan states only that the panel decision in *Hyundai* "requires this Court to conduct a choice of law analysis and rigorously analyze potential differences in state consumer protection laws before certifying the nationwide settlement class." ECF No. 165 at 5 n.1. Hinojosa suggests that the panel decision requires the Court to "consider the impact of potentially varying state laws, because variations in state law swamp any common issues in this matter and defeat predominance." ECF No. 166 at 3. Following en banc proceedings, the panel decision cited by these objectors is no longer good law. The en banc decision does not require class counsel or the district court "to address choice-of-law issues beyond those raised by objectors." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 562. And neither Morgan nor Hinojosa – nor any other objector – "invoke[d] the law of a foreign state," let alone satisfied his or her "burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Id.* at 561 (quoting *Wash. Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 919, 921 (2001)). Nor has any objector identified any differences between any of the state laws at issue that would potentially defeat predominance.

The Court acknowledges, and has closely scrutinized, the objectors' frustrations but

nonetheless finds the settlement to be reasonable given the risks and delay of further litigation. In response to the objections, however, and as a result of the Court's own review, the Court will deny without prejudice Plaintiffs' requested attorney's fees as discussed below.

After reviewing all of the required factors, the Court continues to find the settlement fair, reasonable, and adequate, and certification of the settlement class to be proper. The Court also concludes that the settlement meets any heightened requirements imposed by CAFA. The Court has already rejected one settlement as inadequate, and it held a hearing on this settlement. Plaintiffs' motion for final approval of the settlement is granted.

## III.  ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS

### A.  Attorney's Fees

Where a settlement, or portion thereof, constitutes coupons, courts particularly scrutinize attorney's fees to ensure that the fees are not "grossly disproportionate to the actual value of the coupon relief obtained for the class." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013). CAFA prescribes specific rules for the award of attorney's fees in these cases:

> **(a) Contingent fees in coupon settlements.**—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> **(b) Other attorney's fee awards in coupon settlements.**—
>
>  **(1) In general.**—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
>
>  **(2) Court approval.**—Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.
>
> **(c) Attorney's fee awards calculated on a mixed basis in coupon settlements.**—If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief—

10

> **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
>
> **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

28 U.S.C. § 1712(a)-(c). After noting that CAFA, including this provision, "is poorly drafted," the Ninth Circuit held that subsection (a) applies where a settlement constitutes entirely coupons, and attorney's fees must be based only on the value of the coupons that class members actually redeem. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1181-82. Subsections (b) and (c) apply where a settlement provides both coupons and other relief, such as equitable relief. *Id.* at 1183-85. In those cases, attorney's fees must be based on redemption rates for the coupon portion of the settlement, and on the attorney's lodestar for the non-coupon portion:

> [T]he district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained. This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).

*Id.* at 1184-85 (footnotes omitted).[2] Moreover, under the terms of the statute, attorney's fees may not be based on any portion of the settlement which reverts to *cy pres*. 28 U.S.C. § 1712(e). Having concluded that this settlement should be governed by the principles applicable to coupon settlements under CAFA, the Court orders Plaintiffs to file an amended motion for attorney's fees consistent with the above principles. *See Owen v. Fresh, Inc.*, No. CV 12-7971 SVW, 2013 WL 5966764, at *1 (C.D. Cal. Nov. 8, 2013) (noting that, after conducting a final fairness hearing, the

---

[2] One district court applied the lodestar method to the entirety of the plaintiffs' request for fees where "[i]n addition to coupon relief, the settlement provide[d] monetary and injunctive relief." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 893-96 (C.D. Cal. 2016). *Chambers* is distinguishable because it involved an award of monetary relief entirely separate from, and in addition to, the award of coupons. Here, by contrast, class members can receive money only if they affirmatively opt out from receiving a coupon, and the settlement is more properly categorized as providing only coupons and injunctive relief. This case thus falls squarely within the Ninth Circuit's interpretation of 28 U.S.C. § 1712(c) in *In re HP Printer Inkjet Litigation*.

1    court "directed Plaintiff to file an amended motion for attorney's fees consistent with the

2    principles outlined in *In re HP Inkjet Printer Litigation*").

### B.     Costs

Plaintiffs' counsel estimate litigation expenses to be $39,312.83.  ECF No. 140 at 22. Plaintiffs may recover pre-settlement litigation costs in class action settlements. *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *7 (N.D. Cal. Sept. 3, 2015). Expenses that are typically billed to paying clients are compensable. *Id.* Liddle & Dubin, P.C. explain simply that their expenses totaled $20,587.66, including $14,278.29 for expenses for traveling to mediations in Los Angeles, San Francisco, and San Diego; $6,216.66 in mediation costs; and $86.71 in shipping/overnight mail.[3]  ECF No. 142 ¶ 17.  Ahdoot & Wolfson provide a similar amount of detail for their $15,524.54 expenses. ECF No. 141 ¶ 97 (claiming, for example, $8,224.39 for "Travel (Airfare, Ground Transport, Hotel)"). Neither of these listings of "categories of expenses incurred and the total amounts paid" is sufficient to allow the Court to determine whether the claimed costs are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011).  Arias Sanguinetti Wang & Torrijos, LLP provides an accounting transaction report which provides significantly more detail for their $3,200.63 in claimed costs, and the Court will approve that amount. ECF No. 148 at 17. The other two firms must submit additional documentation for their claimed costs when Plaintiffs submit their renewed motion for attorney's fees.

### C.     Incentive Awards

Finally, Plaintiffs request incentive awards of $500 for each of the named plaintiffs: Nicholas Coolidge, Byron McKnight, Ernesto Mejia, Julian Mena, and Todd Schreiber. ECF No. 140 at 32. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal

---

[3] The claimed amounts add up to $20,581.66.  It is not clear whether "$20,587.66" was a typographical error or whether counsel is claiming $6.00 for an unidentified cost.

citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotations, alterations, and citation omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). An award of $5,000 "is presumptively reasonable," *id.*, and "incentive payments of $10,000 or $25,000 are quite high." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

The five named plaintiffs filed declarations detailing their work on the case. ECF Nos. 143 (McKnight), 144 (Mena), 145 (Coolidge), 146 (Schreiber), 147 (Mejia). Based on these declarations, the factors the Court must consider, and the relatively modest awards requested, the Court will grant Plaintiffs' request to award $500 to each of the named plaintiffs.

## CONCLUSION

The Court grants final approval of the proposed settlement and grants in part and denies in part Plaintiffs' motion for attorney's fees, costs, and incentive awards. Plaintiffs' requests for incentive awards and for $3,200.63 in costs are granted. Their remaining requests for costs and their motion for attorney's fees are denied without prejudice.

The parties may submit a jointly proposed form of judgment if they wish to have judgment entered at this time, rather than after the Court has determined an appropriate fee award.

**IT IS SO ORDERED.**

Dated: August 13, 2019



JON S. TIGAR
United States District Judge

13