UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON MCKNIGHT, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>   Defendants. | Case No. 14-cv-05615-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES AND COSTS; GRANTING OBJECTOR GORDON MORGAN'S MOTION FOR CONSIDERATION OF EXPERT TESTIMONY**<br><br>Re: ECF Nos. 140, 192, 198 |

Now before the Court are Plaintiffs' motions for attorney's fees, costs, and incentive awards, ECF Nos. 140, 192, and Objector Gordon Morgan's motion for consideration of expert testimony, ECF No. 198. Several objections have been filed to Plaintiffs' motions and Gordon's motion is opposed. The Court previously gave final approval to the underlying settlement and the incentive awards, and those issues are no longer before the Court. ECF No. 189. The Court will now grant in part and deny in part the motions for attorney's fees; grant the motion for costs; and deny the motion to consider expert testimony as moot.

**I. BACKGROUND**

These motions arise from a putative class action against Defendants Uber Technologies, Inc., and Rasier, LLC (collectively, "Uber") based on Uber's alleged misrepresentations and omissions regarding its "Safe Rides Fee" and the safety measures, background checks, and other efforts it takes to provide safety for its customers.[1] ECF No. 67 (consolidated class action complaint). Plaintiffs Byron McKnight, Julian Mena, Todd Schreiber, Nate Coolidge, and Ernesto

---

[1] For ease of reference, the Court repeats some of the procedural history contained in its August 13, 2019 order granting final approval to the parties' settlement. ECF No. 189.

1    Mejia brought eight claims for relief: (1) breach of implied contract under California law; (2)
2    breach of implied contract under Illinois law; (3) breach of implied contract under Massachusetts
3    law; (4) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et*
4    *seq.*; (5) unlawful business practices in violation of California Business and Professions Code
5    section 17200, *et seq.*; (6) unfair business practices in violation of section 17200, *et seq.*; (7)
6    violation of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/2, *et seq.*; and (8) false
7    advertising in violation of California Business and Professions Code section 17500, *et seq. Id.* ¶
8    14. Plaintiffs sought monetary relief as well as equitable relief enjoining Uber from continuing
9    the alleged harmful conduct. *Id.* at 40.

10   On August 7, 2017, the Court conditionally certified a settlement class and granted
11   preliminary approval of the class action settlement agreement. ECF No. 136. The settlement class
12   consists of "[a]ll persons who, from January 1, 2013 to January 31, 2016, used the Uber App or
13   website to obtain service from one of the Uber Ride Services with a Safe Rides Fee in the United
14   States or its territories," *id.* at 12, and includes approximately 22.4 million potential members,
15   ECF No. 127 at 16. The settlement provides for a $32.5 million non-reversionary settlement fund.
16   *Id.* at 10. After accounting for administrative costs, attorney's fees, and service awards, the
17   settlement provides each class member with $0.25 for their first Safe Rides Fee and $0.05 for each
18   subsequent Safe Rides Fee. *Id.* at 16. The average settlement share is estimated to be
19   approximately $1.07. *Id.* Any residual funds are to be paid to the National Consumer Law
20   Center. *Id.* at 15. Uber agrees to cease charging "Safe Rides Fees" and to refrain from using
21   statements like "safest ride on the road" and "industry-leading" when describing its safety
22   measures in commercial advertising. *Id.* at 16.

23   After a pause to allow the Ninth Circuit to consider and decide en banc *In re Hyundai &*
24   *Kia Fuel Economy Litigation*, 926 F.3d 539 (9th Cir. 2019) (en banc), the Court granted final
25   approval to the settlement on August 13, 2019. ECF No. 189. The Court also approved incentive
26   awards in the amount of $500 for each of the five named plaintiffs. *Id.* at 13.

27   However, the Court denied without prejudice Plaintiffs' motion for $8.125 million in
28   attorney's fees and $39,312.83 in costs. The Court first determined that the settlement is subject

2

1   to the coupon settlement provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §
2   1712. *Id.* The Court noted that each class member was estimated to receive an average of $1.07.
3   *Id.* at 4; ECF No. 125-5 at 5-6 ("The Settlement Share for the average class member is estimated
4   to be approximately $1.07."). Class members who wish to receive their $1.07 share of the
5   settlement in cash (either via PayPal or to their bank account via eCheck) may submit a claim
6   form. *Id.* at 6-7. If they do not do so, either because they did not receive notice, or because they
7   received notice and decided that an Uber credit was preferable to filling out a claim form for a
8   $1.07 cash payment, class members will receive an Uber credit, which will be automatically
9   uploaded to their account. *Id.* The Court noted that "class members can select a cash payment and
10  may be passively paid in cash if they fail to use their credit," a fact that weighed against finding
11  the settlement to be coupon-like. ECF No. 189 at 5. But the Court also observed that "the average
12  settlement amount of $1.07 is too small to purchase an Uber ride" so that "class members who
13  receive an Uber credit will need to spend their own money to be able to use the value of the
14  settlement." *Id.* The Court found that the facts that "the Uber credits can only be used to purchase
15  Uber rides, are of little value, and cannot purchase an entire Uber ride weigh in favor of
16  concluding the credits are a coupon." *Id.* The Court also rested its conclusion on the fact that the
17  amount of money a class member could receive in cash was so low that it would be worth few
18  class members' time to submit a claim. ECF No. 189 at 5. Having concluded that the settlement
19  was a coupon settlement, the Court "'appl[ied] heightened scrutiny' to assess whether the
20  settlement [was] fair, adequate, and reasonable.'" *Id.* (quoting *In re Online DVD-Rental Antitrust*
21  *Litig.*, 779 F.3d 934, 949 (9th Cir. 2015)). Because the Court had already applied heightened
22  scrutiny to the settlement at the preliminary approval stage and found the settlement then to be
23  fair, adequate, and reasonable, *id.* at 6, and given the "relatively positive" reaction of the class, *id.*
24  at 7, it approved the settlement.[2]

25  The Court then turned to the question of attorney's fees and applied the coupon settlement
26  provisions of CAFA, which are as follows:

---

[2] The Court also considered and addressed several objections to the settlement. ECF No. 189 at 7-10. The Court below addresses only those objections that were not resolved by its prior order.

United States District Court
Northern District of California

> **(a) Contingent fees in coupon settlements.**—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> **(b) Other attorney's fee awards in coupon settlements.**—
>
> > **(1) In general.**—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
> >
> > **(2) Court approval.**—Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.
>
> **(c) Attorney's fee awards calculated on a mixed basis in coupon settlements.**—If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief—
>
> > **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
> >
> > **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

*Id.* at 10-11 (quoting 28 U.S.C. § 1712(a)-(c)). The Court noted that subsections (b) and (c) apply where a settlement provides both coupons and other relief, such as equitable relief. *Id.* at 11 (citation omitted). In those cases, attorney's fees must be based on the actual redemption rates for the coupon portion of the settlement and on the attorney's lodestar for the non-coupon portion:

> [T]he district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief

4

>obtained. This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).

*Id.* (quoting *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184-85 (9th Cir. 2013) (footnotes omitted)). The Court ordered Plaintiffs to file an amended motion for attorney's fees consistent with the above principles. *Id.* The Court also ordered Plaintiffs' counsel to provide additional information regarding their claimed costs. *Id.* at 12.

Plaintiffs then filed a renewed motion for attorney's fees. ECF No. 192. In the motion, they made five arguments. First, they argued that the Court had erred in determining that the settlement was "coupon-like." *Id.* at 16. They noted that unlike in other coupon settlement cases, "there is no requirement for Class Members to utilize Uber services to receive their Settlement Shares." *Id.* Also, Plaintiffs argued that, "unlike true coupons, this Settlement's payments are unlikely to 'facilitate a sale to a purchaser who would not otherwise purchase a product at a higher price.'" *Id.* (quoting *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010)). They urged the Court to uphold the fairness of the settlement but reconsider its prior determination that it was coupon-like in nature. *Id.* at 19. Second, they argued that the requested fees of $8.125 million were appropriate even if the compensatory portion of the settlement was deemed to be coupon-like, because the injunctive relief portion of the settlement – Uber's agreement to cease charging "Safe Rides Fees" and to refrain from using statements like "safest ride on the road" and "industry-leading" when describing their safety measures in commercial advertising – was worth $56 million. Plaintiffs supported this valuation, which they described as "conservative," with written expert testimony. *Id.* at 8, 19-21; ECF No. 192-4.[3] Third, they argued that the requested fee was reasonable as a contingency of the total value of the monetary payments alone, which they calculated as $31 million based on the expected rate of the redemption of the vouchers. ECF No. 192 at 27-31. Fourth, adding these figures together,

---

[3] Plaintiffs also requested the Court award a fee representing a multiplier of Plaintiffs' lodestar based on the value of the injunctive relief. ECF No. 192 at 8. CAFA does not contemplate use of a multiplier for the equitable relief portion of a coupon-plus settlement. 28 U.S.C. § 1712(a)-(c).

5

1    Plaintiffs argued that the requested fees represented less than ten percent of the total settlement
2    value of $87 million and were reasonable on that basis. *Id.* at 31. Finally, Plaintiffs submitted
3    additional documentation in support of their requested costs. *Id.* at 31-32.[4]
4           Several objectors then weighed in on the fee motion, ECF Nos. 194,[5] 197, 198, and
5    Plaintiffs responded to the objections, ECF Nos. 200, 201.
6           Upon consideration of these materials, the Court found that Plaintiffs' renewed motion
7    "fails to provide the information required to determine an appropriate award of attorney's fees
8    under CAFA." ECF No. 214 at 1. The Court noted that "CAFA Sections 1712(a) and (c)
9    'require[] the district court to calculate the redemption value of the coupons before awarding any
10   attorneys' fees that [are] "attributable to" the coupon relief' contained in a settlement." *Id.* at 1-2
11   (quoting *In re HP Inkjet Printer Litig.*, 716 F.3d at 1186). Furthermore, "[t]he redemption value
12   must be based only on the value of the coupons that class members *actually redeem*." *Id.* at 2
13   (quotation marks and citation omitted) (emphasis in original). Because class members would not
14   be able to redeem their Uber credits until "[a]fter accounting for administrative costs, *attorney's*
15   *fees*, and service awards," however, ECF No. 189 at 2 (emphasis added), the Court posited that "it
16   may be 'impossible for the [Court] to calculate the redemption value of the coupons as required by
17   § 1712(a).'" ECF No. 214 at 2 (citing *In re HP Inkjet*, 716 F.3d at 1186). The Court also rejected
18   Plaintiffs' attempt to introduce expert testimony about likely redemption rates, given the Ninth
19   Circuit's clearly established rule that CAFA does not permit district courts to award attorney's
20   fees based on "the *perceived* value of the coupons." *Id.* (quoting *In re HP Inkjet*, 716 F.3d at 1186
21   (emphasis in original)). Thus, the Court concluded it had no basis on which to award a reasonable
22   fee. The Court then set a hearing to discuss the matter further and invited the parties to file
23   supplemental briefs that might identify a way forward. *Id.* at 3.
24          Plaintiffs filed a supplemental brief in which they presented three options: the Court could

---

[4] Several objectors weighed in on the renewed fee motion, ECF Nos. 194, 197, 198, and Plaintiffs responded to the objections, ECF Nos. 200, 201. Because those objections concerned CAFA issues that are no longer before the Court, the Court does not address them.

[5] The Court grants objector Gordon Morgan's motion for consideration of expert testimony in support of her objection. ECF No. 198. Although the Court has admitted this testimony, it did not find it helpful and has not relied on it in drafting this order.

1    award costs now, and set aside funds for a later award of fees following distribution; the Court

2    could award fees using a lodestar approach; or the Court could reverse its earlier decision

3    categorizing the settlement as coupon-like. ECF No. 218.[6]

4    The Court now analyzes Plaintiffs' motion with these additional arguments in mind.

## II.  ANALYSIS

### A.  Attorney's Fees

Having considered the matter anew, the Court concludes that it erred in its previous order in determining that this settlement is a coupon settlement.[7] Two simple considerations underlie the Court's change of thinking. First, the Court focused on the small size of the average class members' award ($1.07). But, upon further reflection, the size of an award, standing alone, does not make it coupon-like. When a class member receives a small discount on a defendant's products – as is true in the traditional coupon settlement – that class member will likely be forced to spend their own money to actually buy something. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 951 (coupon settlements "require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services."). However, when class members receive cash, as they have the option of doing here, there is no risk of their being forced to spend "more" of their own money at all, much less on the defendant's product. The Court focused on the fact that "the average settlement amount of $1.07 is too small to purchase an Uber ride" so that "class members who receive an Uber credit will need to spend their own money to be able to use the value of the settlement." ECF No. 189 at 5. Given that class members could have chosen to receive cash instead of a coupon, however, there was nothing coercive about the amount of the credit. Second, the Court noted that the amount of money a class member could receive in cash was so low that it would be worth few class members' time to submit a claim. *Id.* That fact may have some bearing on the

---

[6] Several objectors also weighed in at this stage. ECF Nos. 216, 217, 221, 230. As with the prior set of objections, because these objections are no longer relevant for the reasons stated later in this order, the Court does not address them.

[7] Because the Court concludes that the coupon provisions of CAFA do not apply, the Court need not address Plaintiffs' alternative proposed remedies.

fairness and adequacy of the settlement, but it is irrelevant to the coupon analysis because the Court already determined that the amount itself represented a reasonable compromise

Having determined that the settlement is not coupon-like, the Court now analyzes Plaintiffs' original fee request, using traditional class action attorney's fees criteria unburdened by the coupon requirements of CAFA.

The Court starts by considering the many objections asserted against the requested attorney's fees. *See* ECF Nos. 137, 150, 152, 154, 155, 156, 157, 158, 160.[8] The first objection is that attorney's fees should not be calculated as a percentage of any funds directed to a cy pres recipient. *See* ECF No. 155 at 2. The Court overrules this objection. The objector cites no authority to support this objection, and the Court is aware of "no authority for excluding *cy pres* distribution amounts for purposes of determining attorney's fees." *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, Nos. 09md2087 BTM(KSC), 09cv1088 BTM(KSC), 2014 WL 6473044, at *8 (S.D. Cal. Nov. 18, 2014)*see also In re Easysaver Rewards Litig.*, No. 09-CV-02094-BAS-WVG, 2021 WL 230013, at *4 (S.D. Cal. Jan. 22, 2021) (awarding percentage of increase in *cy pres* award to objector for attorney's fees).

The next objection is that no funds should be distributed to a cy pres recipient because it is possible to make a further distribution to class members. As Plaintiffs note, however, a class member's settlement share

> will only be distributed *cy pres* if: (i) the Class Member did not elect to receive payment via his or PayPal account or bank account via eCheck; (ii) the Class Member did not use the settlement share to pay for Uber's Rideshare Service within 365 days of payment; *and* (iii) payment to the Class Member's default payment method on file cannot be made or is rejected. Stated differently, the only funds that will be distributed *cy pres* are the settlement shares that the settlement administrator was unable to distribute in one of three different methods over the course of a year.

ECF No. 161 at 19. The settlement already makes substantial efforts to place settlement funds in the hands of class members. The Court agrees with Plaintiffs that it would be "burdensome and inefficient" to require further distribution efforts and that "a cy pres award is more appropriate."

---

[8] *See* note 2, supra.

8

*Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2020 WL 1139662, at *2 (S.D. Cal. Mar. 9, 2020); *Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *3 (N.D. Cal. Nov. 20, 2018) ("In the event that unclaimed funds still remain after the costs of the secondary distribution are paid, donation to a *cy pres* recipient is appropriate."). The Court overrules this objection.

The next objection is that class counsel should not be granted unfettered discretion to distribute fees among the various plaintiffs' attorneys. The Court overrules this objection. As a leading treatise recognizes, "[i]t is typical in . . . cases [involving a few class counsel] that the lawyers can decide among themselves how to split the aggregate fee. If so, courts will tend to defer to that self-allocation and there is no need for formal judicial involvement." 5 Newberg on Class Actions § 15:23 (5th ed.). Thus, "[f]ormal fee allocation is unnecessary in this case, where a limited number of firms are involved and there is no indication of any disagreement among the firms regarding fee allocation." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3616638, at *10 (N.D. Cal. June 26, 2017), *objections overruled*, No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021), and *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021).

The next objections are that a 25% benchmark attorney's fee (1) would be too high given that Plaintiffs faced little risk in the litigation and (2) represents too high a multiplier of Plaintiffs' lodestar. Because these considerations are subsumed in the larger determination of an appropriate attorney's fee, the Court now turns to that subject.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorney's fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the

1  fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record
2  of any 'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v.*
3  *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted
4  when the percentage recovery would be "either too small or too large in light of the hours devoted
5  to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

6        When using the percentage-of-recovery method, courts consider a number of factors,
7  including whether class counsel "'achieved exceptional results for the class,' whether the case was
8  risky for class counsel, whether counsel's performance 'generated benefits beyond the cash
9  settlement fund,' the market rate for the particular field of law (in some circumstances), the
10  burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other
11  work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental*
12  *Antitrust Litig.*, 779 F.3d at 954-55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50
13  (9th Cir. 2002)).  "[T]he most critical factor [in determining appropriate attorney's fee awards] is
14  the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

15        Here, Plaintiffs' counsel seek a fee award of 25% of the common fund, or $8.125 million.
16  Although the request is for the "presumptively reasonable amount," the Court will reduce the
17  award for two reasons.  The first is Plaintiffs' counsel's degree of success, the most important
18  factor in the Court's analysis.  Although the settlement "falls within the range of possible
19  approval," ECF No. 136 at 8; *see also* ECF No. 189 at 10 (incorporating the Court's preliminary
20  approval analysis), it sits close to the bottom of that range, given that the settlement was only
21  slightly higher than one the Court previously rejected as inadequate.

22        That the settlement includes an injunctive relief component does not change this analysis.
23  The Ninth Circuit has cautioned that, "because the value of injunctive relief is difficult to quantify,
24  its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned
25  to a common fund." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).  Accordingly, "only
26  in the unusual instance where the value to individual class members of benefits deriving from
27  injunctive relief can be accurately ascertained may courts include such relief as part of the value of
28  a common fund for purposes of applying the percentage method of determining fees." *Id.*  If the

United States District Court
Northern District of California

1  injunctive relief does not meet this standard, the Court instead takes into account "the value of the
2  injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the
3  common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself."
4  *Id.*

5  In this case, the value conferred on the class by the settlement's injunctive component is
6  not sufficiently quantifiable to be directly included in the common fund. The injunctive relief
7  consists of a promise by Uber to stop engaging in the conduct that precipitated this lawsuit. Based
8  on this promise, Plaintiffs "conservatively" value the injunctive relief component at $56 million,
9  ECF No. 192 at 8, but the Court cannot accept that valuation. First, it assumes that the persons
10 who will benefit from the injunctive relief are the same as the ones paying the attorney's fee. That
11 proposition is doubtful. Rather, it seems inevitable the opposite will be true: that some of those
12 who will benefit from Uber's new policy were not yet Uber customers during the period covered
13 by the settlement. In other words, money will be taken from the monetary portion of the
14 settlement to pay fees on behalf of future Uber customers who benefit from Uber's business
15 changes. More fundamentally, the Court doubts that Uber would have continued levying a "safe
16 rides fee" or engaging in similar conduct even if Plaintiffs had not made them promise in writing
17 to stop. It seems much more likely that Uber would have voluntarily stopped the conduct to avoid
18 getting sued again. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508,
19 521 (N.D. Cal. 2020), *aff'd,* 845 F. App'x 563 (9th Cir. 2021) ("As the objectors note, the Court
20 cannot include in the common fund the value of measures that Wells Fargo would have taken even
21 absent this litigation."). The Court therefore does not consider any additional amount to the
22 common fund based on the settlement's injunctive relief for purposes of determining attorney's
23 fees, and the Court continues to conclude that the settlement is at the lower end of the reasonable
24 range of settlement values.

25 The second reason the Court reduces the attorney's fee award is that a lodestar cross-check
26 shows that even a reduced award will compensate counsel relative to the results they achieved.
27 "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation,
28 provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. To

11

"determin[e] the amount of a reasonable fee" under the lodestar method, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The court must then "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434 (citation omitted). The reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable hourly rate, the Court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11. The relevant community is typically the forum in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in San Francisco. *See* ECF No. 192-1. Moreover, Plaintiffs provide information on the number of hours counsel performed, broken down by categories of work, *e.g.*, *id.* ¶ 87, and the Court finds the number of hours to be reasonable. On the basis of these reasonable hourly rates and amounts, class counsel estimate the lodestar to be $1,961,905. The Court concludes this is a reasonable estimate of counsel's investment of time in the litigation.

"Percentage awards in the range of one to four times the lodestar are common." *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018); *see Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))). A fee award of $8.125 million results in a multiplier of 4.14, which is slightly higher than the typical range. If the settlement represented an "excellent result" for the class, perhaps this multiplier might not be remarkable. In view of the settlement

counsel actually achieved, however, the fee represents too large a transfer of the class's settlement funds to class counsel. The Court will award attorney's fees of $5,689,440 – still a multiple of the fees actually incurred, but a better reflection of the actual result.

The Court has also considered the objection that the requested attorney's fees are too high given that Plaintiffs faced little risk in the litigation. On that score, one objector reasons that "after Uber agreed to the first settlement in December 2016, there was little to no risk to Class Counsel of zero recovery." ECF No. 152 at 2. The Court is not persuaded by this objection. First, Plaintiffs faced all the ordinary risks of contingency fee class action litigation before reaching the first settlement in this case. Second, that Uber agreed to a lower settlement did not guarantee that it would agree to a higher one. Finally, as Plaintiffs note, Uber might have successfully asserted the arbitration agreements and class action waivers in its customer agreements, forcing class members to arbitrate their claims individually. ECF No. 140 at 23. The Court overrules this objection and will not further reduce the fee award.[9]

**B.     Costs**

Plaintiffs' counsel request reimbursement of $37,582.75 in litigation expenses. ECF No. 191-4 at 10.[10] Plaintiffs may recover pre-settlement litigation costs in class action settlements, and expenses that are typically billed to paying clients are compensable. *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *7 (N.D. Cal. Sept. 3, 2015). Plaintiffs' counsel provided declarations breaking down the categories of claimed costs, including legal research, deposition and other transcripts, expert fees, filing fees, mediation costs, messenger and overnight delivery services, postage, copying, service of process, and travel expenses. ECF Nos. 192-1, 192-2. The requested costs appear reasonable, and the Court will grant reimbursement of the requested costs in full.

## CONCLUSION

---

[9] Objectors also object to any calculation of fees that does not characterize this as a coupon settlement. Because the Court has already determined that this is not a coupon settlement, it does not address the issue further.

[10] This amount is lower than Plaintiffs' original request because the Court awarded certain costs in the interim. *Id.*

13

For the reasons set forth above, Plaintiffs' motions for attorney's fees and costs is granted in part and denied in part. Objector Gordon Morgan's motion for consideration of expert testimony is granted. Plaintiffs shall submit a revised proposed judgment, approved as to form by Uber, by September 15, 2021.

**IT IS SO ORDERED.**

Dated: September 1, 2021



JON S. TIGAR
United States District Judge